**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------x
: Chapter 11
In re :
: Case No. 16-10386 (CSS)
**PARAGON OFFSHORE PLC,** *et al.*, :
: Jointly Administered
:
Debtors.[1] : Obj. Deadline:  3/30/16 at 4:00 p.m. (ET)
: Hearing Date: 4/6/16 at 10:00 a.m. (ET)
------------------------------------------------------x

**MOTION OF DEBTORS FOR
ENTRY OF ORDER AUTHORIZING THE DEBTORS
TO PAY CERTAIN FEES AND EXPENSES TO THE ADVISORS
TO THE CONSENTING NOTEHOLDERS IN ACCORDANCE WITH THE
TERMS OF THE PLAN SUPPORT AGREEMENT PURSUANT TO SECTIONS
105(a) AND 363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004**

Paragon Offshore plc ("**Paragon Parent**") and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (this "**Motion**"):

**Relief Requested**

1. Pursuant to sections 363(b) and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors request entry of an order authorizing the Debtors to pay

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Paragon Offshore plc (6017); Paragon Offshore Finance Company (6632); Paragon International Finance Company (8126); Paragon Offshore Holdings US Inc. (1960); Paragon Offshore Drilling LLC (4541); Paragon FDR Holdings Ltd. (4731); Paragon Duchess Ltd.; Paragon Offshore (Luxembourg) S.à r.l. (5897); PGN Offshore Drilling (Malaysia) Sdn. Bhd. (9238); Paragon Offshore (Labuan) Pte. Ltd. (3505); Paragon Holding SCS 2 Ltd. (4108); Paragon Asset Company Ltd. (2832); Paragon Holding SCS 1 Ltd. (4004); Paragon Offshore Leasing (Luxembourg) S.à r.l. (5936); Paragon Drilling Services 7 LLC (7882); Paragon Offshore Leasing (Switzerland) GmbH (0669); Paragon Offshore do Brasil Ltda.; Paragon Asset (ME) Ltd. (8362); Paragon Asset (UK) Ltd.; Paragon Offshore International Ltd. (6103); Paragon Offshore (North Sea) Ltd.; Paragon (Middle East) Limited (0667); Paragon Holding NCS 2 S.à r.l. (5447); Paragon Leonard Jones LLC (8826); Paragon Offshore (Nederland) B.V.; and Paragon Offshore Contracting GmbH (2832).  The Debtors' mailing address is 3151 Briarpark Drive, Suite 700, Houston, Texas 77042.

RLF1 14155060V.1

the reasonable documented postpetition fees and expenses of the advisors to the Consenting Noteholders (defined below) in accordance with the terms of the Plan Support Agreement (defined below) and applicable Fee Letters (defined below). By this Motion, the Debtors do not seek to assume the Plan Support Agreement or the Fee Letters.

2.  A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**").

## Jurisdiction

3.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

4.  On February 14, 2016 (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

5.      Additional information regarding the circumstances leading to the commencement of these chapter 11 cases and information regarding the Debtors' business and capital structure is set forth in the Declaration of Ari Lefkovits in Support of the Debtors' Chapter 11 Petitions and Related Requests for Relief (Docket No. 17) (the "**Lefkovits Declaration**") and the Declaration of James A. Mesterharm in Support of the Debtors' Chapter 11 Petitions and Related Requests for Relief (Docket No. 18).

