**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------------------x
In re                                              :    Chapter 11
                                                   :
**PARAGON OFFSHORE PLC**, *et al.*,                :    Case No. 16-10386 (CSS)
                                                   :
                                                   :    Jointly Administered
Debtors.[1]                                        :
                                                   :    Hearing Date: 9/8/16 at 10:00 a.m. (ET)
                                                   :    Obj. Deadline: 8/19/16 at 4:00 p.m. (ET)
---------------------------------------------------------------x

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(A), 362, AND 365(A) AND BANKRUPTCY RULES 4001 AND 6006 FOR AUTHORITY TO (I) ASSUME PLAN SUPPORT AGREEMENT AND (II) MODIFY THE AUTOMATIC STAY**

Paragon Offshore plc and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):

**Relief Requested**

1. By this Motion, pursuant to sections 105(a), 362, and 365(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 4001 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors request authority to (i) assume that certain Plan Support Agreement, dated February 12, 2016, as contemplated to be amended

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Paragon Offshore plc (6017); Paragon Offshore Finance Company (6632); Paragon International Finance Company (8126); Paragon Offshore Holdings US Inc. (1960); Paragon Offshore Drilling LLC (4541); Paragon FDR Holdings Ltd. (4731); Paragon Duchess Ltd.; Paragon Offshore (Luxembourg) S.à r.l. (5897); PGN Offshore Drilling (Malaysia) Sdn. Bhd. (9238); Paragon Offshore (Labuan) Pte. Ltd. (3505); Paragon Holding SCS 2 Ltd. (4108); Paragon Asset Company Ltd. (2832); Paragon Holding SCS 1 Ltd. (4004); Paragon Offshore Leasing (Luxembourg) S.à r.l. (5936); Paragon Drilling Services 7 LLC (7882); Paragon Offshore Leasing (Switzerland) GmbH (0669); Paragon Offshore do Brasil Ltda.; Paragon Asset (ME) Ltd. (8362); Paragon Asset (UK) Ltd.; Paragon Offshore International Ltd. (6103); Paragon Offshore (North Sea) Ltd.; Paragon (Middle East) Limited (0667); Paragon Holding NCS 2 S.à r.l. (5447); Paragon Leonard Jones LLC (8826); Paragon Offshore (Nederland) B.V.; and Paragon Offshore Contracting GmbH (2832). The Debtors' mailing address is 3151 Briarpark Drive, Suite 700, Houston, Texas 77042.

by the PSA Amendment (as defined in paragraph 4) prior to the hearing on this Motion (including all exhibits attached thereto and as may be further amended, modified or supplemented from time to time, the "**Plan Support Agreement**"), a copy of which is annexed hereto as **Exhibit A** with the contemplated PSA Amendment annexed hereto as **Exhibit A-1**,[2] and (ii) modify the automatic stay to the extent necessary to permit the relief requested.[3]

2. A proposed form of order approving the relief requested herein is annexed hereto as **Exhibit B** (the "**Proposed Order**").

## Jurisdiction

3. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

A. **The Chapter 11 Cases**

4. On February 14, 2016 (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The

---

[2] The PSA Amendment is supported by the steering committee of lenders under the Revolving Credit Agreement and certain Consenting Noteholders, though its effectiveness is subject to the receipt of requisite signatures.

[3] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Plan Support Agreement.

Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

5. Additional information regarding the circumstances leading to the commencement of these chapter 11 cases and information regarding the Debtors' business and capital structure is set forth in the *Declaration of Ari Lefkovits in Support of the Debtors' Chapter 11 Petitions and Related Requests for Relief* [Docket No. 17] (the **"Lefkovits Declaration"**) and the *Declaration of James A. Mesterharm in Support of the Debtors' Chapter 11 Petitions and Related Requests for Relief* [Docket No. 18].

