# ORIGINAL

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
-------------------------------------------------x
                                    :
In re                               :        Chapter 11
                                    :
PARAGON OFFSHORE PLC, et al.,       :        Case No. 16-10386 (CSS)
                                    :
                                    :        Jointly Administered
          Debtors.[1]               :
                                    :        Re: Docket Nos. 1456, 1459, 1460, 1516 & 1582
                                    :
-------------------------------------------------x
```

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
## ORDER CONFIRMING THE FIFTH JOINT CHAPTER 11
## PLAN OF PARAGON OFFSHORE PLC AND ITS AFFILIATED DEBTORS

WHEREAS Paragon Offshore plc (in administration) ("**Paragon Parent**") and its

affiliated debtors, as debtors and debtors in possession (collectively, the "**Debtors**"), having

proposed and filed with the United States Bankruptcy Court for the District of Delaware (the

"**Bankruptcy Court**") (i) the *Fifth Joint Chapter 11 Plan of Paragon Offshore plc and Its*

*Affiliated Debtors*, dated May 2, 2017 (Docket No. 1459) (as supplemented by the Plan

Supplement (defined below), and as otherwise amended in accordance with the terms thereof and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Paragon Offshore plc (in administration) (6017); Paragon Offshore Finance Company (6632); Paragon International Finance Company (8126); Paragon Offshore Holdings US Inc. (1960); Paragon Offshore Drilling LLC (4541); Paragon FDR Holdings Ltd. (4731); Paragon Duchess Ltd.; Paragon Offshore (Luxembourg) S.à r.l. (5897); PGN Offshore Drilling (Malaysia) Sdn. Bhd. (9238); Paragon Offshore (Labuan) Pte. Ltd. (3505); Paragon Holding SCS 2 Ltd. (4108); Paragon Asset Company Ltd. (2832); Paragon Holding SCS 1 Ltd. (4004); Paragon Offshore Leasing (Luxembourg) S.à r.l. (5936); Paragon Drilling Services 7 LLC (7882); Paragon Offshore Leasing (Switzerland) GmbH (0669); Paragon Offshore do Brasil Ltda.; Paragon Asset (ME) Ltd. (8362); Paragon Asset (UK) Ltd.; Paragon Offshore International Ltd. (6103); Paragon Offshore (North Sea) Ltd.; Paragon (Middle East) Limited (0667); Paragon Holding NCS 2 S.à r.l. (5447); Paragon Leonard Jones LLC (8826); Paragon Offshore (Nederland) B.V.; and Paragon Offshore Contracting GmbH (2832). The Debtors' mailing address is 3151 Briarpark Drive, Suite 700, Houston, Texas 77042. Neville Barry Kahn and David Philip Soden, each of Deloitte LLP, are the joint administrators of Paragon Offshore plc (in administration) (the "**Joint Administrators**"). The affairs, business and property of Paragon Offshore plc (in administration) are managed by the Joint Administrators.

or this Order, the "**Plan**"),[2] a copy of which is annexed hereto as **Exhibit A**, (ii) the *Disclosure*

*Statement for Fifth Joint Chapter 11 Plan of Paragon Offshore plc and its Affiliated Debtors*,

dated May 2, 2017 (Docket No. 1460) (the "**Disclosure Statement**"); and

WHEREAS on May 19, 2017, the Debtors filed the *Notice of Filing of*

*Supplement to Fifth Joint Chapter 11 Plan of Paragon Offshore plc and Its Affiliated Debtors*

(Docket No. 1516) (as the documents contained therein have been or may be further amended or

supplemented) (the "**Initial Plan Supplement**"); and

WHEREAS on June 5, 2017, the Debtors filed the *Notice of Filing of Amended*

*Supplement to Fifth Joint Chapter 11 Plan of Paragon Offshore plc and its Affiliated Debtors*,

(Docket No. 1593) (as the documents contained therein have been or may be further amended or

supplemented) (the "**Amended Plan Supplement**," and together with the Initial Plan

Supplement, the "**Plan Supplement**"); and

WHEREAS on May 2, 2017, the Bankruptcy Court entered the *Order*

*(I) Approving Proposed Disclosure Statement and Form and Manner of Notice of Disclosure*

*Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling*

*Confirmation Hearing and (IV) Establishing Notice and Objection Procedures for Confirmation*

*of the Proposed Plan Pursuant to Sections 105, 502, 1125, 1126, and 1128 of the Bankruptcy*

*Code and Bankruptcy Rules 2002, 3003, 3017, 3018, 3020, and 9006 and Local Rules 2002-1,*

*3017-1, and 9006-1* (Docket No. 1456) (together with all schedules and exhibits thereto, the

"**Disclosure Statement Order**"), which, among other things, (i) approved the Disclosure

Statement as containing "adequate information" (as defined in section 1125 of title 11 of the

United States Code (the "**Bankruptcy Code**")), (ii) authorized the Debtors to solicit votes with

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

2

regards to the acceptance or rejection of the Plan, (iii) established solicitation procedures (the

"**Solicitation Procedures**"), (iv) approved notices, forms, and ballots to be submitted to parties

in interest (collectively, the "**Solicitation Packages**"), (v) established notice and objection

procedures in respect of confirmation of the Plan, including the form and method of notice of the

Confirmation Hearing (the "**Confirmation Hearing Notice**"); and the Confirmation Hearing

Notice, and (vi) established June 7, 2017, as the date for the commencement of the hearing to

consider confirmation of the Plan (the "**Confirmation Hearing**"); and

WHEREAS on or before May 5, 2017, the Debtors through their administrative

agent, Kurtzman Carson Consultants ("**KCC**"), caused the Solicitation Packages to be

transmitted in compliance with the Solicitation Procedures as set forth in the *Affidavit of Service*

*of James Lee re: Solicitation* filed dated May 9, 2017 (Docket No. 1475), *the Supplemental*

*Affidavit of Service of Solicitation Packages by Stephanie Delgado on behalf of Kurtzman*

*Carson Consultants LLC*, dated May 19, 2017 (Docket No. 1519), and the *Affidavit of Service of*

*James Lee re: Solicitation* dated May 30, 2017 (Docket No. 1554) filed by Kurtzman Carson

Consultants LLC ("**KCC**") (collectively, the "**Affidavits of Service**"), evidencing the timely

service of, as applicable, the Disclosure Statement (with the Plan annexed thereto) and related

solicitation, and such service is adequate as provided by Bankruptcy Rule 3017(d):

(i)     as to holders of Claims in Class 3 (Secured Lender Claims), Class 4 (Senior

Notes Claims), and Class 5 (General Unsecured Claims) appropriate ballots for

voting on the Plan, in the forms annexed as **Exhibits 2**, **3-1**, and **3-2**, and **3-3** to

the Disclosure Statement Order (the "**Ballots**"), the Disclosure Statement

Order (without Exhibits), the Confirmation Hearing Notice, the Disclosure

Statement, and the Plan; and

3

(ii)    as to holders of Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 6 (Intercompany Claims), Class 7 (Subordinated Claims), Class 8 (Parent Interests), and Class 9 (Intercompany Interests) a notice of non-voting status (a "**Notice of Non-Voting Status**") in the form annexed to the Disclosure Statement Order as **Exhibit 4**

WHEREAS on Friday, June 2, 2017, the Debtors filed the *Certification of James Lee with Respect to the Tabulation of Votes on Fifth Joint Chapter 11 Plan of Paragon Offshore plc and its Affiliated Debtors*, dated (Docket No. 1584) (the "**Voting Certification**") attesting and certifying the method and results of the tabulation for the Classes of Claims (Class 3 (Secured Lender Claims), Class 4 (Senior Notes Claims), and Class 5 (General Unsecured Claims)) entitled to vote to accept or reject the Plan; and

WHEREAS On May 17, 2017, the board of directors for Paragon Parent applied to the High Court of Justice, Chancery Division, Companies Court of England and Wales (the "**English Court**") to place Paragon Parent into administration in the United Kingdom, in accordance with the Plan. *See Notice of Commencement of Foreign Proceeding in Relation to Paragon Offshore plc* (Docket No. 1507); *Affidavit of Service of Notice of Commencement of Foreign Proceeding in Relation to Paragon Offshore plc by Alvaro Salas, Jr. on behalf of Kurtzman Carson Consultants LLC*, dated May 19, 2017 (Docket No. 1520) (the "**U.K. Administration Affidavit**"); *see also* Second Witness Statement of Todd Strickler, CR-2017-003729 (Eng. High Ct. May 19, 2017).[3] A hearing to consider the application was held by the English Court on May 23, 2017, at which time the English Court approved of the application and appointed Neville Barry Kahn and David Philip Soden, each of Deloitte LLP, as joint

---

[3] Electronic copies of all documents filed with the English Court in connection with Paragon Parent's U.K. Administration may be found on KCC's website, at http://www.kccllc.net/paragon/info/7655.

administrators of Paragon Parent.  See *Notice of Appointment of Joint Administrators to Paragon Offshore plc* (May 24, 2017) (Docket No. 1531); *Affidavit of Service of Notice of Appointment of Joint Administrators to Paragon Offshore plc by Alvaro Salas, Jr. on behalf of Kurtzman Carson Consultants LLC*, dated May 30, 2017 (Docket No. 1557) (the "**Joint U.K. Administrators Affidavit**"); see also Administration Order, CR-2017-003729 (Eng. High Ct. May 23, 2017) (the "**Administration Order**").

