## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| PARAGON OFFSHORE PLC, *et al.*, | Case No. 16-10386 (CSS) |
| Debtors.[1] | (Jointly Administered) |
| | Hearing Date: June 16, 2017 at 11:00 a.m. (ET) |
| | Ref. Docket Nos. 1605 & 1640 |

### REPLY IN SUPPORT OF MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS, PURSUANT TO BANKRUPTCY RULE 2004, FOR AN ORDER DIRECTING PRODUCTION FROM NOBLE CORPORATION PLC

The Official Committee of Unsecured Creditors (the "Committee") responds to the Objection of Noble Corporation PLC ("Noble") to the Committee's Motion for discovery under Bankruptcy Rule 2004 (the "Motion") [Docket No. 1605] as follows:

### STATUS REPORT

1. Noble has retreated from its assertion that it is not "in a position to determine whether having a meet and confer is appropriate" until the Committee (1) analyzes Noble's production in response to the March 3 Requests, and (2) then "revise[s]" its pending document requests (the "2004 Requests") in some unspecified fashion. Motion, Ex. K.[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Paragon Offshore plc (6017); Paragon Offshore Finance Company (6632); Paragon International Finance Company (8126); Paragon Offshore Holdings US Inc. (1960); Paragon Offshore Drilling LLC (4541); Paragon FDR Holdings Ltd. (4731); Paragon Duchess Ltd.; Paragon Offshore (Luxembourg) S.à r.l. (5897); PGN Offshore Drilling (Malaysia) Sdn. Bhd. (9238); Paragon Offshore (Labuan) Pte. Ltd. (3505); Paragon Holding SCS 2 Ltd. (4108); Paragon Asset Company Ltd. (2832); Paragon Holding SCS 1 Ltd. (4004); Paragon Offshore Leasing (Luxembourg) S.à r.l. (5936); Paragon Drilling Services 7 LLC (7882); Paragon Offshore Leasing (Switzerland) GmbH (0669); Paragon Offshore do Brasil Ltda.; Paragon Asset (ME) Ltd. (8362); Paragon Asset (UK) Ltd.; Paragon Offshore International Ltd. (6103); Paragon Offshore (North Sea) Ltd.; Paragon (Middle East) Limited (0667); Paragon Holding NCS 2 S.à r.l. (5447); Paragon Leonard Jones LLC (8826); Paragon Offshore (Nederland) B.V.; and Paragon Offshore Contracting GmbH (2832). The Debtors' mailing address is 3151 Briarpark Drive, Suite 700, Houston, Texas 77042.

[2] Capitalized terms not otherwise defined have the meaning given in the Motion and the *Fifth Joint Chapter 11 Plan of Paragon Offshore and its Affiliated Debtors*, dated May 2, 2017 [Docket No. 1459] (the "Plan").

01:22026343.1

2. The Motion having been filed, Noble reports the "good news" that there is "a basis for the parties to meet and confer now on the scope and details of any further production by Noble." Objection ¶ 1. To that end, the parties have scheduled calls for June 14 (and June 15, if necessary), and will promptly notify the Court if their disputes concerning the 2004 Requests are settled in advance of the hearing scheduled for June 16.

## RESPONSE TO OBJECTION

3. If, however, there is no consensual resolution of the Motion, the Committee requests that the Court direct Noble to produce documents and information to the Committee as set forth in the Motion. Noble's Objection to that relief is premised on material misstatements of fact and law, and cause exists for the Court to order production under Rule 2004 as requested.

4. To start, as shown below, Noble misstates "what had already happened in the proceeding." Objection ¶ 1 n.3. The Committee, for example, has never "unequivocally announced" that it "will file suit against Noble." Objection ¶ 25. The Committee has retained special counsel to *investigate* the Noble Claims so that, when the Plan becomes effective, the Litigation Trust will be in a position to determine whether litigation should be commenced and which, if any, causes of action should be asserted.

5. Noble also grossly overstates the alleged duplication with the Committee's prior March 3 Requests, which were made for a materially different purpose in a materially different context. In any event, Noble's production in response to the March 3 Requests was incomplete, unduly limited, and apparently stuffed with duplicative and boilerplate documents, including thousands of pages of identical SEC filings and at least fifteen copies of the same Powerpoint presentation. Tellingly, Noble cannot certify that it has produced all documents responsive to the March 3 Requests even given the severe limitations on the universe of documents it supposedly reviewed. *See* Objection ¶ 22.