## The Plan Support Agreement

6.      As described in the Lekovits Declaration, in the months prior to the Petition Date, the Debtors engaged in extensive negotiations with certain key stakeholders over the terms of a potential restructuring of the Debtors' business.  As a condition of entering into negotiations regarding a potential restructuring of the Debtors' business, the Consenting Noteholders requested, and the Debtors agreed to pay, the reasonable documented fees and expenses of certain of the advisors to the Consenting Noteholders (collectively, the "**Professional Fees**").  The negotiations lasted several months, involved critical input from the financial and legal advisors of both the Debtors and the Consenting Noteholders, and ultimately led to consensus on the terms of a financial restructuring that, as proposed, will reduce the Debtors' debt by more than $1 billion, allow the Debtors' equity holders to retain 65% of the equity of the Reorganized Debtors, and provide the Debtors with sufficient liquidity.  The terms of the restructuring are memorialized in a Plan Support Agreement (together with all exhibits and attachments thereto, the "**Plan Support Agreement**") and embodied in the Joint Chapter 11 Plan of Paragon Offshore Plc and Its Affiliated Debtors, dated February 14, 2016 (Docket No. 11) (as may be further amended, the "**Proposed Plan**").  The Plan Support Agreement is annexed hereto as **Exhibit B**.

7. The Plan Support Agreement is supported by the beneficial holders (collectively, the "**Consenting Noteholders**") of over two-thirds in amount of both the 6.75% Senior Notes due 2022 and the 7.25% Senior Notes due 2024 (collectively, the "**Notes**") issued under that certain Indenture, dated as of July 18, 2014, by and among Paragon Parent, as issuer, each of the guarantors named therein, and Deutsche Bank Trust Company Americas, as indenture trustee, as amended, modified, or otherwise supplemented from time to time (the "**Indenture**"), and creditors (the "**Consenting Revolver Lenders**" and, together with the Consenting Noteholders, the "**Consenting Creditors**") holding over two-thirds in outstanding principal amount of loans under that certain Secured Revolving Credit Agreement, dated as of June 17, 2014, by and among Paragon Parent and Paragon International Finance Company, as borrowers, the lenders and issuing banks party thereto, and JPMorgan Chase Bank, N.A., as administrative agent, as amended, modified, or otherwise supplemented from time to time (the "**Revolving Credit Agreement**"). Under the Plan Support Agreement, the Consenting Creditors have agreed to, among other things, support the Proposed Plan and to forbear from exercising any rights or remedies under the Revolving Credit Agreement or the Indenture with respect to their loans or Notes resulting from certain actual or potential defaults or events of default specified therein.

8. With the support of the Consenting Creditors, the Debtors entered chapter 11 with a Proposed Plan that leaves the legal, equitable, and contractual rights of holders of Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, Other Secured Claims, Secured Term Loan Claims, and General Unsecured Claims (each as defined in the Proposed Plan) unaltered. Consistent with the proposed treatment of unsecured creditors under the Proposed Plan, as part of their first day relief, the Debtors sought and received authority to

pay the allowed prepetition claims of general unsecured creditors that provide goods or services related to the Debtors' operations in the ordinary course of business pursuant to the Final Order Authorizing Debtors to Pay Prepetition Claims of General Unsecured Creditors in the Ordinary Course of Business Pursuant to Sections 105(a), 362(d), 363(b), and 503(b)(9) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 (Docket No. 135). Additionally, under the Final Order (I) Authorizing the Debtors to Utilize Cash Collateral; and (II) Granting JPMorgan Chase Bank, N.A., as Administrative Agent for the Revolver Lenders and Collateral Agent for the Revolver Lenders and Term Loan Lenders, and Cortland Capital Market Services L.L.C. as Successor Administrative Agent for the Term Loan Lenders, Adequate Protection Pursuant to Sections 105, 361, 362, 363 and 507 of the Bankruptcy Code (Docket No. 140) (the "**Cash Collateral Order**"), as adequate protection, the Debtors are paying the reasonable fees and expenses of certain advisors to the Term Loan Agent and the Revolver Agent pursuant to their respective operative credit documents. Similarly, by this Motion, the Debtors seek to pay the Consenting Noteholders' Professional Fees pursuant to and in accordance with the Plan Support Agreement and consistent with the terms of the Fee Letters (defined below).