B.   Overview of the Plan Support Agreement

6. As set forth in the Lefkovits Declaration, the prices of crude oil and natural gas declined dramatically starting in mid-year 2014, having reached multiyear lows in the first quarter of 2016. In the summer of 2014, Brent crude oil prices—a key factor in determining customer activity levels—began to decline, dropping from roughly $115 per barrel in June 2014 to approximately $60 per barrel by December of the same year. Oil prices continued to decline in 2015, closing at $37.28 per barrel on December 31, 2015.

7. As a result of this decline in oil prices, the Debtors began to explore potential transactions that would allow the Debtors to deleverage their balance sheet and allow for continued growth and long-term success. In the fall of 2015, the Debtors began to consider potential transactions that would allow the company to deleverage its capital structure and maximize value. The Debtors engaged Weil, Gotshal & Manges LLP and Lazard between

August and September 2015.  Shortly thereafter, the Debtors began discussions with certain key debtholders, initially through their advisers.

8. The Debtors reviewed multiple transaction alternatives with their advisors. The Debtors' objectives included ensuring that they had adequate liquidity, reducing their debt principal outstanding, extending maturities of remaining debt, and adding financial covenant flexibility.  In light of the Debtors' business plan and financial forecast, available liquidity, available collateral, and asset configuration, among other items, the Debtors decided to pursue a transaction that would lead to a meaningful reduction in their debt level and interest expense in exchange for a distribution of cash to creditors at a discount to the face value of debt retired. Through extensive negotiation over several months, the Debtors, working with their advisors, have built consensus with key stakeholders on the terms of a financial restructuring that, as proposed, would reduce the Debtors' indebtedness by approximately $1.1 billion and allow existing equity holders to retain 53% equity.

9. On February 12, 2016, Paragon entered into the Plan Support Agreement with holders of over two-thirds in amount of the Notes (the "**Consenting Noteholders**") and holders of over two-thirds in outstanding principal amount of loans under the Revolving Credit Agreement (the "**Consenting Revolver Lenders**," and, together with the Consenting Noteholders, the "**Consenting Creditors**").  Prior to the hearing on this Motion, the Debtors and the Consenting Creditors anticipate entering into that certain Amendment to Plan Support Agreement annexed hereto in the form of **<u>Exhibit A-1</u>** (the "**PSA Amendment**").  The PSA Amendment, among other things, would extend certain milestones in the Plan Support Agreement to accommodate an extended confirmation timeline.

10. Contemporaneously herewith, the Debtors have filed the *Modified Second Amended Joint Chapter 11 Plan of Paragon Offshore PLC and Its Affiliated Debtors* (the "**Modified Plan**"). Pursuant to the Plan Support Agreement, to be amended by the anticipated PSA Amendment, the Debtors and the Consenting Creditors will have agreed to consummate the restructuring contemplated in the Modified Plan, which reduces the Debtors' debt by approximately $1.1 billion and annual cash interest payments by approximately $60 million, resolves covenant issues and extends the maturity of their revolving loan facility, shifts the burden of over nearly $200 million in tax bonding obligations onto their former parent, and provides all of their creditors a 100% or consensually negotiated recovery, all while preserving their rights in non-debtor Prospector assets and providing public shareholders an appropriate level of participation in the restructured enterprise.

11. The key elements of the Modified Plan and the Debtors' restructuring include (i) the satisfaction of $985 million of unsecured notes in exchange for $285 million in cash, senior unsecured notes in the aggregate amount of $60 million, and 47% of the outstanding Parent Ordinary Shares (as defined in the Modified Plan), (ii) a $165 million principal payment of the Secured Revolving Credit Agreement and additional collateral and increased interest rates in consideration for revised covenants, conversion of the remaining revolving loans to term loans, provision of an ongoing letter of credit facility to support the Debtors' business operations, and a maturity extension to 2021, (iii) reinstatement of the Debtors' Term Loan Agreement, dated as of July 18, 2014 (the "**Term Loan Agreement**"), which has a below-market interest rate, an extended maturity, and no financial covenants; and (iv) a settlement with Noble, without which the Debtors could not effectuate this restructuring. Confirmation of the Modified Plan

will pave the way for the Debtors to emerge from chapter 11 with improved leverage, a more sustainable capital structure, and its relations with customers, vendors, and employees intact.