WHEREAS on June 5, 2017, the Debtors filed the *Memorandum of Law in Support of Confirmation of Fifth Joint Chapter 11 Plan and Response to Certain Objections*, dated (Docket No. 1588) (the "**Confirmation Brief**"), and

WHEREAS on June 5, 2017, the Debtors filed in support of confirmation of the Plan the (i) *Declaration of Thomas B. Osmun in Support of Confirmation of Debtors' Fifth Joint Chapter 11 Plan of Paragon Offshore plc and Its Affiliated Debtors*, dated June 5, 2017 (Docket No. 1590) (the "**Osmun Declaration**"), (ii) the *Declaration of Marc J. Brown in Support of Confirmation of Debtors' Fifth Joint Chapter 11 Plan of Paragon Offshore plc and Its Affiliated Debtors*, dated June 5, 2017 (Docket No. 1587) (the "**Brown Declaration**"), (iii) the *Declaration of Lee M. Ahlstrom in Support of Confirmation of Fifth Joint Chapter 11 Plan of Paragon Offshore plc and Its Affiliated Debtors*, dated June 5, 2017 (Docket No. 1586) (the "**Ahlstrom Declaration**"), and (iv) the *Declaration of Ari Lefkovits in Support of Confirmation of Fifth Joint Chapter 11 Plan of Reorganization*, dated June 5, 2017 (the "**Lefkovits Declaration**") (Docket No. 1591) (collectively, the "**Declarations in Support**"); and

WHEREAS the following objections to confirmation of the Plan having been filed:  (i) *Objection of the Unofficial Equity Committee to Confirmation of the Fifth Joint Chapter 11 Plan of Paragon Offshore plc and its Affiliated Debtors* (Docket No. 1564) (the

5

"**Equity Objection**")[4], the *Objection of the United States Trustee to Confirmation of the Fifth Joint Chapter 11 Plan of Paragon Offshore plc and its Affiliated Debtors* (Docket No. 1560) (the "**U.S. Trustee's Objection**"), and (iii) the *United States of America's Objection to Confirmation* (Docket No. 1559) (the "**I.R.S. Objection**", and together with the Equity Objection, and the U.S. Trustee Objection the "**Objections**"); and

WHEREAS the Debtors received informal comments to the Plan regarding the assumption of certain executory contracts from SAP America, Inc. ("**SAP**") and Aspen American Insurance Company and Aspen Insurance UK Limited (collectively, "**Aspen**"). Both SAP and Aspen have requested clarification of their rights under the Plan regarding their particular contracts. The Debtors continue to negotiate with both SAP and Aspen regarding their contracts, and for each, have included language in this Order clarifying their rights in connection with the Plan. The addition of such language in this Order fully resolves SAP's and Aspen's informal comments to the Plan

WHEREAS the Bankruptcy Court being familiar with the Disclosure Statement and the Plan and other relevant factors affecting the Debtors' Chapter 11 Cases (defined below); and the Bankruptcy Court being familiar with, and having taken judicial notice of, the entire record of the Debtors' Chapter 11 Cases; and upon the arguments of counsel and the evidence proffered and adduced at the Confirmation Hearing and the entire record of the Debtors' Chapter 11 Cases; and the Bankruptcy Court having found and determined that the Plan should be confirmed as reflected by the Bankruptcy Court's rulings made herein and at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor; the Bankruptcy Court hereby **FINDS, DETERMINES, AND CONCLUDES** that:

---

[4] Three individual shareholders of Paragon Parent filed informal letters in the Chapter 11 Cases on May 19, 2017 (Docket Nos. 1539 and 1540) and on June 6, 2017 (Docket No. 1601).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    Findings of Fact and Conclusions of Law.  The findings and conclusions

set forth herein and in the record of the Confirmation Hearing constitute the Bankruptcy Court's

findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil

Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**").  To the extent any of the following findings

of fact constitute conclusions of law, they are adopted as such.  To the extent any of the

following conclusions of law constitute findings of fact, they are adopted as such.

B.    Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).

The Bankruptcy Court has jurisdiction over the Debtors' Chapter 11 Cases pursuant to 28 U.S.C.

§§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District*

*Court for the District of Delaware* dated February 29, 2012.  Approval of the Plan is a core

proceeding pursuant to 28 U.S.C. § 157(b), and this Bankruptcy Court has jurisdiction to enter a

final order with respect thereto.  Venue is proper before this Bankruptcy Court pursuant to 28

U.S.C. §§ 1408 and 1409.  The Debtors are eligible debtors under section 109 of the Bankruptcy

Code.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.    Chapter 11 Petitions.  On February 14, 2016 (the "**Petition Date**"), each

Debtor commenced with this Bankruptcy Court a voluntary case under chapter 11 of the

Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors are authorized to continue to operate

their businesses and manage their properties as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.  On January 27, 2017, the Office of the United States

Trustee appointed the Official Committee of Unsecured Creditors (Docket No. 1059).  No trustee

or examiner has been appointed in these chapter 11 cases.  Further, in accordance with an order

7

of this Bankruptcy Court, the Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

D.      Judicial Notice. The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for the purposes of confirmation of the Plan) the docket of these Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases. Any resolution of objections to confirmation of the Plan explained on the record at the Confirmation Hearing is hereby incorporated by reference. All unresolved objections, statements, informal objections, and reservations of rights, if any, related to the Plan or confirmation of the Plan are overruled on the merits.

E.      Burden of Proof. Each of the Debtors has met the burden of proving the elements of sections 1129(a) of the Bankruptcy Code by a preponderance of the evidence.

F.      Disclosure Statement Order. On May 2, 2017, the Bankruptcy Court entered the Disclosure Statement Order, which, among other things, approved the Disclosure Statement as containing "adequate information" within the meaning of section 1125 of the Bankruptcy Code and authorized the Debtors to solicit acceptances and rejections of the Plan.

G.      Solicitation. The Solicitation Packages were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), and the Disclosure Statement Order. The forms of the Ballots adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for holders of Class 3 (Secured Lender Claims), Class 4 (Senior Notes Claims), and

Class 5 (General Unsecured Claims)—the Classes of Claims entitled to vote to accept or reject the Plan (collectively, the "**Voting Classes**"). The period during which the Debtors solicited acceptances to the Plan was a reasonable period of time for holders to make an informed decision to accept or reject the Plan. The Debtors were not required to solicit votes from the holders of Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), and Class 6 (Intercompany Claims), as each such class is Unimpaired under the Plan and are deemed to have accepted the Plan. The Debtors were not required to solicit votes from the holders of Class 7 (Subordinated Claims) and Class 8 (Parent Interests) as each class is Impaired and pursuant to section 1126(g) of the Bankruptcy Code are deemed to reject the Plan. The Debtors were not required to solicit votes from the holders of Class 9 (Intercompany Interests) as they are either Unimpaired, in which case the holders of such Intercompany Interests conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or fully Impaired, in which case the holders of such Intercompany Interests conclusively are presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

   H. As described in and as evidenced by the KCC Affidavits and the Voting Certification the transmittal and service of the Solicitation Packages was timely, adequate, and sufficient under the circumstances. The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws and regulations.

   I. <u>Voting</u>. As evidenced by the KCC Affidavits and the Voting Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good

faith, and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law. As evidenced by the Voting Certification, two of the three voting Classes, Class 3 (Secured Lender Claims) and Class 4 (Senior Notes Claims), voted to accept the Plan.

J.     Notice. As described in and as evidenced by the KCC Affidavits and the Voting Certification, the transmittal and service of the Solicitation Packages were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

K.     Plan Supplement. On May 19, 2017, the Debtors filed the Plan Supplement (Docket No. 1516) containing substantially final forms of the following documents (i) forms of Articles of Association of the Reorganized Paragon (the "**Amended Organizational Documents**") (to the extent such amendment was required), (ii) list of directors and officers of the Reorganized Debtors (except Reorganized Paragon), (iii) form of U.K. Implementation Agreement, (iv) form of Take Back Debt Agreement, (v) form of New Letter of Credit Agreement, (vi) form of Existing L/C Escrow Agreement, (vii) Illustrative Allocation and Distribution of Plan Consideration on Account of Outstanding Letters of Credit, (viii) form of Registration Rights Agreement, (ix) form of Litigation Trust Agreement, (x) Schedule of Rejected Contracts and Leases, and (xi) the list of Retained Causes of Action. On June 5, 2017, the Debtors filed a supplement to the Plan Supplement (Docket No. __). All such materials

comply with the terms of the Plan, and the filing and notice of such documents, including the notice of filing of Plan Supplement, the Rejection Notice (as defined below), and the Cure Notice (as defined below), is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations, and no other or further notice is or shall be required. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date subject to compliance with the Bankruptcy Code and the Bankruptcy Rules, *provided that* no such alteration, amendment, update, or modification shall be inconsistent with the terms of this Order of the terms or the Plan.