01:22026343.1

6. More importantly, consistent with the investigative purpose of the Committee's present inquiry, the pending 2004 Requests call for documents dating back to January 1, 2011 (when Noble apparently began exploring options for disposing of the assets ultimately transferred to Paragon as part of the spin-off), while Noble, with very limited exceptions, only produced documents dating to 2013 in response to the March 3 Requests. Noble's suggestion that the Committee should be satisfied with its previous, very narrow production is unfounded.

7. Finally, Noble's claim of undue burden is overblown and illogical. As the Committee repeatedly has stated, Noble need not reproduce documents or otherwise duplicate its efforts in respect of March 3 Requests. Instead, the Committee asks that Noble review and produce those *additional* documents that are responsive to the pending 2004 Requests.

**I.  Discovery Under Bankruptcy Rule 2004 Is Available.**

8. Noble wrongly asserts that the Committee "unequivocally announced" that the Litigation Trust will sue Noble. Objection ¶ 25. Although, as set forth in the Motion, "[t]he Committee has good reason to believe that valuable claims exist," Motion ¶ 38, the Committee has not fully investigated those potential claims. To the contrary, much of the Committee's efforts in the bankruptcy case involved evaluating the now-defunct Noble Settlement (which would have released all Noble Claims) and then pursuing confirmation of the Plan (which preserves the Noble Claims for the Litigation Trust). The Committee has not made a decision one way or the other to bring litigation against Noble.

9. The Plan provides for the Noble Claims to be transferred to the Litigation Trust "to be pursued, pursuant to the Litigation Trust Agreement." Plan § 5.7(c). There is no requirement that claims be filed. In fact, the Plan defines "Noble Claims" to include claims "known" or "unknown", including but "not limited to those arising under, relating to or in connection with the Spin-Off." Plan § 1.1. The Committee is now in the process of determining
01:22026343.1

whether and to what extent such claims exist. To that end, the Committee moved to retain Jones Day as special counsel to "investigate the Noble Claims." [Docket No. 1604 at 2].

10. Noble concedes that "[t]he fundamental purpose of Rule 2004 is to permit parties to "'discover[] assets, examin[e] transactions, and determin[e] whether wrongdoing has occurred.'" Objection ¶ 6 (*quoting In re. Wash. Mut. Inc.*, 408 B.R. 45, 50 (Bankr.D. Del. 2009)). That is precisely what the Committee seeks to do through the Motion.

11. In particular, the Committee made the pending Rule 2004 Requests in order to ascertain whether and to what extent viable claims exist and whether and to what extent viable defenses exist in respect of such claims. That discovery ultimately will enable the Litigation Trust to decide whether it should commit its resources to bringing a lawsuit and, if it does, to refine potential causes of action and pursue targeted relief. A fulsome investigation now – before any complaint is filed – will maximize the value of the Litigation Trust and related creditor recoveries by ensuring that estate resources are used only in the prosecution of meritorious claims. Moreover, the Committee's investigate-first mandate will minimize the potential burden on the Court, which could face less-developed claims and greater motion practice if the Committee is denied the requested discovery and the Litigation Trust must proceed on the existing, incomplete record.

12. Noble's suggestion that the Committee is engaging in "gamesmanship" by delaying the filing of a lawsuit, Objection ¶¶ 28-29, is also unfounded. While some courts have crafted a "pending proceeding rule" to deny Rule 2004 discovery when an adversary proceeding or other litigation has been filed, they have not extended the rule to cases in which the party seeking discovery "is in a position to file a complaint" but has not done so. *See In re Ecam Publ'ns, Inc.*, 131 B.R. 556, 560 (Bankr. S.D.N.Y. 1991) (rejecting argument that Rule 2004 is

unavailable where debtor or trustee "is in a position to file a complaint" because such a limitation "would preclude the use of Rule 2004 for that which it was intended, namely, to determine whether there are grounds to bring an action"); *see generally, In re Wash. Mut. Inc.*, 408 B.R. at 50 ("The 'pending proceeding' rule states 'that *once an adversary proceeding or contested matter has been commenced*, discovery is made pursuant to Federal Rules of Bankruptcy Procedure 7026 et seq., rather than by a [Rule] 2004 examination.'") (emphasis added) (citations omitted).