### Professional Fees Payable Under the Plan Support Agreement

9.      In return for the Consenting Noteholders' support under the Plan Support Agreement, the Debtors have agreed, among other things, to continue to pay, until the Plan Support Agreement is terminated, the Professional Fees in accordance with certain existing fee letters with the Debtors. *See* Plan Support Agreement ¶ 25. Specifically, under the Plan Support Agreement, the Debtors have agreed to pay the Professional Fees of the Consenting Noteholders'

U.S. counsel, Delaware counsel, financial advisor, and one foreign counsel in each applicable jurisdiction. *Id.*[2]

10. In 2015, in connection with the prepetition restructuring negotiations, the Debtors entered into fee letters with Paul, Weiss, Rifkind, Wharton & Garrison LLP ("**Paul Weiss**") as U.S. counsel to the Consenting Noteholders, dated as of October 23, 2015 (the "**Paul Weiss Fee Letter**"), Ducera Partners LLC ("**Ducera**") as financial advisor to the Consenting Noteholders, dated as of November 2, 2015 (the "**Ducera Fee Letter**"), Ashurst LLP ("**Ashurst**") as English counsel to the Consenting Noteholders, dated as of December 4, 2015 (the "**Ashurst Fee Letter**"), and Creel, García-Cuéllar, Aiza y Enríquez, S.C. ("**Creel**") as Mexican counsel to the Consenting Noteholders, dated as of December 9, 2015 (the "**Creel Fee Letter**"). The Paul Weiss Fee Letter, the Ducera Fee Letter, the Ashurst Fee Letter, and the Creel Fee Letter are annexed hereto as **Exhibit C**, **Exhibit D**, **Exhibit E**, and **Exhibit F**, respectively. Additionally, in early 2016, the Consenting Noteholders entered into a fee letter with Young Conaway Stargatt & Taylor, LLP ("**Young Conaway**" and, together with Paul Weiss, Ducera, Ashurst, and Creel, the "**Advisors**") as Delaware counsel to the Consenting Noteholders, dated as of February 10, 2016 (the "**Young Conaway Fee Letter**" and, together with the Paul Weiss Fee Letter, the Ducera Fee Letter, the Ashurst Fee Letter, and the Creel Fee Letter, the "**Fee Letters**"). The Young Conaway Fee Letter is annexed hereto as **Exhibit G**.

11. The Consenting Noteholders conditioned their willingness to discuss a potential restructuring of the Notes upon the Debtors' agreement to pay the reasonable legal fees and expenses of their Advisors. *See* Paul Weiss Fee Letter at 2; Young Conaway Fee Letter at 1. Under the terms of the Paul Weiss Fee Letter, the Debtors have agreed to pay Paul Weiss within

---

[2] Additionally, the Proposed Plan also includes a provision that contemplates the payment of Restructuring Expenses (as such term is defined in the Proposed Plan). *See* Proposed Plan § 5.11.

6

twenty (20) business days after receipt of an invoice the reasonable legal fees and expenses incurred by Paul Weiss in connection with its representation of the Consenting Noteholders in these chapter 11 cases with payment in full due upon the closing of any Transaction (as such term is defined in the Paul Weiss Fee Letter) involving the Consenting Noteholders.  Paul Weiss Fee Letter at 2.  Prepetition, in compliance with the terms of the Paul Weiss Fee Letter, the Debtors paid Paul Weiss a $175,000.00 stay-ahead retainer, which Paul Weiss may debit if the Debtors do not timely pay an invoice.  *Id.*  In the event of a debit of the retainer, the Debtors are required to promptly replenish the retainer to its original level.  *Id.*  Additionally, under the terms of the Paul Weiss Fee Letter, the Debtors have agreed to be responsible for payment of the reasonable fees, costs, and expenses of foreign counsel retained by Paul Weiss.  *Id*. at 3.