**C.     Material Terms of the Plan Support Agreement**

12.     A summary of the material terms of the Plan Support Agreement is provided below.[4]

13.     <u>Agreements of the Consenting Creditors</u>:  Under the Plan Support Agreement, each of the Consenting Revolver Lenders and Consenting Noteholders will agree to, among other things:

> a. vote its claims against the Debtors to accept the Modified Plan and not (i) change or withdraw (or cause to be changed or withdrawn) any such vote to accept the Modified Plan, (ii) object to, delay, impede, or take any other action to interfere with acceptance or implementation of the Modified Plan, or (iii) directly or indirectly solicit, encourage, propose, file, support, participate in the formulation of, or vote for, any restructuring, sale of assets, merger, workout or plan of reorganization for any of the Debtors other than the Modified Plan;
>
> b. forbear from exercising any rights or remedies under the Revolving Credit Agreement or the Indenture with respect to its loans or notes resulting from certain actual or potential defaults or events of default specified therein; and
>
> c. subject to certain exceptions, limit its ability to transfer its claims against the Debtors.

*See* Plan Support Agreement § 4.

14.     <u>Agreements of the Debtors</u>:  Subject to the terms and conditions of the Plan Support Agreement the Debtors will agree to, among other things:

> a.     act in good faith and use commercially reasonable efforts to support and complete successfully the Solicitation in accordance with the terms of the Plan Support Agreement;

---

[4] The summary of the Plan Support Agreement in this Motion is qualified in its entirety by reference to the provisions of the Plan Support Agreement.  To the extent there is any discrepancy between the summary contained in the Motion and the terms set forth in the Plan Support Agreement, the terms of the Plan Support Agreement shall govern.

6

    b.    use commercially reasonable efforts to obtain any and all required regulatory and/or third-party approvals of the Restructuring;

    c.    not take any actions inconsistent with the Plan Support Agreement, the Modified Plan, and any other related Documents executed by the Debtors or the expeditious consummation of the Restructuring;

    d.    not, directly seek or solicit any discussions relating to, or enter into any agreements relating to, any alternative proposal other than the Restructuring, nor shall the Debtors solicit or direct any person or entity, including, without limitation, any member of any of the Debtors' board of directors or any holder of equity in the Company, to undertake any of the foregoing; and

    e.    do all things reasonably necessary and appropriate in furtherance of confirming the Modified Plan and consummating the Restructuring in accordance with, and within the time frames set by, the Plan Support Agreement.

*See* Plan Support Agreement § 5(a).

    15.    <u>Termination Events</u>:  The Plan Support Agreement also provides for various termination events.  Depending on the termination event, the Consenting Revolver Lenders holding at least a majority of the outstanding loans held by such holders (the "**Requisite Revolver Lenders**"), the Consenting Noteholders holding at least a majority of the outstanding principal amount of Notes held by such holders (the "**Requisite Noteholders**"), and the Debtors, each have the ability to terminate the Plan Support Agreement.  *See* Plan Support Agreement § 6(a)-(b).

    16.    The Plan Support Agreement provides that the Requisite Revolver Lenders or Requisite Noteholders may terminate the Plan Support Agreement upon the occurrence of a Creditor Termination Event, which include, among other things:

    a.    The breach in any material respect by any Debtor of any of the undertakings, representations, warranties or covenants of the Debtors which remains uncured for a period of five (5) business days after the receipt of written notice of such breach from the Requisite Revolver Lenders or Requisite Noteholders;