L.    <u>Modifications to the Plan</u>. On June 5, 2017, the Debtors filed a modified *Fifth Joint Chapter 11 Plan of Paragon Offshore plc and Its Affiliated Debtors* (Docket No. 1582). The modifications made to the Plan since the solicitation (i) complied in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and (ii) do not require re-solicitation of votes with respect to the Plan. Adequate and sufficient notice of such modifications has been given, no further notice is or shall be required, and such modifications are approved in full. The votes cast to accept the Plan are deemed to have been cast with respect to the Plan as so modified. Pursuant to Section 12.1 of the Plan, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to the Plan and subject to the reasonable consent of the Creditors' Committee and the Requisite Lenders, the Debtors may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan, and any holder

11

of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

M.    Bankruptcy Rule 3016. In accordance with Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtors as proponents. The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

## Compliance with the Requirements of Section 1129 of the Bankruptcy Code

N.    Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a)    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). In addition to Administrative Expense Claims, Fee Claims, and Priority Tax Claims, which need not be classified, Articles III and IV of the Plan classify nine (9) Classes of Claims against and Interests in the Debtors, based on differences in the legal nature or priority of such Claims against and Interests in each Debtor. The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Articles III and IV of the Plan specify that Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 6 (Intercompany Claims) and, in certain cases, Class 9 (Intercompany Interests) are

12

Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Articles III and IV of the Plan designate Class 3 (Secured Lender Claims), Class 4 (Senior Notes Claims), Class 5 (General Unsecured Claims), Class 7 (Subordinated Claims), Class 8 (Parent Interests) and, in certain cases, Class 9 (Intercompany Interests) as Impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)     No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)     Implementation of the Plan (11 U.S.C. § 1123(a)(5)). The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including, without limitation, (i) the continued corporate existence of the Reorganized Debtors, (ii) the general authority for the Reorganized Debtors to take all actions necessary or appropriate to effect any transaction described in, approved by, or necessary or appropriate to effectuate the Plan, as set forth more fully in Article V of the Plan, (iii) the Take Back Debt Agreement, (iv) the New Letter of Credit Agreement, (v) the Existing L/C Escrow Agreement and the Illustrative Allocation and Distribution of Plan Consideration on Account of Outstanding Letters of Credit, (vi) the issuance of New Equity Interests, with such interests to be governed by the terms of the Shareholders Agreement, if any, (vii) the Shareholders Agreement

and Registration Rights Agreement, (vii) appointment of new officers and composition of the

board of directors of the Reorganized Debtors (including the New Board), (viii) subject to the

exceptions set forth in Section 5.5 of the Plan, the cancellation of the 6.75% Notes, the 7.25%

Notes, and the Senior Notes Indenture, (ix) the composition of the board of directors and list of

officers of each Reorganized Debtor, (x) the treatment of all Intercompany Interests held by

Paragon Parent or a direct or indirect subsidiary of Paragon Parent, (xi) the taking of all

necessary or appropriate actions by the Debtors or Reorganized Debtors, as applicable, to

effectuate the Restructuring Transactions under and in connection with the Plan, (xii)  the U.K.

Implementation Agreement, the conduct of the U.K. Administration and consummation of the

U.K. Sale Transaction, (xiii) the settlement of certain claims and controversies, (xiv) the

payment of Restructuring Expenses, (xv) the preservation of Causes of Action, and (xvi) the

creation of the Litigation Trust and the transfer of the Noble Claims to it.  Moreover, the Debtors

or the Reorganized Debtors, as applicable, will have, respectively, sufficient Cash to make all

Plan Distributions required as of the applicable date of such Plan Distribution pursuant to the

terms of the Plan.

      (f)     <u>Non-Voting Equity Securities / Allocation of Voting Power (11 U.S.C.
§ 1123(a)(6))</u>.  Section 5.3 of the Plan provides that the Reorganized Debtors are authorized to

issue all Plan-related securities and documents, including the New Equity Interests.  The

issuance of the New Equity Interests complies with section 1123(a)(6) of the Bankruptcy Code.

The organizational documents of the applicable Reorganized Debtors, including the

Memorandum and Articles of Association of Reorganized Paragon (collectively, the "**Amended

Organizational Documents**") prohibit the issuance of non-voting equity securities, to the extent

applicable, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

14

(g)    Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).  The Plan
Supplement and Section 5.8 of the Plan contain provisions with respect to the manner of
selection of directors and officers of the Reorganized Debtors that are consistent with the
interests of creditors, equity security holders, and public policy, thereby satisfying section
1123(a)(7) of the Bankruptcy Code.  Section 5.8 of the Plan provides for the manner by which
the composition of the board of directors of the Reorganized Debtors will be selected, and also
provides for the manner by which the composition of the board of directors of the Reorganized
Debtors will be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code.  The
Debtors have identified the directors and officers of each Reorganized Debtor in the Plan
Supplement to the extent such information is available (Docket No. 1516).  Further, the Creditors
Committee and the Requisite Lenders have appointed a search committee (the "**Search
Committee**") comprised of two members of the Creditors Committee, two Term Lenders and
two Revolving Lenders.  The Debtors are retaining Korn Ferry as the consultant to identify
potential candidates to serve as officers and/or directors of Reorganized Paragon.  The Search
Committee has been interviewing candidates to serve as chairperson of the board of Reorganized
Paragon.  The Search Committee expects to announce that appointment prior to the Effective
Date.  The Search Committee shall have full power and authority to appoint the officers and
directors of Reorganized Paragon at any time prior to or following the Effective Date.

(h)    Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C.
§ 1123(b)(1)).  Pursuant to Articles III and IV of the Plan, as contemplated by section 1123(b)(1)
of the Bankruptcy Code, Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims),
and Class 6 (Intercompany Claims) are Unimpaired.  Class 3 (Secured Lender Claims), Class 4
(Senior Notes Claims), Class 5 (General Unsecured Claims), Class 7 (Subordinated Claims), and

Class 8 (Parent Interests) are Impaired.  Holders of Class 9 (Intercompany Interests) are either Impaired or Unimpaired.

(i)      Assumption and Rejection (11 U.S.C. § 1123(b)(2)).  Article VIII of the Plan addresses the assumption and rejection of executory contracts and unexpired leases, and meets the requirements of section 365(b) of the Bankruptcy Code.  In accordance with Section 8.2 of the Plan, the Debtors have filed and served, as set forth in the *Affidavits of Service of Alvaro Salas, Jr.* (Docket Nos. 1536 and 1555), the *Notice of Cure Amounts with Respect to Executory Contracts and Unexpired Leases to be Assumed by the Debtors Pursuant to the Fifth Joint Chapter 11 Plan of Paragon Offshore PLC and its Affiliated Debtors* (Docket No. 1518) (the "**Cure Notice**") on parties to executory contracts and unexpired leases to be assumed reflecting the Debtors' intention to assume the contract or lease in connection with the Plan and setting forth the proposed Cure Amount (if any).  If a counterparty to any executory contract or unexpired lease that the Debtors or Reorganized Debtors, as applicable, intend to assume has not received such a notice, the Cure Amount for such executory contract or unexpired lease shall be Zero Dollars ($0).  On May 19, 2017, the Debtors filed the *Notice of Executory Contracts and Unexpired Leases to be Rejected by the Debtors Pursuant to the Fifth Joint Chapter 11 Plan of Paragon Offshore plc and its Affiliated Debtors* (Docket no. 1517) (the "**Rejection Notice**").

(j)      Settlement, Retention of Causes of Action, and Reservation of Rights (11 U.S.C. § 1123(b)(3)).  Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise or settlement of all Claims, Interests, and controversies resolved under the Plan, and the entry of this Order constitutes approval of the compromise or settlement of all such Claims, Interests, and

controversies, as well as a finding by this Bankruptcy Court that such compromise settlement is (i) in the best interests of the Debtors, their Estates, the Reorganized Debtors and their respective property and stakeholders, including the holders of Claims and Interests, and (ii) fair, equitable and within the range of reasonableness.  Further, in accordance and compliance with section 1123(b)(3)(A) of the Bankruptcy Code, section 10.10 of the Plan properly retains certain Causes of Action of the Reorganized Debtors and, in accordance and compliance with section 1123(b)(3)(B) of the Bankruptcy Code, Section 5.7 of the Plan properly transfers and provides for enforcement of the Noble Claims by the Litigation Trust.

(k)    Unaffected Rights of Holders of Classes of Claims (11 U.S.C. § 1123(b)(5)).  In accordance and in compliance with section 1123(b)(5) of the Bankruptcy Code, the Plan properly modifies the rights of holders of Claims in Class 3 (Secured Lender Claims), Class 4 (Senior Notes Claims), Class 5 (General Unsecured Claims), Class 7 (Subordinated Claims), Class 8 (Parent Interests), and, in certain cases Class 9 (Intercompany Interests).  The Plan also leaves unaffected the rights of holders of Claims and Interests in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 6 (Intercompany Claims) and, in certain cases, Class 9 (Intercompany Interests).  Thus, the Plan complies with section 1123(b)(5) of the Bankruptcy Code.

(l)    Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).  The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.  The failure to specifically address a provision of the Bankruptcy Code in this Order shall not diminish or impair the effectiveness of this Order.

RLF1 17677676V.1

(m)    <u>Debtors Are Not Individuals (11 U.S.C.§ 1123(c))</u>.  The Debtors are not individuals.  Accordingly, section 1123(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

(n)    <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>.  Section 8.2 of the Plan provides for the satisfaction of default claims associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code.  All Cure Amounts will be determined in accordance with the underlying agreements and applicable nonbankruptcy law.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

O.    <u>The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The Debtors have complied with the applicable provisions of the Bankruptcy Code.  Specifically:

(a)    Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code; and

(b)    The Debtors have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court, and in transmitting the Plan, the Plan Supplement, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan, the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable nonbankruptcy law, the Disclosure Statement Order, and all other applicable law.

P.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtors have proposed the Plan (and all documents necessary to effectuate the Plan) in good faith and not by

any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the Declarations in Support, the record of the Confirmation Hearing, and all other proceedings held in these Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful reorganization of the Debtors. The Plan (including the Plan Supplement and all other documents necessary to effectuate the Plan) was negotiated at arm's length among representatives of the Debtors, the Steering Committee of Revolving Lenders, the Ad Hoc Committee of Term Lenders, the Creditors' Committee, and their respective professionals. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions including without limitation, Sections 10.5, 10.6, 10.7, and 10.8 of the Plan, have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors' successful reorganization.

        Q.      <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by the Debtors for services or for costs and expenses of the Debtors' professionals in connection with their Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

        R.      <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtors upon the Effective Date of the Plan and the nature and compensation for such officers and

directors have been fully disclosed to the extent such information is available, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Interests in the Debtors and with public policy. The composition of the boards of directors and list of officers for each of the Reorganized Debtors, except Reorganized Paragon, has been disclosed in the Plan Supplement (Docket Nos. 1516 & 1593) prior to the Confirmation Hearing. Each such member will serve in accordance with the terms and subject to the conditions of the Amended Organizational Documents, and other relevant organizational documents, each as applicable. Further, the Creditors Committee and the Requisite Lenders have appointed a Search Committee comprised of two members of the Creditors Committee, two Term Lenders and two Revolving Lenders. The Debtors are retaining Korn Ferry as the consultant to identify potential candidates to serve as officers and/or directors of Reorganized Paragon. The Search Committee has been interviewing candidates to serve as chairperson of the board of Reorganized Paragon. The Search Committee expects to announce that appointment prior to the Effective Date. The Search Committee shall have full power and authority to appoint the officers and directors of Reorganized Paragon at any time prior to or following the Effective Date.