13. Noble's authorities are inapposite. Noble, for example, cites COLLIER for the proposition that, "[i]f an adversary proceeding or contested matter is pending or *is likely to be filed, it is improper for one of the parties to use a Rule 2004 examination* as a substitute for, or in addition to discovery pursuant to Rule 26." Objection ¶ 27 (quoting 10 COLLIER ON BANKRUPTCY ¶ 7026.01 (16th ed. 2010)) (emphasis added by Noble). But each case identified by COLLIER involved a situation where (1) Rule 2004 discovery was authorized because there was no pending adversary proceeding; (2) an adversary proceeding was pending at the time of the discovery request; or (3) the party from whom Rule 2004 discovery was sought did not have relevant information.[3]

---

[3] *In re Braxton*, 516 B.R. 787, 795 (E.D.N.C. 2014) (upholding grant of Rule 2004 discovery and denying stay pending appeal because examinations were requested and ordered before any pending litigation was initiated); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 392 n.16 (Bankr. W.D. Pa. 2008) ("Some courts have found that when an adversary proceeding or a contested matter is pending that it is improper for one of the parties to use a Rule 2004 examination as a substitute for, or in addition to, the normal discovery provided by Fed. R. Civ. P. 26, et. seq. [] However, this potential limitation does not appear to be applicable here because there is no pending adversary proceeding or contested matter at this docket."); *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 29 (Bankr. N.D.N.Y. 1996) (denying Rule 2004 examination where it would involve issues and parties within the scope of a pending adversary proceeding); *In re Valley Forge Plaza Assocs.*, 109 B.R. 669 (Bankr. E.D. Pa. 1990) (limiting debtor's request for Rule 2004 discovery where it was either premature or related to a pending contested matter); *In re Kipp*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988) ("Once First Financial initiated this adversary [proceeding] it may no longer use Rule 2004 to obtain discovery relevant to the adversary [proceeding]."); *In re GHR Energy Corp.*, 35 B.R. 534, 538 (Bankr. D. Mass. 1983) (denying Rule 2004 examination because the targeted individuals and entities did not "have information relative to the debtor's financial affairs or facts necessary to the administration of the debtor's estate"); *In re Dupont Walston Inc.*, 1978 Bankr. LEXIS 8, at *2, 16 Collier Bankr. Cas. (MB) 322 (Bankr. S.D.N.Y. Mar. 22, 1978) (no

14. Noble's reliance on *GHR Energy*, 35 B.R. 534 (Bankr. D. Mass. 1983), is similarly misplaced. In *GHR*, the court exercised discretion to deny Rule 2004 discovery where it concluded that the request was "frivolous" because the entities from which discovery was sought did not have "any information relative to the debtor's financial affairs or facts necessary to the administration of the debtor's estate." *Id.* at 538. Noble, in contrast, orchestrated the Paragon spin-off and clearly possesses facts and information relevant to the Committee's investigation of claims relating to it.

15. Finally, Noble's complaint that it would be "fundamentally unfair" for the Committee to engage in discovery while "Noble has no right to seek discovery of its own," Objection ¶ 29, is irrelevant. Rule 2004 discovery, by its very nature, is one-sided – it authorizes discovery from entities with information relating to the debtor, and nothing more. *In re GHR Energy*, 35 B.R. at 537 ("The persons to be examined and the parties in interest who may conduct the examination are not defined in the Rules nor the Code. However, by looking to the language of Rule 2004, it is evident that an examination may be had only of those persons possessing knowledge of a debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy.").

## II. There Is Good Cause For The Requested Rule 2004 Discovery.

16. Rule 2004 discovery is permitted so long as it is "for the purpose of discovering assets, examining transactions and determining whether wrongdoing has occurred on behalf of Debtors' estate." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627 (Bankr. D. Del.

---

(continued…)

discovery where trustee sought information with respect to a pending proceeding); *see also In re Recoton Corp.*, 307 B.R. 751, 756 (Bankr. S.D.N.Y. 2004) (noting that, if discovery targets admitted that there were valid claims to be brought against them by the creditors committee, such an admission might render the committee's Rule 2004 examination superfluous); *Matter of M4 Enterprises, Inc.*, 190 B.R. 471, 475 (Bankr. N.D. Ga. 1995) (authorizing Rule 2004 examination despite a pending adversary proceeding).

01:22026343.1

2016) (citation and internal quotation marks omitted). That is exactly what is sought by the Committee here, as the entire purpose of the discovery is to aid the Committee's investigation of the Noble Claims.