12. Under the terms of the Ducera Fee Letter, the Debtors have agreed to pay Ducera the following:  (i) a monthly fee of $150,000.00, payable monthly (the "**Monthly Fee**"); (ii) a deferred fee of $3,500,000.00 less one-hundred percent (100%) of any Monthly Fee amounts payable after the fourth month following the date of the Ducera Fee Letter, but in no event less than $3,000,000.00, payable upon the consummation of any Transaction (as such term is defined in the Ducera Fee Letter); and (iii) reimbursement for all reasonable, customary, and documented expenses upon request (the "**Ducera Expenses**").  Ducera Fee Letter §§ 2-3.  With respect to the Ducera Expenses, Ducera is required to obtain prior written consent from the Debtors for any expenses in excess of $10,000.00.  *Id.*

13. In the event of a chapter 11 filing, the Debtors are required to seek authorization from the Court to fulfill their obligations under the Ducera Fee Letter.  *Id*. § 4.  The manner by which the Debtors seek such authorization must be reasonably acceptable to Ducera.

7

*Id.* The Debtors have consulted with each of the Advisors, including Ducera, and they have approved the filing of this Motion.

14. Under the terms of the Ashurst Fee Letter, the Debtors have agreed to pay Ashurst within twenty (20) business days after receipt of an invoice the reasonable legal fees and expenses incurred by Ashurst in connection with its representation of the Consenting Noteholders in these chapter 11 cases with payment in full due upon the closing of any restructuring involving the Consenting Noteholders. Ashurst Fee Letter § 4.

15. Under the terms of the Creel Fee Letter, the Debtors agreed to pay Creel within twenty (20) business days after receipt of an invoice the reasonable legal fees and expenses incurred by Creel for Mexican tax law advice provided to the Consenting Noteholders in connection with a potential restructuring of the Notes with payment in full due upon the closing of any restructuring involving the Consenting Noteholders. Creel Fee Letter at 2-3.

16. Under the terms of the Young Conaway Fee Letter, the Debtors have agreed to pay Young Conaway within twenty (20) business days after receipt of an invoice the reasonable legal fees and expenses incurred by Young Conaway in connection with its representation of the Consenting Noteholders in these chapter 11 cases, with payment in full due upon the closing of any Transaction (as such term is defined in the Young Conaway Fee Letter) involving the Consenting Noteholders. Young Conaway Fee Letter at 2. Prepetition, in compliance with the terms of the Young Conaway Fee Letter, the Debtors paid Young Conaway a $25,000.00 stay-ahead retainer, which Young Conaway may debit if the Debtors do not timely pay an invoice. *Id.* at 1-2. In the event of a debit of the retainer, the Debtors are required to promptly replenish the retainer to its original level. *Id.* at 2.

**Basis for Relief Requested**

**A.    Payment of the Professional Fees is a Reasonable Exercise of the Debtors' Business Judgment**

17.     The Debtors seek authority, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to continue to pay the postpetition Professional Fees of the Advisors on a current basis in compliance with their obligations under the Plan Support Agreement.[3] The Debtors' payment of the Professional Fees pursuant to the terms of the Plan Support Agreement constitutes a sound exercise of business judgment and is in the best interests of the Debtors, and should therefore be approved.

18.     Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

19.     Section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  The use, sale, or lease of property of the estate, other than in the ordinary course of business, is authorized if the Court finds a "sound business purpose" for such action. *See DaiIchi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (citations omitted). When analyzing whether a "sound business purpose" justifies the proposed use, sale, or lease of property under section 363(b), courts usually employ a business judgment test. *See id.* In

---

[3] Prepetition, the Debtors paid all Professional Fees on a current basis as required by the Restructuring Support Agreement. Accordingly, there are no prepetition Professional Fees outstanding. The Debtors' payment of all postpetition Professional Fees will comply with the Debtors' Budget (as such term is defined in the Cash Collateral Order).

Delaware, the business judgment rule creates a "presumption that directors act in good faith, on an informed basis, honestly believing that their action is in the best interests of the company." *Stanizale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 234 (3d Cir. 2005) (citations omitted); *see also Official Comm. of Sub. Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1990) (holding that Delaware's business judgment rule principles have "vitality by analogy" in chapter 11). The business judgment rule's presumption operates to shield the business decisions of a debtor's management from judicial second-guessing. *In re Integrated Res., Inc.*, 147 B.R. at 656. Accordingly, once a debtor has articulated "a reasonable basis for its business decisions . . ., courts will generally not entertain objections to the debtor's conduct." *See, e.g., In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) (citing *In re Johns–Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)).