7

b.  The Debtors withdraw the Modified Plan or Disclosure Statement, file any motion or pleading with the Bankruptcy Court that is not consistent with the Plan Support Agreement or the Modified Plan and such motion or pleading has not been withdrawn prior to the earlier of (i) two (2) business days after the Debtors receive written notice from the applicable Class of Requisite Creditors that such motion or pleading is inconsistent with the Plan Support Agreement or the Modified Plan and (ii) entry of an order of the Bankruptcy Court approving such motion or pleading;

c.  An examiner with expanded powers or a trustee shall have been appointed in the Paragon Cases or if the Paragon Cases shall have been converted to cases under chapter 7 of the Bankruptcy Code or the Paragon Cases shall have been dismissed by order of the Bankruptcy Court;

d.  An order is entered by the Bankruptcy Court invalidating or disallowing, as applicable, the enforceability, priority or validity of the liens securing the obligations owed under the Secured Revolving Credit Agreement or the claims in respect thereof;

e.  The Bankruptcy Court grants relief that is inconsistent with the Plan Support Agreement or the Modified Plan in any respect that is materially adverse to any of the Requisite Revolver Lenders or the Requisite Noteholders;

f.  The Debtors file, propound or otherwise support any plan of reorganization other than the Modified Plan;

g.  The issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any ruling, judgment or order enjoining the consummation of or rendering illegal the Restructuring, which ruling, judgment or order has not been stayed, reversed or vacated within twenty (20) business days after such issuance;

h.  Any Consenting Class no longer owns at least 66.67% of the relevant debt of such class; provided that such class shall not have the right to terminate pursuant to this clause;

i.  At the option of a non-terminating Consenting Class, if the Consenting Revolver Lenders or the Consenting Noteholders give a notice of termination of this Agreement; and

j.  On the date that an order is entered by the Bankruptcy Court or a court of competent jurisdiction denying confirmation of the Modified Plan or refusing to approve the Disclosure Statement, provided that the Consenting Class shall not have the right to terminate the Plan Support Agreement pursuant to this clause if the Bankruptcy Court declines to approve the Disclosure Statement or denies confirmation of the Modified Plan subject only to modifications to

8

> the Modified Plan or Disclosure Statement which (i) are not inconsistent with the Modified Plan, (ii) do not create any new material obligation on any Party, and (iii) do not adversely affect the agreed treatment or rights of such Party (it being agreed that, for the avoidance of doubt, any change to the Modified Plan that results in a diminution of the value of the property to be received by a Consenting Class under the Modified Plan shall be deemed to adversely affect such Class) whether such change is made directly to the treatment of a Consenting Class or to the treatment of another Consenting Class or otherwise.

*See* Plan Support Agreement §§ 6(a)(i), (vi)-(xiii), (xvi).

17. The Plan Support Agreement further provides that the Debtors may terminate the Plan Support Agreement upon the occurrence of certain Company Termination Events, which include, among other things:

   a. The breach in any material respect by one or more of the Consenting Creditors in any Consenting Class, of any of the undertakings, representations, warranties or covenants of the Consenting Creditors set forth in the Plan Support Agreement in any material respect which remains uncured for a period of five (5) business days after the receipt of written notice of such breach, but only if the non-breaching Consenting Creditors in such Consenting Class own less than 66.67% of the relevant debt of such Consenting Class;

   b. The board of directors of the Company or the board of directors, managers, members, or partners, as applicable, of another Debtor reasonably determines in good faith based upon the advice of outside counsel that continued performance under the Plan Support Agreement would be inconsistent with the exercise of its fiduciary duties under applicable law; provided that the Company or another Debtor provides notice of such determination to the Consenting Creditors within five (5) business days after the date thereof;

   c. The issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any ruling, judgment or order enjoining the consummation of or rendering illegal the Restructuring, which ruling, judgment or order has not been stayed, reversed or vacated within twenty (20) business days after such issuance;

   d. On the date that an order is entered by the Bankruptcy Court or a court of competent jurisdiction denying confirmation of the Modified Plan or refusing to approve the Disclosure Statement, provided that the Debtors shall not have the right to terminate the Plan Support Agreement pursuant to this clause if the Bankruptcy Court declines to approve the Disclosure Statement or denies