S.    No Rate Changes (11 U.S.C. § 1129(a)(6)). The Plan does not provide for rate changes by any of the Reorganized Debtors. Accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

T.    Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis provided in the Disclosure Statement and the other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish

that each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

U.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 6 (Intercompany Claims), and in certain cases, Class 9 (Intercompany Interests) are Classes of Unimpaired Claims that are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Class 7 (Subordinated Claims), Class 8 (Parent Interests), and, in certain cases Class 9 (Intercompany Interests) are Classes of Impaired Claims or Interests that are conclusively presumed to have rejected the Plan in accordance with section 1126(g) of the Bankruptcy Code.  Pursuant to section 1126(b) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that holders of Claims in Class 7 (Subordinated Claims), Class 8 (Parent Interests), and, in certain cases, Class 9 (Intercompany Interests) are Impaired and are deemed to have rejected the Plan.

V.    Treatment of Administrative Expense Claims, Priority Tax Claims, and Priority Non-Tax Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Allowed Administrative Expense Claims and Fee Claims pursuant to Sections 2.1 and 2.2, respectively, of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.  The treatment of Priority Non-Tax Claims pursuant to Sections 4.1 of the Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code.  The treatment of Priority Tax Claims pursuant to Section 2.3 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

21

W.      Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). Two of the three Voting Classes, Class 3 (Secured Lender Claims) and Class 4 (Senior Notes Claims), have voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

X.      Feasibility (11 U.S.C. § 1129(a)(11)). The information in the Disclosure Statement, the Declarations in Support, and the evidence proffered or adduced at the Confirmation Hearing by the Debtors (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and their business in the ordinary course and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

Y.      Payment of Fees (11 U.S.C. § 1129(a)(12)). All fees currently payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Code, have been or will be paid on the Effective Date, or as soon as practicable thereafter, pursuant to Section 12.5 of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

Z.      Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). Section 8.4 of the Plan provides that all employment and severance policies, and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental

22

death and dismemberment insurance plans, are deemed to be, and shall be treated as, executory contracts under the Plan and, on the Effective Date, will be assumed pursuant to sections 365 and 1123 of the Bankruptcy Code.

      AA.   No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

      BB.   Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)).  The Debtors are not individuals.  Accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

      CC.   No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).  The Debtors are each a moneyed, business, or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

      DD.   No Unfair Discrimination, Fair and Equitable (11 U.S.C. §1129(b).  Claims in Class 7 (Subordinated Claims), Class 8 (Parent Interests), and, in certain cases, Class 9 (Intercompany Interests) are deemed to have rejected the Plan (the "**Rejecting Classes**").  Notwithstanding the fact that the Rejecting Classes are deemed to have voted to reject the Plan, based upon evidence and arguments presented at the Confirmation Hearing and any related briefing submitted after the Confirmation Hearing, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code because: (i) there is at least one Impaired accepting class who voted to accept the Plan; (ii) the Plan does not discriminate unfairly with respect to the Rejecting Classes; and (iii) the Plan is fair and equitable with respect to:

- Class 5 (General Unsecured Claims) notwithstanding the difference in estimated recovery between that class and Class 4 (Senior Notes Claims) because Class 4 (Senior Notes Claims) is legally distinct in nature from Class 5 (General Unsecured Claims). The holders of Claims in Class 4 (Senior Notes Claims) derive their Claims from the Senior Notes Indenture, a legal instrument allowing for periodic payments on Senior Notes. The holders of Claims in Class 5 (General Unsecured Claims) instead derive their Claims primarily from Claims arising in the course of the Debtors conducting their business which are not Administrative, Priority, or Secured Claims—these holders are basic contract counterparties, landlords, vendors with disputed litigation claims, and other various small holders of Claims—none of these claims are based on indentures or similar financial instruments. Accordingly, the difference in treatment between these two classes is permissible, as each Class possesses different legal rights;

- Class 8 (Parent Interests) because no holder of any Interest junior to Paragon Interests at Paragon Parent is receiving any property under the Plan, as required by sections 1129(b)(1) and (b)(2)(C) of the Bankruptcy Code; and

- the Rejecting Classes pursuant to section 1129(b)(1) and (b)(2)(B) of the Bankruptcy Code notwithstanding the fact that Class 9 (Intercompany Interests) are in certain cases Unimpaired under the Plan because by allowing the stakeholders to select which Intercompany Interests are to remain Impaired or Unimpaired, the Debtors can strategically implement the Plan as to which Debtors—those that are dormant or potentially carrying large foreign liabilities—should be left behind pursuant to the U.K. Sale Transaction, and which Debtors—those that are beneficial and essential to the reorganized business operations going forward—are to be transferred over to Reorganized Paragon. Full impairment or unimpairment of these Intercompany Interests would jeopardize the Debtors' carefully designed reorganizational strategy, and would make the transactions and structural changes necessary to successfully reorganize complex and difficult to accomplish.

EE.    Only One Plan (11 U.S.C. § 1129(c)).  The Plan is the only plan currently on file in each of these Chapter 11 Cases.  Accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

FF.    Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

GG.    <u>Small Business Case – 11 U.S.C. § 1129(e).</u>  None of these Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

HH.    <u>Satisfaction of Confirmation Requirements.</u>  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

II.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e)).</u>  Based on the record before the Bankruptcy Court in these Chapter 11 Cases, including evidence presented at the Confirmation Hearing, the Debtors and their directors, officers, employees, members, agents, advisors, and professionals (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under or in connection with the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 10.7 of the Plan.

JJ.    Implementation.  The Plan Documents and all other related, necessary, or appropriate documents have been negotiated in good faith and at arm's length, the terms and conditions thereof are fair and reasonable and entry therein is in the best interests of the Debtors, the Estates, and all holders of Claims and Interests.  The Plan Documents and all other related, necessary, or appropriate documents shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements that are not in conflict with any federal or state law.

KK.    Injunction, Releases, and Exculpation.  The Bankruptcy Court has jurisdiction under 28 U.S.C. §§ 1334(a) and (b) to approve the injunction, releases, and exculpation set forth in Sections 10.5, 10.6, 10.7, and 10.8 of the Plan, respectively.  Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases set forth in Sections 10.5 and 10.6 of the Plan, respectively, if, as has been established here, based upon the record in the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, such provisions (i) were integral to the agreement among the various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' Estates, (iii) are fair, equitable, and reasonable, and (iv) are in the best interests of the Debtors, their Estates, and parties in interest.  The releases contained in Section 10.6(b) of the Plan were disclosed and explained on the Ballots, in the Disclosure Statement, and in the Plan.  The release provisions contained in Section 10.6(b) of the Plan are consensual because the releases therein are provided only by (a) the holders of all Claims or Interests who vote to accept the Plan; (b) the holders of Claims or Interests that are Unimpaired under the Plan and do not timely object to the releases provided for in the Plan; (c) the holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting

the releases set forth herein; (d) the holders of Claims or Interests who vote to reject the Plan but

do not opt out of granting the releases set forth herein; (e) the Revolving Credit Facility Agent;

(f) the Term Loan Agent; (g) the Senior Notes Indenture Trustee; (h) each of the Global

Coordinators, Joint Lead Arrangers, Joint Bookrunners, Senior Managing Agents, and Managing

Agents named in the Term Loan Agreement; (i) JPMorgan Chase Bank, N.A., in its capacity as

former administrative agent under the Term Loan Agreement; (j) the Disbursing Agent; (k) each

of the Syndication Agents, Documentation Agents, Joint Lead Arrangers and Joint Lead

Bookrunners named in the Revolving Credit Agreement; (l) each of the Issuing Banks under the

Revolving Credit Agreement; and (m) with respect to each of the foregoing entities, such

entities' predecessors, professionals, restructuring advisors, successors, assigns, subsidiaries,

affiliates, managed accounts and funds, current and former officers and directors, principals,

shareholders, members, partners, managers, employees, subcontractors, agents, advisory board

members, financial advisors, attorneys, accountants, investment bankers, consultants,

representatives, management companies, fund advisors, and other professionals, and such

entities' respective heirs, executors, estates, servants, and nominees, in each case in their

capacity as such.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule

9019(a), the injunction, releases, and exculpation set forth in the Plan and implemented by this

Order are fair, equitable, reasonable, and in the best interests of the Debtors and the Reorganized

Debtors and their Estates, creditors, and equity holders.  The releases of non-Debtors under the

Plan are fair to holders of Claims and are necessary to the proposed reorganization, thereby

satisfying the applicable standards contained in *In re Indianapolis Downs, LLC*, 486 BR 286,

303 (Bankr D Del 2013) and are otherwise appropriate under *In re W.R. Grace & Co.*, 475 B.R.

34, 107 (D. Del. 2012).  Such releases are given in exchange for and are supported by fair,

sufficient, and adequate consideration provided by each and all of the Released Parties. The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the injunction, releases, and exculpation provided for in Sections 10.5, 10.6, 10.7, and 10.8 of the Plan. Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, including all Supporting Declarations (as defined in the Confirmation Brief), this Bankruptcy Court finds that the injunction, releases, and exculpation provisions set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunctions, releases, and exculpation would seriously impair the Debtors' ability to confirm the Plan.

      LL.   <u>Good Faith</u>. The Released Parties will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, and transfers set forth therein and (ii) take the actions authorized and directed by this Order.