17. Noble suggests that cause is lacking because it previously produced approximately 40,000 documents in response to the Committee's March 3 Requests, as to which Noble claims there is "substantial overlap" with the pending 2004 Requests. Objection ¶ 35.

18. Noble, however, misrepresents the extent to which the two sets of requests are duplicative. Indeed, on their face, the March 3 Requests and the 2004 Requests are markedly different. The March 3 Requests were much narrower than the pending 2004 Requests when made, and were narrowed even further by Noble's imposition of custodial and temporal limitations on its document searches. Noble in fact agrees that the 2004 Requests "are broader than the March 3 Requests" even where they involve "similar topics." Objection ¶ 20.

19. Moreover, a comparison of the requests demonstrates that the following categories in the pending 2004 Requests do not have a counterpart in the March 3 Requests (and thus cannot be duplicative of any prior discovery by the Committee):

| Request No. | Text |
|---|---|
| 9 | All Documents Relating To Noble's retention of Lazard. |
| 14 | All Documents Relating To any Noble policy, procedure and/or practice relating to the calculation of Impairment Charges. |
| 25 | Documents sufficient to identify all systems, databases, software, and other programs used by Noble, or any other individual or entity on its behalf, to make economic forecasts of any duration, including without limitation, forecasts of oil prices and demand. |
| 29 | All Documents Relating To the determination and/or calculation of annual Compensation for each Noble executive and board member. |

01:22026343.1

| Request No. | Text |
|---|---|
| 30 | All Documents Relating To any bonuses or Compensation paid to any officers, directors or consultants working for Noble or Paragon in connection with the Spin-Off. |
| 31 | Documents sufficient to show the identities of each executive or director who is no longer employed by Noble and the reasons for each individual's departure. |
| 32 | All Documents Relating To any audits of Noble by any Entity in connection with (a) any proposed or actual Asset sale; (b) the Paragon IPO; (c) the Spin-Off; (d) any Impairment Charge, or; (e) the Paragon bankruptcy. |
| 33 | All Communications between PwC and Noble Concerning (a) any proposed or actual Asset sale, (b) the Paragon IPO, (c) the Spin-Off, (d) any Impairment Charge; or (e) the Paragon bankruptcy. |
| 34 | All Documents Relating To any work performed by PwC for Noble including, but not limited to, any representations, warranties, and/or disclosures made by Noble to PwC in connection with (a) any proposed or actual Asset sale, (b) the Paragon IPO, (c) the Spin-Off, (d) any Impairment Charge; or (e) the Paragon bankruptcy. |
| 35 | All Communications between Noble and Paragon including, but not limited to, discussion of (a) any proposed or actual Asset sale, (b) the Paragon IPO, (c) the Spin-Off, (d) any Impairment Charge, (e) the Paragon Bankruptcy; (f) potential settlement of liabilities related to the Spin-Off, and (g) representations, warranties, and/or disclosures made by Noble to Paragon. |
| 38 | All board minutes, presentations, and materials provided to Noble's board Concerning (a) any proposed or actual Asset sale; (b) the Paragon IPO; (c) the Spin-Off; (d) any Impairment Charge, or; (e) the Paragon bankruptcy |
| 39 | All Documents Relating To any audit committee analysis of Noble and/or Paragon, including all agendas, presentations, and minutes in draft and final forms concerning any Asset Valuation, the Paragon IPO, or the Spin-Off. |
| 40 | All Documents Relating To any formal or informal complaint that Noble received or is aware of from any of Noble's directors, officers, employees or independent contractors relating to any Asset Valuation, the Paragon IPO, or the Spin-Off. |
| 41 | All Documents Relating To the creation of, charter for, membership of, and work of any special committees of Your board of directors relating to any proposed or actual Asset sale, the Paragon IPO, the Spin-Off, any PwC audit, any Impairment Charge, or the Paragon bankruptcy. |
| 42 | All Documents Relating To any SEC filings or any other public disclosure made by Noble concerning (a) any plan to sell any of Noble's Assets, (b) the Paragon IPO, or (c) the Spin-Off or any part thereof. |
| 43 | All Documents Relating To any potential or actual insolvency or bankruptcy of Paragon. |

| Request No. | Text |
| --- | --- |
| 44 | All insurance agreements or policies in effect as of January 1, 2011 or any time thereafter to which (a) You, or (b) any Entity in which You have or had any legal or equitable interest, are a party, are named as an insured or beneficiary, or have any interest, or any other insurance agreements or policies that otherwise Concern You, including but not limited to excess umbrella policies, director and officer liability policies, and any policies or agreements under which an insurance business may be liable to indemnify You against, or, satisfy all or part of, a possible judgment against or Concerning You. |