20. The Debtors' decision to pay the Professional Fees in accordance with the terms of the Plan Support Agreement satisfies the business judgment test. The Plan Support Agreement itself is a product of robust, arm's-length, good faith negotiations between the Debtors and several of their key creditors and was entered into by all parties only after careful consideration and consultation with their respective financial and legal advisors. In entering into the Plan Support Agreement, it was the parties' understanding that the Debtors would continue to pay, on a current basis, the Professional Fees while the Plan Support Agreement was in effect.

21. As stated above and in the Lefkovits Declaration, the Plan Support Agreement is a key part of the Debtors' restructuring. It provides the Debtors with the support of the Consenting Creditors in implementing a financial restructuring which will reduce the Debtors' debt by more than $1 billion, leave the Debtors' unsecured creditors unimpaired, and

10

allow the Debtors' equity holders to retain 65% equity in the Debtors.  The Consenting Noteholders conditioned their participation in restructuring negotiations on the Debtors' agreement to pay the fees of their Advisors on a current basis and that condition was further memorialized in the Plan Support Agreement.  The support of the Consenting Noteholders furthers the confirmation and consummation of the Proposed Plan.  Absent the ability to pay the Professional Fees on a current basis, the Debtors would be unable to comply with their obligations under the Plan Support Agreement.

22.     Additionally, the Advisors were an essential part of the Debtors' restructuring negotiations and were instrumental in the development of the settlement incorporated into the Plan Support Agreement and the Proposed Plan and in the financial and legal analysis that was an integral element of that process.  The Debtors also understand that the Consenting Noteholders intend to continue to work constructively with the Debtors towards confirmation of the Proposed Plan.  Under these circumstances, it is reasonable for the Debtors' estates to cover the postpetition fees and expenses of a constituency that has benefited the Debtors' estates and will continue to facilitate the efficient and economic administration of the Debtors' chapter 11 cases.

23.     Significantly, none of the Debtors' other creditors will be harmed by the Debtors' payment of the Professional Fees on a current basis.  As mentioned above, as result of their negotiations with the Consenting Noteholders and their Advisors, the Debtors have filed a Proposed Plan that proposes to pay all of the Debtors' prepetition unsecured claims in full.

24.     Finally, payment of key creditors' reasonable professional fees pursuant to a restructuring support agreement is not unusual.  Courts in this district have routinely authorized such payments in other similar cases.  *See, e.g.*, *In re Magnum Hunter Res. Corp.*, No. 15-12533

(KG) (Bankr. D. Del. February 9, 2016) (Docket No. 503) (approving payment of unsecured noteholders' and second lien lenders' professional fees in connection with the assumption of a restructuring support agreement); *In re Hercules Offshore, Inc.*, No. 15-11685 (KJC) (Bankr. D. Del. Aug. 24, 2015) (Docket No. 95) (approving payment of unsecured noteholders steering group's prepetition and postpetition professionals' fees in connection with the assumption of a restructuring support agreement); *In re Dendreon Corp.*, No. 14-12515 (PJW) (Bankr. D. Del. Dec. 23, 2014) (Docket No. 215) (approving payment of unsecured noteholders' prepetition and postpetition professionals' fees in connection with the assumption of a restructuring support agreement); *In re Endeavor Operating Corp.*, No 14-12308 (KJC) (Bankr. D. Del. Nov. 10, 2014) (Docket No. 169) (same).