9

confirmation of the Modified Plan subject only to modifications to the Modified Plan or Disclosure Statement which (i) are not inconsistent with the Modified Plan (as same may be modified, amended or supplemented in accordance with the terms of the Plan Support Agreement), (ii) do not create any new material obligation on any Party, and (iii) do not adversely affect the agreed treatment or rights of such Party (it being agreed that, for the avoidance of doubt, any change to the Modified Plan that results in a diminution of the value of the property to be received by a Consenting Class under the Modified Plan shall be deemed to adversely affect such Class) whether such change is made directly to the treatment of a Consenting Class or to the treatment of another Consenting Class or otherwise; and

    e. If the Consenting Revolver Lenders or the Consenting Noteholders give a notice of termination of the Plan Support Agreement.

Plan Support Agreement §§ 6(b)(i)-(iii), (viii)-(ix).

18. The Plan Support Agreement and the obligations of all Parties thereto may also be terminated by mutual agreement among the Debtors, the Requisite Revolver Lenders, and the Requisite Noteholders. *See* Plan Support Agreement § 6(c).

19. <u>Milestones</u>.  It is imperative that the Debtors quickly implement the Restructuring pursuant to the Modified Plan.  To that end, the Plan Support Agreement provides for certain milestones that must be satisfied in order to meet the goal of a prompt restructuring.  Specifically, the Plan Support Agreement, as contemplated to be amended by the PSA Amendment, provides for the occurrence of a Creditor Termination Event:

    a. at 11:59 p.m. prevailing Eastern Time on October 31, 2016 (the "**Confirmation Date**"), if the Bankruptcy Court shall not have entered an order in form and substance reasonably satisfactory to the Debtors and the Requisite Creditors confirming the Modified Plan;

    b. at 11:59 p.m. prevailing Eastern Time on December 15, 2016 (the "**Outside Date**"), if the Effective Date shall not have occurred; or

    c. at 11:59 p.m. prevailing Eastern Time on August 5, 2016, if the Debtors shall not have filed a motion with the Bankruptcy Court seeking approval of the Plan Support Agreement as to be amended by the contemplated PSA Amendment;

  d.  at 11:59 p.m. prevailing Eastern Time on September 9, 2016, if the Debtors failed to obtain entry of order approving this Motion, provided, however, this Creditor Termination Event shall only be for the benefit of the Consenting Noteholders.

*See* Plan Support Agreement §§ 6(a)(iv)-(v), (xviii)-(xix).

  20.  <u>Fiduciary Out</u>.  Importantly, the commitments of the Debtors pursuant to the Plan Support Agreement are subject to the exercise of their fiduciary duties (the "**Fiduciary Out**").  *See* Plan Support Agreement §§ 5(a), 6(b)(ii).  Nothing in the Plan Support Agreement requires the Debtors or any director, manager, member or partner of a Debtor, in their capacity as such, to take any action, or to refrain from taking any action that is inconsistent with such director's, manager's, member's or partner's fiduciary obligations under applicable law.  With respect to the Debtors, the Plan Support Agreement includes a right to terminate the Plan Support Agreement, if the Debtors' board reasonably determines in good faith, and based upon the advice of outside counsel, that continued performance under the Plan Support Agreement would be inconsistent with the exercise of its fiduciary duties under applicable law.  *Id.* § 6(b)(ii).

  21.  <u>Professional Fees and Expenses</u>.  In return for the Consenting Noteholders' and Consenting Revolver Lenders' support under the Plan Support Agreement, the Debtors have agreed, among other things, to continue to pay, until the Plan Support Agreement is terminated, the fees and expenses of certain advisors to the Consenting Noteholders and Consenting Revolver Lenders (the "**Professional Fees**") in accordance with certain existing fee letters with the Debtors.  *See* Plan Support Agreement §§ 25, 5(d).  Specifically, under the Plan Support Agreement, the Debtors have agreed to pay the Professional Fees of the Consenting Noteholders':  (i) U.S. counsel, Paul, Weiss, Rifkind, Wharton & Garrison LLP ("**Paul, Weiss**"), (ii) Delaware counsel, Young Conaway Stargatt & Taylor, LLP ("**Young Conaway**"), (iii) financial advisor, Ducera Partners LLC ("**Ducera**"), (iv) English counsel, Ashurst LLP