      MM.   <u>Objections</u>. All parties have had a full and fair opportunity to litigate all issues raised, or which might have been raised, and all objections have been fully and fairly litigated.

      NN.   <u>Conditions Precedent to Effective Date</u>. The conditions precedent to the Effective Date set forth in Section 9.1 (other than 9.1(a)) of the Plan may be waived in writing by the Debtors (subject to the written consent of the Creditors' Committee and the Requisite Lenders), without notice or order of the Bankruptcy Court.

      OO.   <u>Retention of Jurisdiction</u>. The Bankruptcy Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases (other than the U.K. Administration), including the matters set forth in

Article XI of the Plan and section 1142 of the Bankruptcy Code, *provided that* the Bankruptcy Court shall not retain jurisdiction over any matters arising out of or related to the U.K. Implementation Agreement, the U.K. Administrative Reserve, the U.K. Sale Transaction, the Take Back Debt Agreement, the New Letter of Credit Agreement, the Existing L/C Escrow Agreement, the Illustrative Allocation and Distribution of Plan Consideration on Account of Outstanding Letters of Credit, the Registration Rights Agreement, or the Shareholders Agreement.

## ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1. Findings of Fact and Conclusions of Law. The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2. Confirmation of the Plan. The Plan and each of its provisions shall be, and hereby are, **CONFIRMED** under section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement are authorized and approved. The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Order.

3. Solicitation. The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.

4.     Objections.  All objections, responses to, and statements and comments, if any, in opposition to the Plan, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, overruled in their entirety for the reasons stated on the record.

5.     Plan Modifications.  On June 5, 2017, the Debtors filed a modified *Fifth Joint Chapter 11 Plan of Paragon Offshore plc and Its Affiliated Debtors* (Docket No. 1582). The modifications made to the Plan following the solicitation of votes thereon satisfy the requirements of section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  Pursuant to Section 12.1 of the Plan, prior to the Effective Date, and subject to the reasonable consent of the Creditors' Committee and the Requisite Lenders, this Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court.

6.     No Action.  Pursuant to applicable nonbankruptcy law and section 1142(b) of the Bankruptcy Code, no action of the respective directors or stockholders of the Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan, including without limitation, any contract, instrument, or other document included in the Plan Supplement.

7.     Binding Effect.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on or after entry of this Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind every holder of a Claim against or Interest in any

RLF1 17677676V.1

Debtor, any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any other party in interest in the Chapter 11 Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing regardless of whether the Claim or Interest of such holder is impaired under the Plan and whether such holder has accepted or is deemed to have accepted the Plan.

8.      <u>Free and Clear</u>.  Except as otherwise provided in the Plan or this Order, on and after the Effective Date, the Reorganized Debtors shall be vested with all Assets of the Estates, including all claims, rights, and Causes of Action and any property acquired by the Debtors under or in connection with the Plan, free and clear of all Claims, Liens, encumbrances, charges, and Interests.  From and after the Effective Date, the Reorganized Debtors may operate each of their businesses and may use, acquire, and dispose of property and prosecute, compromise, or settle any Claims (including any Administrative Expense Claims) and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan or this Order.  Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for Professional Persons' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

9.      <u>Continued Corporate Existence</u>.  Pursuant to Section 5.2 of the Plan, the Debtors shall continue to exist after the Effective Date as Reorganized Debtors in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the Amended Organizational Documents.  On or after the Effective Date, each Reorganized Debtor may, in its sole discretion, take such action as permitted by

31

applicable law and such Reorganized Debtor's organizational documents, as such Reorganized Debtor may determine is reasonable and appropriate, including, without limitation, causing: (i) a Reorganized Debtor to be merged into another Reorganized Debtor or an affiliate of a Reorganized Debtor; (ii) a Reorganized Debtor to be dissolved or a liquidator, administrator, compulsory manager, or other similar officer appointed to such Reorganized Debtor; (iii) the legal name of a Reorganized Debtor to be changed; or (iv) the closure of a Reorganized Debtor's Chapter 11 Case on the Effective Date or any time thereafter.

10.     Implementation of the Plan.  Upon entry of this Order, the Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, or necessary or appropriate to effectuate the Plan, including, without limitation: (i) the execution, delivery, and implementation of appropriate agreements (including, but not limited to, the U.K. Implementation Agreement) or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms and conditions of the Plan and the Plan Documents and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates of incorporation and memoranda and articles of association and amendments thereto, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable law; (iv) the Restructuring Transactions (including the U.K. Sale Transaction and the Liquidating Subsidiary Wind-Down); and (v) all other actions that the applicable Entities determine to be necessary or appropriate, including, without limitation,

32

making filings or recordings that may be required by applicable law.  In addition, pursuant to Sections 5.13 of the Plan, the Debtors shall be authorized to take any and all actions necessary to consummate the Corporate Restructuring and the U.K. Sale Transaction and shall be authorized but not directed to take any and all actions necessary to consummate the Liquidating Subsidiary Wind-Down.

           11.    <u>Issuance of New Equity Interests and Securities and Entry Into Take Back Debt Agreement, New Letter of Credit Agreement, and Existing L/C Escrow Agreement</u>.  Upon entry of this Order, the Debtors are authorized and empowered, without further approval of the Bankruptcy Court or any other party, to take such actions and to perform such acts as may be necessary, desirable, or appropriate to issue or cause to be issued or to execute, deliver, and perform all plan-related securities and documents, including, without limitation, the New Equity Interests, the Take Back Debt Agreement, the New Letter of Credit Agreement, the Existing L/C Escrow Agreement, the Litigation Trust Agreement, and the Shareholders Agreement thereunder for distribution in accordance with the terms of the Plan and any corporate resolutions.  The New Equity Interests, the Take Back Debt Agreement, the New Letter of Credit Agreement, the Existing L/C Escrow Agreement, the Litigation Trust Agreement, and the Shareholders Agreement shall be, upon issuance, execution and delivery, legal, valid, and binding obligations of the Reorganized Debtors and enforceable against the Reorganized Debtors in accordance with their terms.  In addition, pursuant to Section 5.9 of the Plan, (i) each Person that receives any portion of the New Equity Interests (including beneficial holders and their successors and assigns) shall be deemed to have executed, without any further action by any party, the Shareholders Agreement, (ii) each Person that upon receipt of any portion of the New Equity Interests pursuant to the Plan holds ten percent (10%) or more of the total outstanding New

Equity Interests as of the Effective Date shall be deemed to have executed, without any further action by any party, the Registration Rights Agreement, (iii) each Person that receives any portion of the Take Back Debt shall be deemed to have executed, without any further action by any party, the Take Back Debt Agreement, and (iv) each Person that is party to the New Letter of Credit Agreement shall be deemed to have executed, without any further action by any party, the Existing L/C Escrow Agreement(s).

12.     Compliance with Section 1123(a)(6) of the Bankruptcy Code.  The Amended Organizational Documents and the terms governing the issuance of the New Equity Interests comply in all respects with section 1123(a)(6) of the Bankruptcy Code and are hereby approved.  The adoption and filing of the Amended Organizational Documents are hereby authorized, ratified, and approved.  The Debtors have complied in all respects, to the extent necessary, with section 1123(a)(6) of the Bankruptcy Code.

13.     Take Back Debt Agreement.  On the Effective Date, the Debtors and Reorganized Debtors, as applicable, are authorized and empowered, without further approval of this Bankruptcy Court or any other party, to take such actions and to perform such acts as may be necessary, convenient, desirable, or appropriate to execute the Take Back Debt Agreement in accordance with the Plan and to execute and deliver all agreements, security agreements, pledge agreements, mortgages, documents, instruments, indentures, and certificates relating thereto (the **"Credit Documents"**) and to perform all of their obligations thereunder.  On the Effective Date (i) upon the granting of liens and security interests and the continuation of existing liens in accordance with the Take Back Debt Agreement, the lenders thereunder shall have valid, binding, and enforceable liens on the collateral specified in the Take Back Debt Agreement and related guarantee and collateral documentation; and (ii) upon the granting of guarantees,

mortgages, pledges, liens, and other security interests in accordance with the Take Back Debt

Agreement, the guarantees, mortgages, pledges, liens and other security interests granted and

continued to secure the obligations arising under the Take Back Debt Agreement shall be granted

and continued in good faith as an inducement to the lenders thereunder to convert to term loans

and shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not

otherwise be subject to avoidance, and the priorities of such liens and security interests shall be

as set forth in the Take Back Debt Agreement and related guarantee and collateral

documentation.  The Collateral Agent (as defined in the Take Back Debt Agreement) under the

Credit Documents is authorized to file, with the appropriate authorities, financing statements and

other documents and to take any and all other actions to evidence, validate, and perfect such liens

and security interests. The Debtors and the Reorganized Debtors are authorized to execute and

deliver to the Collateral Agent any such agreements, financing statements, instruments, and other

documents and obtain all approvals and consents the Collateral Agent under the Take Back Debt

Agreement may reasonably request or that are required to establish and perfect such liens and

security interests under the provisions of the applicable state, provincial, federal, or other law

(whether domestic or foreign) that would be applicable in the absence of the Plan and this Order,

and are authorized to cooperate and make all other filings and recordings that otherwise would

be reasonably necessary under applicable law to perfect and/or give notice of such liens and

security interests to third parties.

        14.     Exemption from Securities Law.  The issuance of and the distribution

under the Plan of the New Equity Interests or an interest in the Litigation Trust (to the extent it

may be deemed to be a security) to the holders of Secured Lender Claims and Senior Notes

Claims under Section 4.3 and 4.4 of the Plan shall be exempt from registration under the

Securities Act and any other applicable securities laws pursuant to section 1145 of the

Bankruptcy Code. These securities may be resold without registration under the Securities Act

or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the

Securities Act, unless the holder is an "underwriter" with respect to such securities, as that term

is defined in section 1145(b) of the Bankruptcy Code. In addition, such section 1145 exempt

securities generally may be resold without registration under state securities laws pursuant to

various exemptions provided by the respective laws of the several states.