20. Noble also ignores the context of the March 3 Requests and subsequent meet-and-confer sessions, which took place during expedited discovery over the Debtors' now-abandoned settlement plan as the Committee evaluated whether the Noble Settlement was reasonable. The Debtors' determination – soon after Noble made its production – that the Noble Settlement would not go forward obviated any need for the Committee to follow-up on the March 3 Requests or push back against Noble's self- imposed limitations as to date range and custodians.

21. In any event, Noble's prior production is plainly inadequate in light of the 2004 Requests. To date, the Committee's proposed special counsel has reviewed about thirty percent of that production. That review has revealed a substantial number of duplicate and irrelevant documents. For example, Noble produced thousands of pages of the exact same Securities and Exchange Commission filing.[4] Noble also produced the exact same PowerPoint presentation fifteen times.[5] Similar irrelevancies no doubt exist in the remaining seventy percent of the production.

---

[4] Amendment No. 1 to Form 10, as filed on July 3, 2014, produced as Noble_00262282; Noble_00262966; Noble_00265921; Noble_00274069; Noble_00279930; Noble_00281078; Noble_00282173.

[5] Presentation to the Board of Directors of Noble Corporation plc, dated July 11, 2014, produced as Noble_00258842; Noble_00258902; Noble_00259621; Noble_00260812; Noble_00260848; Noble_00267491; Noble_00271750; Noble_00281752; Noble_00284233; Noble_00284264; Noble_00284716; Noble_00285972; Noble_00286118; Noble_00288699; Noble_00295845.

01:22026343.1

22. Finally, Noble's arguments concerning burden make no sense. Assuming, for the sake of argument, that "[t]he Committee chose to serve duplicative discovery requests" and that Noble did an extensive document review to determine responsiveness with respect to the Committee's prior March 3 Requests, as it claims it did, then Noble *already* has reviewed the relevant documents to determine if they should be produced, and the pending 2004 Requests pose no burden. If, on the other hand, Noble failed to review documents based on its unilateral limitations on dates and custodians, its subsequent review of such documents in connection with the pending 2004 Requests could not be duplicative of its previous efforts, and the burden of responding to the *new* categories of requested materials is not undue or unfair in any sense.

## CONCLUSION

Accordingly, to the extent that the parties are unable to resolve this matter consensually, the Committee respectfully requests that the Court overrule Noble's Objection and (i) enter an order substantially in the form attached to the Motion as Exhibit A, ordering Noble to produce the requested discovery; and (ii) grant such other relief as the Court deems just and proper.

[*Remainder of the page intentionally left blank*]

| | |
|---|---|
| Dated: June 14, 2017<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Michael S. Neiburg*<br>Pauline K. Morgan (Bar No. 3650)<br>Joel A. Waite (Bar No. 2925)<br>Jaime Luton Chapman (Bar No. 4936)<br>Michael S. Neiburg (Bar. No. 5275)<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>Email: pmorgan@ycst.com<br>jwaite@ycst.com<br>jchapman@ycst.com<br>mneiburg@ycst.com<br><br>*Counsel to the Committee*<br><br>-and-<br><br>JONES DAY<br>Bruce Bennett<br>Sidney P. Levinson<br>James O. Johnston<br>JONES DAY<br>555 South Flower Street, 50th Floor<br>Los Angeles, California 90071<br>Telephone: (213) 489-3939<br>Facsimile: (213) 243-2539<br>Email: bbennett@jonesday.com<br>slevinson@jonesdy.com<br>jjohnston@jonesday.com<br><br>- and -<br><br>Geoffrey S. Stewart<br>JONES DAY<br>51 Louisiana Avenue, N.W.<br>Washington, D.C. 20001<br>Telephone: (202) 879-3939<br>Facsimile: (202) 626-1700<br>Email: gstewart@jonesday.com<br><br>- and - |

Jennifer L. Del Medico
Genna L. Ghaul
JONES DAY
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306
Email: jdelmedico@jonesday.com
gghaul@jonesday.com

*Proposed Special Counsel to the Committee*

01:22026343.1