**B.    Payment of the Professional Fees is Authorized under Section 503(b) of the Bankruptcy Code**

25.    As noted above, the business judgment test under section 363(b) is the applicable standard in this case. Indeed, the vast weight of authority in this circuit approves the assumption of restructuring support agreements and the payment of fees and expenses in connection therewith using the business judgment test. Here, section 363(b) is especially applicable because the Debtors are seeking narrowly tailored relief to enable them to comply with their obligations under the Plan Support Agreement without assuming the Plan Support Agreement wholesale. Section 503(b) does not apply here. However, should the Court determine that section 503(b) also applies, the Debtors meet the standard for payment of the Professional Fees as "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

26.    Professional Fees are like "break-up fees." Like break-up fees, the Professional Fees operate as an inducement for the Consenting Noteholders to enter into an

agreement with the Debtors which provides value to the Debtors' estates.  The Third Circuit has held that section 503(b)(1)(a) governs the allowance of break-up fees.  *See In re O'Brien Envtl. Energy, Inc*., 181 F.3d 527, 535 (3d Cir. 1999) ("We therefore conclude that the determination whether break-up fees or expenses are allowable under § 503(b) must be made in reference to general administrative expense jurisprudence.  In other words, the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate."); *see also In re Reliant Energy Channelview, LP*, 594 F.3d 200, 205 (3d Cir. 2010) (noting that O'Brien "set forth the controlling legal principles applicable [to break-up fees]").  The same test should apply here.

27.    The Debtors engaged in prepetition negotiations with the Consenting Noteholders to formulate the consensual restructuring embodied in the Plan Support Agreement and the Proposed Plan.  As mentioned above, the Consenting Noteholders would not enter into negotiations regarding a potential restructuring of the Debtors' business without the Debtors agreeing to pay the Professional Fees.  Additionally, the Debtors' agreement to continue to pay the Professional Fees on a current basis was also a part of the inducement for the Consenting Noteholders to support the Plan Support Agreement.  Securing the Consenting Noteholders participation in the prepetition negotiations was key to the Debtors' restructuring strategy because the participation of the Consenting Noteholders and their agreement to be impaired under the Proposed Plan paved the way for a deal with the Consenting Revolver Lenders and also allowed the Debtors to negotiate a Proposed Plan that allowed a recovery for equity.  The Consenting Noteholders' continued support of the Proposed Plan is critical to the confirmation of the Proposed Plan and the Debtors' successful emergence from Chapter 11.  Thus, the Debtors' payment of the Professional Fees is an "actual, necessary cost[]… of preserving the estate."

28. Moreover, given the substantial benefit the Consenting Noteholders and their Advisors have provided the Debtors' estates, the Consenting Noteholders' actions also meet the substantial contribution standard of sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code. Section 503(b) provides for the payment as an administrative expense of the actual, necessary expenses of a creditor, including compensation for professional services rendered by an attorney, incurred in making a substantial contribution to a debtor's chapter 11 case. *See* 11 U.S.C. §§ 503(b)(3)(D), 503(b)(4). Though the Bankruptcy Code does not define a "substantial contribution," the Third Circuit has determined that "the applicable test is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994) (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir.1988)). In making their determination of whether a creditor's actions have benefited the estate, courts examine the following factors: "'1) whether the services were rendered solely to benefit the client or to benefit all parties in the case; 2) whether the services provided direct, significant and demonstrable benefit to the estate; and, 3) whether the services were duplicative of services rendered by attorneys for the committee, the committees themselves, or the debtor and its attorneys.'" *In re Worldwide Direct, Inc.*, 334 B.R. 112, 122 (Bankr. D. Del. 2005) (quoting *In re Buckhead Am. Corp.*, 161 B.R. 11, 15 (Bankr. D. Del. 1993)). In particular, the creditor must show that its "actions were designed to benefit others who would foreseeably be interested in the estate." *See Lebron*, 27 F.3d at 946.