("**Ashurst**"), and (v) Mexican counsel, Creel, García-Cuéllar, Aiza y Enríquez, S.C. ("**Creel**" and, together with Paul, Weiss, Young Conaway, Ducera and Ashurst, the "**Noteholder Advisors**"). *Id.*[5] The Plan Support Agreement, as contemplated to be amended by the PSA Amendment, further provides that any monetary damage claim for breach of the Plan Support Agreement by the Debtors is limited to reasonable documented prepetition and postpetition costs and expenses. *See* Plan Support Agreement § 25.

## Basis for Relief Requested

**A.     Assumption of the Plan Support Agreement is a Reasonable Exercise of the Debtors' Business Judgment**

22.     The Debtors seek authority, pursuant to sections 365(a) and 105(a) of the Bankruptcy Code, to assume the Plan Support Agreement. The Debtors' assumption of the Plan Support Agreement constitutes a sound exercise of business judgment and is in the best interests of the Debtors, and should therefore be approved.

23.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). When determining whether to approve a debtor's decision to assume or reject an executory contract or unexpired lease, courts apply the "business judgment" rule. *See, e.g.*, *NLRB v. Bildisco & Bildisco (In re Bildisco),* 682 F.2d 72, 79 (3d Cir. 1982) *aff'd* 465 U.S. 513 (1984) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, [under] the 'business

---

[5] Pursuant to the Plan Support Agreement, the Debtors are also required to pay the Professional Fees of: (i) Simpson Thacher & Bartlett LLP; (ii) Landis Rath & Cobb LLP; (iii) PJT Partners, Inc. and (iv) one foreign counsel for the administrative agent for the Revolver Lenders. The Debtors are already paying these fees pursuant to the *Final Order (I) Authorizing the Debtors to Utilize Cash Collateral; and (II) Granting JPMorgan Chase Bank, N.A., as Administrative Agent for the Revolver Lenders and Collateral Agent for the Revolver Lenders and Term Loan Lenders, and Cortland Capital Market Services L.L.C. as Successor Administrative Agent for the Term Loan Lenders, Adequate Protection Pursuant to Sections 105, 361, 362, 363 and 507 of the Bankruptcy Code* [Docket No. 140].

judgment' test."); *In re Caribbean Petroleum Corp.*, 444 B.R. 263, 268 (Bankr. D. Del. 2010) (applying the business judgment standard in evaluating the rejection of an executory contract, and holding that the debtor's reliance on advisors' expert advice was sufficient to discharge that burden); *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 162 (Bankr. D. Del. 2006) ("[U]nder section 365 of the Bankruptcy Code, a debtor may assume an executory contract . . . if the debtor's decision to assume such executory contract . . . is supported by valid business justifications.").

24.  Under the business judgment rule, debtors are usually given significant discretion when requesting to assume or reject an executory contract or unexpired lease. *See In re Chipwich, Inc.,* 54 B.R. 427, 430-31 (Bankr. S.D.N.Y. 1985) (finding that a court should not interfere with a debtor's decision to assume or reject "absent a showing of bad faith or abuse of business discretion"). Accordingly, so long as a debtor's decision is reasonable and in the best interests of the bankruptcy estate, courts generally defer to the business judgment of the debtor's management. *See Stanziale v. Nachtomi (In re Tower Air, Inc.*), 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task. Delaware courts have said that it may be accomplished by showing either irrationality or inattention."); *Armstrong*, 348 B.R. at 162 ("Courts have uniformly deferred to the business judgment of the debtor to determine whether the rejection of an executory contract or unexpired lease by the debtor is appropriate under section 365(a)."); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'" (quoting *Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 849-50 (Bankr. W.D. Pa. 1987))).