    15. <u>Cancellation of Certain Existing Agreements</u>. Except for the purpose of

evidencing a right to a Plan Distribution, the 6.75% Notes, the 7.25% Notes, and the Senior

Notes Indenture shall be deemed cancelled on the Effective Date; *provided*, *however*, that the

Senior Notes Indenture shall continue in effect for the purposes of permitting the Senior Notes

Indenture Trustee to (i) make distributions under the Plan as provided therein and perform such

other necessary functions with respect thereto, (ii) seek compensation and/or reimbursement of

fees and expenses in accordance with the terms of the Plan, and (iii) maintain and assert any

rights or exercise any charging liens for reasonable fees, costs, and expenses thereunder,

including, without limitation, the right to seek indemnification.

    16. <u>Subordination</u>. Except as otherwise expressly provided in the Plan, this

Order, or a separate order of this Bankruptcy Court, the allowance, classification, and treatment

of all Allowed Claims and Allowed Interests and the respective distributions and treatments

thereof under the Plan take into account and conform to the relative priority and rights of the

Claims and Interest in each Class in connection with any contractual, legal, and equitable

subordination rights relating thereto, whether arising by contract or under general principles of

equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Except as otherwise

expressly provided in the Plan, upon the Effective Date, all subordination rights that a holder of a Claim or Interest may have with respect to any distribution to be made under the Plan shall be discharged and terminated and all actions related to the enforcement of such subordination rights shall be enjoined permanently.  Accordingly, except as otherwise expressly provided in the Plan, the distributions under the Plan to the holders of Allowed Claims and Interests will not be subject to payment of a beneficiary of such subordination rights, or to levy, garnishment, attachment, or other legal process by a beneficiary of such terminated subordination rights.

17.    <u>Compensation and Benefit Plans</u>.  The Debtors are hereby authorized to, and shall on the Effective Date, assume, unless otherwise provided in the Plan, all employment and severance policies, and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and non-employee directors, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans.

18.    <u>Insurance Policies</u>.  All insurance policies to which any Debtor is a party as of the Effective Date shall be deemed to be and treated as executory contracts and shall be assumed by the applicable Debtor or Reorganized Debtor and shall continue in full force and effect thereafter in accordance with their respective terms.  All other insurance policies shall vest in the Reorganized Debtors.

19.    <u>Cancellation of Certain Existing Security Interests; Assignment of Liens</u>. <u>Cancellation of Liens</u>.  Upon the full payment or other satisfaction of an Allowed Other Secured Claim, or promptly thereafter, the holder of such Allowed Other Secured Claim shall be authorized and directed to deliver to the Debtors or Reorganized Debtors, as applicable, any

37

Collateral or other property of a Debtor held by such holder, together with any termination

statements, instruments of satisfaction, or releases of all security interests with respect to its

Allowed Other Secured Claim that may be reasonably required to terminate any related financing

statements, mortgages, mechanics' or other statutory liens, or lis pendens, or similar interests or

documents.

   20. <u>Compromise of Controversies</u>.  Pursuant to section 1123(b)(3)(A) of the

Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Plan Distributions and

other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a

good faith compromise and settlement of all Claims, Interests, and controversies relating to the

rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or

Allowed Interest or any Plan Distribution on account thereof.  Subject to section 10.10 of the

Plan, the entry of this Order constitutes approval under Bankruptcy Rule 9019, as of the

Effective Date, of the compromise or settlement of all such claims or controversies and a finding

that all such compromises or settlements are: (i) in the best interest of the Debtors, the Estates,

the Reorganized Debtors, and their respective property and stakeholders, and (ii) fair, equitable

and reasonable.

   21. <u>Assumption of Contracts and Leases</u>.  Pursuant to Section 8.1 of the Plan,

as of and subject to the occurrence of the Effective Date and the payment of any applicable Cure

Amount, all executory contracts and unexpired leases to which the Debtors are party shall be

deemed assumed except for an executory contract or unexpired lease that (i) has previously been

assumed or rejected pursuant to a final order of the Bankruptcy Court, (ii) is specifically

designated as a contract or lease to be rejected on a schedule of contracts and leases filed and

served prior to the Effective Date, (iii) is the subject of a separate (A) assumption motion filed by

the Debtors or (B) rejection motion filed by the Debtors under section 365 of the Bankruptcy Code before the day the Court enters this Order (the "**Confirmation Date**"), or (iv) is the subject of a pending Cure Dispute. The Reorganized Debtors shall pay any Cure Amounts owed, if any, under each such executory contract or unexpired lease as provided in the Plan. Each executory contract and unexpired lease assumed pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, any subsequent order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law. This Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions described above, as of the Effective Date.

22.     Conditions Precedent to Effective Date. The Plan shall not become effective unless and until the conditions set forth in Section 9.1 of the Plan have been satisfied or waived pursuant to Section 9.2 of the Plan.

23.     Professional Compensation. All Professional Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), 503(b)(6), or 1103 of the Bankruptcy Code shall (i) file, on or before the date that is sixty (60) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred (a "**Final Fee Application**") and (ii) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the order(s) relating to or allowing any such Fee Claim. Notice of a hearing (the "**Final Fee Hearing**") on the Final Fee Applications shall be provided in accordance with the Bankruptcy Rules and Local Rules. The

Debtors are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.  For the avoidance of doubt, this paragraph shall not be applicable to any Restructuring Expenses, which shall be paid pursuant to Section 5.17 of the Plan.  Section 4.4(a) of the Plan provides for payment of the Noteholders' Professional Fees and Section 5.17 of the Plan provides for payment of Restructuring Expenses.

24.    <u>Objections to Final Fee Applications</u>.  All objections to any Fee Claims shall be served and filed (i) no later than thirty (30) days after the filing of the Final Fee Applications or (ii) such later date as ordered by the Bankruptcy Court upon a motion of the Debtors.

25.    <u>Discharge</u>.  As of the Effective Date, (i) pursuant to Section 10.3 of the Plan and except as otherwise provided in the Plan or this Order, each holder (as well as any trustee or agent on behalf of such holder) of a Claim or Interest and any successor, assign, and affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date.  Except as otherwise provided in the Plan, upon the Effective Date, all such holders of Claims and Interests and their successors, assigns, and affiliates shall be forever precluded and enjoined, pursuant to sections 105, 524, and 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in any Debtor or any Reorganized Debtor.

26.    <u>Releases by the Debtors</u>.  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents, for good and valuable consideration, the adequacy of which is hereby confirmed,

including the service of the Released Parties to facilitate the reorganization of the Debtors and

the implementation of the Restructuring, and except as otherwise provided in the Plan or in the

Confirmation Order, the Released Parties are deemed forever released and discharged by the

Debtors, the Reorganized Debtors, and the Estates from any and all claims, obligations, suits,

judgments, damages, demands, debts, rights, Causes of Action, losses, and liabilities whatsoever,

including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized

Debtors, or their Estates, whether liquidated or unliquidated, fixed or contingent, matured or

unmatured, known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law,

equity, or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been

legally entitled to assert in their own right (whether individually or collectively) or on behalf of

the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner

arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or

rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the

subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated

in the Plan, the business or contractual arrangements between any Debtor and any Released

Party, the Restructuring, the restructuring of any Claim or Interest before or during the Chapter

11 Cases, the Restructuring Transactions, the Disclosure Statement, and the Plan and related

agreements, instruments, and other documents (including the Plan Documents), and the

negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan,

or any other act or omission, other than Claims or Causes of Action arising out of or related to

any act or omission of a Released Party that is a criminal act or constitutes intentional fraud,

willful misconduct, or gross negligence as determined by a Final Order.  For the avoidance of

doubt, nothing in this Order or otherwise in the Plan shall release the Non-Released Parties from

any claims, obligations, suits, judgments, damages, debts, rights, Causes of Action, losses, and liabilities on or in respect of the Noble Claims.

      27.    <u>Releases by Holders of Claims and Interests</u>.  As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Plan Documents for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Plan or in this Order, the Released Parties are deemed forever released and discharged by (a) the holders of all Claims or Interests who vote to accept the Plan; (b) the holders of Claims or Interests that are Unimpaired under the Plan and do not timely object to the releases provided for in the Plan; (c) the holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein; (d) the holders of Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein; (e) the Revolving Credit Facility Agent; (f) the Term Loan Agent; (g) the Senior Notes Indenture Trustee; (h) each of the Global Coordinators, Joint Lead Arrangers, Joint Bookrunners, Senior Managing Agents, and Managing Agents named in the Term Loan Agreement; (i) JPMorgan Chase Bank, N.A., in its capacity as former administrative agent under the Term Loan Agreement; (j) the Disbursing Agent; (k) each of the Syndication Agents, Documentation Agents, Joint Lead Arrangers and Joint Lead Bookrunners named in the Revolving Credit Agreement; (l) each of the Issuing Banks under the Revolving Credit Agreement; and (m) with respect to each of the foregoing entities, such entities' predecessors, professionals, restructuring advisors, successors, assigns, subsidiaries, affiliates, managed accounts and funds, current and former officers and directors,

principals, shareholders, members, partners, managers, employees, subcontractors, agents,

advisory board members, financial advisors, attorneys, accountants, investment bankers,

consultants, representatives, management companies, fund advisors, and other professionals, and

such entities' respective heirs, executors, estates, servants, and nominees, in each case in their

capacity as such, from any and all claims, obligations, suits, judgments, damages, demands,

debts, rights, Causes of Action, losses, and liabilities whatsoever, including any derivative

claims, asserted or assertable on behalf of the Debtors, whether liquidated or unliquidated, fixed

or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or

hereinafter arising, in law, equity, or otherwise, that such holders or their affiliates would have

been legally entitled to assert in their own right (whether individually or collectively) or on

behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any

manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the purchase, sale,

or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors,

the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is

treated in the Plan, the business or contractual arrangements between any Debtor and any

Released Party, the Restructuring, the restructuring of any Claim or Interest before or during the

Chapter 11 Cases, the Restructuring Transactions, the Disclosure Statement, and the Plan and

related agreements, instruments, and other documents (including the Plan Documents), and the

negotiation, formulation, or preparation thereof, the solicitation of votes with respect to the Plan,

or any other act or omission, other than Claims or Causes of Action arising out of or related to

any act or omission of a Released Party that is a criminal act or constitutes intentional fraud,

willful misconduct, or gross negligence as determined by a Final Order.  For the avoidance of

doubt, nothing in this Order or otherwise in the Plan shall release the Non-Released Parties from

RLF1 17677676V.1

any claims, obligations, suits, judgments, damages, debts, rights, Causes of Action, losses, and liabilities on or in respect of the Noble Claims.