29. The Consenting Noteholders have provided and will continue to provide a substantial contribution to the Debtors' estates because their agreement to support the settlement embodied in the Plan Support Agreement and the Proposed Plan has enabled the Debtors to leave all of their creditors, other than the Consenting Creditors, unimpaired, and provided the Debtors

with a clear path towards confirmation.  Moreover, the existence of the Plan Support Agreement has allowed the Debtors a relatively smooth transition into chapter 11 with little disruption to their regular business operations by settling numerous issues that the Consenting Creditors might have contested during these chapter 11 cases.  Keeping the Plan Support Agreement intact through the payment of the Professional Fees will facilitate as smooth a transition as possible out of chapter 11 without prolonged delays that would serve to burden the Debtors' estates with unnecessary administrative costs.  As this Court is aware, a prolonged chapter 11 case rarely benefits the Debtors or their estates.  The Consenting Noteholders' support of the Proposed Plan provides a direct and substantial benefit to the Debtors' estates by paving the way for an efficient, economic, and consensual resolution to these chapter 11 cases.

## Reservation of Rights

30.     Authorization of the payment of the Professional Fees requested herein shall not be deemed to constitute the postpetition assumption or adoption of the Plan Support Agreement and/or the Fee Letters pursuant to section 365 of the Bankruptcy Code.  The Debtors reserve all of their rights under the Bankruptcy Code.

## Notice

31.     No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases. Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017 (Attn: Sandeep Qusba, Esq., Kathrine A. McLendon, Esq., and Morris J. Massel, Esq.), counsel to JPMorgan Chase Bank, N.A. (a) as administrative agent under the Senior Secured Revolving Credit Agreement, dated as of June 17, 2014 (the "**Revolver Agent**"), and (b) as collateral agent under the Guaranty and Collateral Agreement,

dated as of July 18, 2014 ("the **Collateral Agent**"); (iv) Landis Rath & Cobb LLP, 919 Market Street, Wilmington, DE 19801 (Attn: Adam G. Landis, Esq. and Kerri Mumford, Esq.), co-counsel to the Revolver Agent and the Collateral Agent; (v) Kaye Scholer LLP, 250 West 55th Street, New York, NY 10019 (Attn: Mark F. Liscio, Esq. and Scott D. Talmadge, Esq.), counsel to Cortland Capital Market Services L.L.C. as administrative agent under the Senior Secured Term Loan Agreement, dated as of July 18, 2014 (the "**Term Loan Agent**"); (vi) Potter Anderson & Corroon, 1313 N. Market Street, 6th Floor, Wilmington, DE 19801 (Attn: Jeremy W. Ryan, Esq.), co-counsel for the Term Loan Agent; (vii) Morgan, Lewis, & Bockius LLP, 101 Park Avenue, New York, NY 10178 (Attn: James O. Moore, Esq., Glenn E. Siegel, Esq., and Joshua Dorchak, Esq.), counsel to Deutsche Bank Trust Company Americas as trustee under the Senior Notes Indenture, dated as of July 18, 2014, for the 6.75% Senior Notes due 2022 and the 7.25% Senior Notes due 2024; (viii) Paul, Weiss, Rifkind, Wharton, & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Andrew N. Rosenberg, Esq. and Elizabeth R. McColm, Esq.), counsel to certain holders of the 6.75% Senior Notes due 2022 and the 7.25% Senior Notes due 2024; (ix) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: Pauline K. Morgan, Esq.), co-counsel to certain holders of the 6.75% Senior Notes due 2022 and the 7.25% Senior Notes due 2024; (x) the Securities and Exchange Commission; (xi) the Internal Revenue Service; (xii) the United States Attorney's Office for the District of Delaware; and (xiii) all parties who filed a request for service of notices under Bankruptcy Rule 2002.  The Debtors respectfully submit that no further notice of this Motion is required.

### No Previous Request

32.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  March 18, 2016
        Wilmington, Delaware

           /s/ Amanda R. Steele
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Amanda R. Steele (No. 5530)
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

WEIL, GOTSHAL & MANGES LLP
Gary T. Holtzer
Stephen A. Youngman
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Proposed Attorneys for the
Debtors and Debtors in Possession