RLF1 14974547V.1

25. Here, the Debtors' decision to assume the Plan Support Agreement satisfies the business judgment test. The agreement itself is the product of extensive arm's length, good-faith negotiations among the Debtors and the Consenting Creditors. Furthermore, the signing of the Plan Support Agreement was undertaken only after careful consideration by the Debtors' management and board of directors in consultation with their financial and legal advisors. The consensus embodied in the terms of the Plan Support Agreement will allow the Debtors to delever their balance sheets in an efficient and orderly manner, and will lay the foundation for a viable business with sustainable obligations to emerge. Moreover, the Restructuring embodied in the Plan Support Agreement also provides meaningful recoveries, in the form of cash and new equity to creditors and interest holders that would not otherwise be available to such parties. The consensual Restructuring, made possible by the assumption of the Plan Support Agreement, presents the most expedient and cost-effective path to a timely emergence from chapter 11. In addition, as discussed above, the Debtors' obligations under the Plan Support Agreement remain subject to their fiduciary duties as debtors and debtors in possession to maximize the value of their estates.

26. The Debtors continue to work tirelessly to consummate the Restructuring contemplated in the Plan Support Agreement. On April 8, 2016, the Debtors filed the *Second Amended Joint Chapter 11 Plan of Paragon Offshore plc and its Affiliated Debtors* [Docket No. 241] (the "**Proposed Plan**"). Subsequently, to address considerations raised during the confirmation hearing with respect to the feasibility of the Debtors' Proposed Plan, the Debtors have prepared an update to their projections reflecting actual financial results through June 30, 2016, during which period the Debtors outperformed their business plan (the "**Business Plan**"), and the impact of certain known contracting delays. In addition, the Debtors have prepared a

downside sensitivity case to the projections illustrating the additional liquidity and financial covenant flexibility required to operate the Debtors' business if the expected market recovery were to be delayed 12 to 18 months from the original projections—including if both dayrates and utilization rates for the Debtors' offshore drilling rigs were significantly lower than expected in the Business Plan. The Debtors, together with the Plan Support Parties, negotiated certain modifications to the Plan that establish cushions and additional flexibility even in a downside scenario. The resulting changes to the treatment of the Revolving Credit Agreement Claims and the Senior Notes Claims under the Modified Plan provide the Debtors sufficient additional liquidity and covenant flexibility to operate through a downturn should one continue well into 2018.

27.  The payment of the Professional Fees of the Noteholder Advisors in accordance with the Plan Support Agreement is also a reasonable exercise of the Debtors' business judgment and likewise should be approved. As stated, the Plan Support Agreement lays the foundation for a comprehensive and efficient restructuring of the Debtors' businesses, and the Consenting Noteholders' agreement to the treatment set forth in the Modified Plan significantly enhances the Debtors' liquidity position and prospects for a successful restructuring. The Noteholder Advisors were instrumental in both (i) the formulation and development of the compromise and settlement incorporated into both the original Plan Support Agreement and the modifications to give the Debtors additional flexibility through 2018 as described herein and (ii) in the financial and legal analysis that was an integral element of that process. The Debtors also understand that the Consenting Noteholders intend to continue to work constructively with the Debtors towards confirmation of the Modified Plan. Under these circumstances, it is reasonable for the Debtors' estates to cover the fees and expenses of a

constituency that will greatly facilitate the efficient and economic administration of the Debtors' chapter 11 cases.

28.  Section 105(a) of the Bankruptcy Code provides additional authority for the Court to authorize the assumption of the Plan Support Agreement.  Section 105(a) of the Bankruptcy Code provides, in pertinent part, that a court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  Entry of an order authorizing the assumption of the Plan Support Agreement would be an appropriate exercise of the Court's equitable powers because the requested relief is in the best interests of the Debtors and their estates, is consistent with the Bankruptcy Code, and will maximize value for the Debtors' stakeholders.