28.    Special Provisions for Governmental Units.  Notwithstanding any language to the contrary contained in the Plan, no provision of the Plan shall (i) preclude any Governmental Unit from enforcing its police or regulatory powers or (ii) release any non-debtor from liability in connection with any legal or equitable action or claim brought by any Governmental Unit.

29.    Exculpation.  To the extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, and liability for any claim in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of any disclosure statements, including the Disclosure Statement, the Restructuring Transactions, any plans of reorganization, including this Plan, and all related agreements, instruments, and other documents (including the Plan Supplement), or the solicitation of votes for, or pursuit of confirmation of any plans of reorganization, including this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; the issuance of securities under or in connection with this Plan; or the transactions in furtherance of any of the foregoing; except to the extent arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes intentional fraud, willful misconduct, or gross negligence as determined by a Final Order.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability.  For the avoidance of doubt, nothing in this Order or otherwise in the Plan

shall release the Non-Released Parties from any claims, obligations, suits, judgments, damages, debts, rights, Causes of Action, losses, and liabilities on or in respect of the Noble Claims.

30.    Injunction Related to Releases and Exculpation.  Except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Plan Documents and the Secured Term Loan Agreement, this Order shall permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including, without limitation, the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan.

31.    Injunction, Release, and Exculpation Provisions.  All release and exculpation provisions embodied in the Plan, including but not limited to those contained in Sections 10.5, 10.6, 10.7, and 10.8 of the Plan, are (i) integral parts of the Plan, (ii) fair, equitable, and reasonable, (iii) given for valuable consideration, and (iv) are in the best interest of the Debtors and all parties in interest, and such provisions are approved and shall be effective and binding on all persons and entities, to the extent provided herein.  The release contained in Section 10.6(b) of the Plan was disclosed and explained on the Ballots, in the Disclosure Statement, and in the Plan.  The release provision contained in Section 10.6(b) of the Plan is consensual because the releases therein are provided only by (a) the holders of all Claims or Interests who vote to accept the Plan; (b) the holders of Claims or Interests that are Unimpaired under the Plan and do not timely object to the releases provided for in the Plan; (c) the holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein; (d) the

45

holders of Claims or Interests who vote to reject the Plan but do not opt out of granting the releases forth in the Plan.

        32.     Plan Injunction. Pursuant to Section 10.5 of the Plan, except as otherwise expressly provided in the Plan or in this Order, this Order shall constitute an injunction, as of the entry of this Order but subject to the occurrence of the Effective Date, permanently enjoining all Entities who have held, hold, or may hold Claims against or Interests in any Debtor from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Entities mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable

law; and (v) commencing or continuing, in any manner or in any place, any action that does not

comply with or is inconsistent with the provisions of the Plan (vi) asserting, commencing, or

prosecuting in any manner or in any place whatsoever, any action against DTC in relation to the

Shareholders Agreement or Plan; *provided, that* nothing contained herein shall preclude such

Entities who have held, hold, or may hold Claims against or Interests in a Debtor or an Estate

from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of

the Plan and the Plan Documents.  Pursuant to Section 10.5(b) of the Plan, by accepting

distributions thereunder, each holder of an Allowed Claim or Allowed Interest will be deemed to

have affirmatively and specifically consented to be bound by the Plan, including, without

limitation, the injunctions set forth in Section 10.5 therein.

33.    <u>Retention of Causes of Action and Reservation of Rights</u>.  Subject to

Sections 10.5 10.6, 10.7, and 10.8 of the Plan, nothing contained in the Plan or this Order shall

be deemed to be a waiver or relinquishment of any rights, claims, Causes of Action, rights of

setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately

before the Effective Date on behalf of the Estates or of themselves in accordance with any

provision of the Bankruptcy Code or any applicable nonbankruptcy law.  Subject to Sections

10.5, 10.6, 10.7, and 10.8 of the Plan, the Reorganized Debtors shall have, retain, reserve, and be

entitled to assert all such claims, Causes of Action, rights of setoff or recoupment, and other

legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all

of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted

after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced;

*provided, however*, that the Litigation Trust shall have all rights in respect of the Noble Claims

as set forth in Section 5.7 of the Plan, including without limitation, full power, authority, and

standing to investigate, prosecute, compromise, or otherwise resolve the Noble Claims, subject to the Noble Entities' applicable rights and defenses against the Litigation Trust with respect to the Noble Claims.

34.    <u>Indemnification Obligations</u>.  Pursuant to Section 8.3 of the Plan, subject to the occurrence of the Effective Date, any obligations of the Debtors pursuant to their corporate charters, by-laws, limited liability company agreements, memorandum and articles of association, other organizational documents, deeds of indemnity, or similar contractual agreements to indemnify, directors, officers, agents, and/or employees who serve in such capacity as of or after January 18, 2017, and any other directors or officers as may be agreed upon by and among the Creditors' Committee, the Requisite Lenders, and the Debtors or the Reorganized Debtors, as applicable, with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, agents, or employees based upon any act or omission for or on behalf of the Debtors shall not be discharged, impaired, or otherwise affected by the Plan; *provided, that* the Reorganized Debtors shall not indemnify directors or officers of the Debtors for any Claims or Causes of Action arising out of or relating to any act or omission that is a criminal act or constitutes intentional fraud as determined by a Final Order. All such obligations, including any obligations of the Liquidating Debtors, shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan (and assigned to the Reorganized Debtors if necessary) and shall continue as obligations of the Reorganized Debtors. Any claim based on the Debtors' obligations herein shall not be a Disputed Claim or subject to any objection, in either case, by reason of section 502(e)(1)(B) of the Bankruptcy Code.  After the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect as of

the Petition Date, and all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date.

35.    Payment of Statutory Fees.  All fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid on the Effective Date, or as soon as practicable thereafter, by the Debtors or Reorganized Debtors.  Quarterly fees owed to the U.S. Trustee shall be paid when due in accordance with applicable law and the Debtors and Reorganized Debtors shall continue to file reports to show the calculation of such fees for the Debtors' Estates until the Chapter 11 Cases are closed under section 350 of the Bankruptcy Code.  Each and every one of the Debtors shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case is closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

36.    Payment of Restructuring Expenses.  Notwithstanding anything to the contrary herein, in accordance with the Plan, on the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall pay in full in Cash all outstanding Restructuring Expenses in accordance with the terms of the applicable engagement letters or other applicable contractual arrangements.

37.    Provisions Governing Distributions.  The distribution provisions of Article VI of the Plan shall be, and hereby are, approved in their entirety.  On and after the Effective Date, the Disbursing Agent shall make all Plan Distributions to the appropriate holders of Allowed Claims in accordance with the terms of the Plan.  Notwithstanding anything to the contrary in the Plan or this Order, upon entry of this Order the Debtors and the Reorganized

RLF1 17677676V.1

Debtors, as applicable, shall be authorized to pay any reasonable fees and expenses incurred by DTC, including the reasonable attorneys' and other professionals' fees and expenses in connection with the consideration of whether the Securities issued pursuant to the Plan are eligible for distribution in accordance with DTC's customary practices. On and from the Confirmation Date, the U.K. Administration Reserve: (i) shall be maintained by Paragon Parent in its capacity as trustee pursuant to the terms of the U.K. Implementation Agreement; (ii) shall comprise the Operating Fund (which shall be held in the Administration Accounts(s)) and the Contingency Fund (which shall be held in the Administration Contingency Account(s)) (each as defined in the U.K. Implementation Agreement); (iii) shall be used for the purposes provided in the U.K. Implementation Agreement, including paying the costs and liabilities of the administration and winding down of Paragon Parent and liquidating the Liquidating Subsidiaries. On and from the Confirmation Date, the Debtors shall be entitled to fund the Administration Accounts(s) with the Operating Fund, which shall be subject to the ongoing jurisdiction of the courts of England and Wales and shall not be subject to the jurisdiction of the Bankruptcy Court. On and from the Effective Date, the Debtors shall be entitled to fund the Administration Contingency Account(s) with the Contingency Fund, which shall be subject to the ongoing jurisdiction of the courts of England and Wales and shall not be subject to the jurisdiction of the Bankruptcy Court.

38.    Withholding and Reporting Requirements. In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Reorganized Debtors and the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

In the case of a non-Cash distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and sell such withheld property to generate Cash necessary to pay over the withholding tax. Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution. The Reorganized Debtors and the Disbursing Agent may require, as a condition to receipt of a distribution, that the holder of an Allowed Claim provide any information reasonably necessary to allow the distributing party to comply with any such withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority (including, for the avoidance of doubt, an appropriate Form W-9 or (if the holder is a foreign Person) Form W-8, unless such Person is exempt from information reporting requirements under the Internal Revenue Code of 1986, as amended, and so notifies the Reorganized Debtors and the Disbursing Agent).