29.  Accordingly, the Debtors respectfully submit that they have exercised reasonable business judgment in their decision to assume the Plan Support Agreement and that such assumption is in the best interest all of parties in interest.  Accordingly, the Court should grant the relief requested.

**B.     Modification of the Automatic Stay to Effectuate  the Relief Requested is Warranted**

30.  Section 362(a) of the Bankruptcy Code operates to stay:

> the commencement or continuation, including the issuance or employment of process of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to receive a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1).  Section 362, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause."  *Id*. § 362(d)(1).

31.  The Debtors seek authorization, under section 362(d) of the Bankruptcy Code, to modify the automatic stay to the extent necessary to permit parties, including the

Requisite Revolver Lenders or Requisite Noteholders, to give notice of termination pursuant to, and in accordance with, the Plan Support Agreement. *See* Plan Support Agreement § 6(a).

## Notice

32.     No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases. Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017 (Attn: Sandeep Qusba, Esq., Kathrine A. McLendon, Esq., and Morris J. Massel, Esq.), counsel to JPMorgan Chase Bank, N.A. (a) as administrative agent under the Senior Secured Revolving Credit Agreement, dated as of June 17, 2014 (the "**Revolver Agent**"), and (b) as collateral agent under the Guaranty and Collateral Agreement, dated as of July 18, 2014 ("the "**Collateral Agent**"); (iv) Landis Rath & Cobb LLP, 919 Market Street, Wilmington, DE 19801 (Attn: Adam G. Landis, Esq. and Kerri Mumford, Esq.), co-counsel to the Revolver Agent and the Collateral Agent; (v) Kaye Scholer LLP, 250 West 55th Street, New York, NY 10019 (Attn: Mark F. Liscio, Esq. and Scott D. Talmadge, Esq.), counsel to Cortland Capital Market Services L.L.C. as administrative agent under the Senior Secured Term Loan Agreement, dated as of July 18, 2014 (the "**Term Loan Agent**"); (vi) Potter Anderson & Corroon, 1313 N. Market Street, 6th Floor, Wilmington, DE 19801 (Attn: Jeremy W. Ryan, Esq.), co-counsel for the Term Loan Agent; (vii) Morgan, Lewis, & Bockius LLP, 101 Park Avenue, New York, NY 10178 (Attn: James O. Moore, Esq., Glenn E. Siegel, Esq., and Joshua Dorchak, Esq.), counsel to Deutsche Bank Trust Company Americas as trustee under the Senior Notes Indenture, dated as of July 18, 2014, for the 6.75% Senior Notes due 2022 and the 7.25% Senior Notes due 2024; (viii) Paul, Weiss, Rifkind, Wharton, & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Andrew N. Rosenberg, Esq. and Elizabeth

R. McColm, Esq.), counsel to certain holders of the 6.75% Senior Notes due 2022 and the 7.25% Senior Notes due 2024; (ix) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: Pauline K. Morgan, Esq.), co-counsel to certain holders of the 6.75% Senior Notes due 2022 and the 7.25% Senior Notes due 2024; (x) the Securities and Exchange Commission; (xi) the Internal Revenue Service; (xii) the United States Attorney's Office for the District of Delaware; and (xiii) all parties who filed a request for service of notices under Bankruptcy Rule 2002. The Debtors respectfully submit that no further notice of this Motion is required.

33.    The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice is required.  No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: August 5, 2016
      Wilmington, Delaware

/s/  Amanda R. Steele
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Joseph C. Barsalona II (No. 6102)
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 651-7700
Facsimile:   (302) 651-7701

-and-

WEIL, GOTSHAL & MANGES LLP
Gary T. Holtzer (admitted *pro hac vice*)
Stephen A. Youngman (admitted *pro hac vice*)
Alfredo R. Pérez (admitted *pro hac vice*)
Bruce S. Meyer (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

*Attorneys for the Debtors*
*and Debtors in Possession*