   39.  <u>SAP</u>. No provision of this Order or the Plan shall authorize (i) the assumption, assumption and assignment, or transfer of the Software License and Support Agreement (the "**License Agreement**") between Paragon Offshore plc and SAP, or (ii) the transfer of any software or other proprietary information licensed by SAP. If the Debtors wish to assume and/or assign the License Agreement, any assumption, assignment, and cure amount issues related to the License Agreement shall be resolved by agreement between SAP and the Debtors or, if no agreement can be reached, by further order of the Bankruptcy Court upon

adequate notice to SAP, which shall have an opportunity to respond. All rights and remedies of SAP arising under the License Agreement are preserved.

40.    Aspen. Notwithstanding anything set forth in the Plan or this Plan Confirmation Order to the contrary, the Debtors hereby ratify and affirm that nothing in the Plan or herein shall impair or modify any of Aspen's rights, remedies, and/or defenses under or in connection with: (i) that certain Control Agreement, dated October 26, 2015; (ii) the Collateralized Surety Bond Program Master Pledge and Security Agreement, dated October 26, 2015 (the "**Security Agreement**"); (iii) Letter of Credit No. TFTS-853640 the ("**Letter of Credit**"), issued on or about May 13, 2015, and/or (iv) Aspen's cash collateral, pledged by debtor Paragon Parent, as Pledgor, to Aspen, as the Secured Party, and maintained in an account with U.S. Bank, pursuant to the terms of the Security Agreement and Control Agreement (collectively, the "**Aspen Collateral Documents**"). The Debtors further affirm and ratify the existing Deed of Indemnity, dated September 5, 2014 (the "**Original Indemnity Agreement**") solely to the extent that it provides a basis for, and sets forth obligations which are secured solely by, the Aspen Collateral Documents. None of the Debtors, Reorganized Debtors, and/or non-Debtors will be required to post additional collateral. The Aspen Collateral Documents shall be the sole basis for recovery for any losses which are incurred under Aspen's outstanding surety bond, Bond No. SU13863, with debtor Paragon Leonard Jones, LLC (the "**Paragon Leonard Jones Bond**"). The Debtors further acknowledge and confirm, however, that nothing in the Plan or Plan Confirmation Order shall be deemed to impair Aspen's subrogation rights, against any and all non-Debtor entities, under or in connection with the Paragon Leonard Jones Bond and/or Aspen Bond Nos. SU31210 and SU32109 (together, the "**Paragon Offshore Services Bonds**", and with the Paragon Leonard Jones Bond, the "**Bonds**"). Aspen shall look first to its

52

collateral to indemnify or reimburse itself for the losses incurred under the Bonds. On the

Effective Date, or as soon as reasonably practicable thereafter, the Debtors will pay Aspen's

outside counsel's legal fees and expenses incurred through the Effective Date of the Plan, up to a

maximum of $75,000.  Reorganized Paragon will enter into a limited indemnity agreement in

favor of Aspen to cover solely reasonable fees and expenses incurred by Aspen in connection

with the Bonds following the Effective Date (the "**New Indemnity Agreement**").  Reorganized

Paragon shall have no further obligations to Aspen under the Bonds except as expressly set forth

in the New Indemnity Agreement.  Notwithstanding Sections 10.5, 10.6, 10.7, and 10.8 of the

Plan, nothing in the Plan or this Order shall release, discharge, preclude, or enjoin any obligation

to Aspen of Paragon Offshore Services, LLC, U.S. Bank, solely as party to the Control

Agreement, and/or the issuing bank for the Letter of Credit, from its respective obligations, if

any, under the (a) Bonds; (b) the Aspen Collateral Documents; and/or (c) the common law of

suretyship.

   41. <u>Internal Revenue Service</u>. Nothing in the Plan, this Order, or the related

Plan Documents discharges or releases the Debtors, the Reorganized Debtors, or any non-Debtor

from any claim, liability or cause of action of the Internal Revenue Service ("**IRS**") or impairs

the ability of the IRS to pursue any claim, liability, or cause of action against any Debtor,

Reorganized Debtor, or non-Debtor. All claims, liabilities (including with respect to refund

claims made by the Debtors), or causes of action of or to the IRS, if any, shall survive the

bankruptcy case as if the case had not been commenced and be determined in the manner and by

the administrative or judicial tribunals in which such rights or claims would have been resolved

or adjudicated if the bankruptcy case had not been commenced. Without limiting the foregoing,

for the avoidance of doubt: (i) IRS Administrative Expense Claims that are Allowed pursuant to

section 503 of the Bankruptcy Code shall accrue interest and penalties as provided by nonbankruptcy law until paid in full; (ii) nothing shall affect or impair the exercise of IRS' police and regulatory powers against the Debtors and/or the Reorganized Debtors; (iii) nothing shall affect or impair the United States' rights to assert setoff and recoupment against the Debtors and/or the Reorganized Debtors and such rights are expressly preserved; and (iv) the Debtors shall comply with applicable nonbankruptcy law in the payment of their federal taxes and the filing of their federal tax returns.

42.  <u>Exemption from Transfer Taxes</u>.  To the fullest extent permitted by applicable law, the issuance, transfer, or exchange of any security or other property under the Plan, as well as all sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Confirmation Date through and including the Effective Date, including any transfers effectuated under the Plan, and any assumption, assignment, or sale by the Debtors of their interests in unexpired leases of nonresidential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code and shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

43.  <u>Documents, Mortgages, and Instruments</u>.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby directed and authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions, including the Restructuring Transactions, contemplated in the Plan and this Order.

44.  <u>Reversal/Stay/Modification/Vacatur of Order</u>.  Except as otherwise provided in this Order, if any or all of the provisions of this Order are hereafter reversed,

modified, vacated, or stayed by subsequent order of this Bankruptcy Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, the Plan Documents, or any amendments or modifications to the foregoing.

45.    _Retention of Jurisdiction._  Notwithstanding the entry of this Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Bankruptcy Court, except as otherwise provided in the Plan, the Plan Documents, or this Order, shall retain exclusive jurisdiction over all matters arising in or related to the Chapter 11 Cases to the fullest extent as is legally permissible, including, but not limited to, jurisdiction over the matters set forth in Article XI of the Plan; _provided that_, on and after the Confirmation Date, the Bankruptcy Court shall not retain jurisdiction over any matters arising out of or related to the Operating Fund or the Administration Account(s) and on and after the Effective Date, the Bankruptcy Court shall not retain jurisdiction over any matters arising out of or related to the U.K. Implementation Agreement, the U.K. Administrative Reserve, the U.K. Sale Transaction, the Take Back Debt Agreement, the New Letter of Credit Agreement, the Existing L/C Escrow Agreement, the Illustrative Allocation and Distribution of Plan Consideration on Account of Outstanding Letters of Credit, the Registration Rights Agreement, or the Shareholders Agreement.

46.     <u>Modifications</u>.  Subject to the reasonable consent of the Creditors'
Committee and the Requisite Lenders, the Plan may be amended, modified, or supplemented by
the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise
permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy
Code, except as otherwise ordered by the Bankruptcy Court.  In addition, after the Confirmation
Date, so long as such action does not materially and adversely affect the treatment of holders of
Allowed Claims or Allowed Interests pursuant to the Plan and subject to the reasonable consent
of the Creditors' Committee and the Requisite Lenders, the Debtors may remedy any defect or
omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to
such matters as may be necessary to carry out the purposes or effects of the Plan, and any holder
of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as
amended, modified, or supplemented.

47.     <u>Provisions of Plan and Order Nonseverable and Mutually Dependent</u>.  The
provisions of the Plan and this Order, including the findings of fact and conclusions of law set
forth herein, are nonseverable and mutually dependent.

48.     <u>Governing Law</u>.  Pursuant to Section 12.7 of the Plan, except to the extent
that the Bankruptcy Code or other federal law is applicable or to the extent that a Plan Document
to be entered into in connection with the Plan provides otherwise (in which case the governing
law specified therein shall be applicable to such Plan Document), the rights, duties, and
obligations arising under the Plan shall be governed by, and construed and enforced in
accordance with, the laws of the State of New York, without giving effect to the principles of
conflict of laws thereof.

RLF1 17677676V.1

49.     Applicable Nonbankruptcy Law.  Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan, the Plan Documents, and any other related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

50.     Governmental Approvals Not Required.  This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, (including the Plan Documents), and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan, the Disclosure Statement, and any documents, instruments, or agreements, (including the Plan Documents), and any amendments or modifications thereto.

51.     Notice of Order.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Order, substantially in the form annexed hereto as **Exhibit B**, to all parties who hold a Claim or Interest in these cases and the U.S. Trustee.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Order.

52.     Substantial Consummation.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

53.     Waiver of Stay.  The stay of this Order provided by any Bankruptcy Rule (including Bankruptcy Rules 3020(e), 6004(h), and 7062), whether for fourteen (14) days or otherwise, is hereby waived, and this Order shall be effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, the holders of

Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns immediately upon its entry by the Bankruptcy Court.

54.    <u>Inconsistency</u>.  To the extent of any inconsistency between this Order and the Plan, this Order shall govern.

55.    <u>No Waiver</u>.  The failure to specifically include any particular provision of the Plan in this Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

56.    <u>Restructuring Transactions</u>.  On the Effective Date or as soon as reasonably practicable thereafter, the Debtors or Reorganized Debtors, as applicable, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan and this Order.

57.    <u>Final Order</u>.  This Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

Dated:    _____, 2017
        Wilmington, Delaware

                              THE HONORABLE CHRISTOPHER S. SONTCHI
                              UNITED STATES BANKRUPTCY JUDGE

RLF1 17677676V.1