## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
                       :

**In re**                     :       **Chapter 11**
                       :

**PARAGON OFFSHORE PLC**    :       **Case No. 16–10386 (CSS)**
                       :
                       :

        **Debtor.**[1]      :
                       :       **Hearing Date: January 30, 2018 at 10:00 a.m. (ET)**
                       :       **Objection Deadline: January 23, 2018 at 4:00 p.m. (ET)**
                       :
---------------------------------------------------------- x

### DEBTOR'S MOTION FOR SANCTIONS
### AGAINST MICHAEL R. HAMMERSLEY

Paragon Offshore plc ("**Paragon Parent**" and the "**Debtor**") hereby files this motion (the "**Motion**") pursuant to section 105 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9011 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**") for sanctions against Michael R. Hammersley.  In support of this Motion, the Debtor respectfully states as follows:

### Preliminary Statement[2]

1.      Two business days following his latest unsuccessful attempt to convince this Court that he, and other Paragon Parent shareholders, are entitled to recovery in this case and the related Prospector Cases, Mr. Hammersley filed another motion grounded on the same position the Court just rejected (and which the Court has rejected four times before).  The Debtor

---

[1] The Debtor in this case, along with the last four digits of the debtor's federal tax identification number is Paragon Offshore plc (in administration) (6017). The Debtor's mailing address is 3151 Briarpark Drive, Suite 700, Houston, Texas 77042. Neville Barry Kahn and David Philip Soden, each of Deloitte LLP, are the joint administrators of Paragon Offshore plc (in administration) (the "**Joint Administrators**").  The affairs, business and property of Paragon Offshore plc (in administration) are managed by the Joint Administrators.

[2] Capitalized terms used in this Preliminary Statement have the meaning ascribed to them in the body of the Motion.

had hoped and expected that the Court's November 30th ruling in the Prospector Cases[3] would bring finality to these matters.  Instead, Mr. Hammersley's Motion to Revoke this Court's four-month old order that laid the final stepping stone for the effectiveness of Paragon's *Fifth Joint Chapter 11 Plan of Paragon Offshore plc and its Affiliated Debtors*, dated June 7, 2017 (the "**Plan**") demonstrates Mr. Hammersley's unwillingness to accept the most basic facts and tenets of the law reflected in this Court's prior rulings.

2.    With this unfortunate backdrop, the Debtor, not lightly, seeks (i) an injunction prohibiting Mr. Hammersley from filing any pleadings in this case or the Prospector Cases without prior Court approval to prevent continued expense of estate resources, and (ii) such other relief as the Court finds appropriate, including any monetary sanctions that the Court may order after conducting a hearing on this Motion.  The Debtor also reserves its rights to seek such other and further sanctions on account of Mr. Hammersley's past and future conduct.

## **Jurisdiction**

3.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3] As discussed below, on November 30, 2017, the Court entered an order denying Mr. Hammersley's motion seeking appointment of an official equity committee in the Prospector Cases [Prospector Docket No. 242].

## Background

4.       On February 14, 2016 (the "**Petition Date**"), the Debtor and certain of its affiliates (collectively, the "**Debtors**") commenced with this Court a voluntary case the Bankruptcy Code.  The Debtors' chapter 11 cases were consolidated for procedural purposes only and were jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").[4]

5.       On January 27, 2017, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors [Docket No. 1059] (the "**Creditors' Committee**").  No trustee has been appointed in this chapter 11 case.

**A.       The Court's Denial of the Appointment of an Equity Committee in this Case**

6.       On March 9, 2017, a group of purported shareholders of Paragon Parent, including Mr. Hammersley (the "**Unofficial Equity Committee**"), filed the *Request of the Unofficial Equity Committee of the Shareholders of Paragon Offshore, PLC for the Appointment of an Official Equity Committee and Motion of the Unofficial Equity Committee of the Shareholders of Paragon Offshore, PLC to Shorten Notice Period Required for this Request* [Docket No. 1223] (the "**First Equity Committee Motion**").

7.       On March 27, 2017, the Court heard the First Equity Committee Motion. After conducting an evidentiary hearing on this motion, the Court denied the request for the appointment of an official equity committee, finding that "if you look at the data, even going back to the original plan and the original business plan, *equity was never in the money*."  Mar. 27, 2017 Hr'g Tr. at 65:24-66:1 (emphasis added).  Further, the Court found that "equity is so . . .

---

[4] On January 10, 2018, the Court entered its *Order Closing Certain Chapter 11 Cases* [Docket No. 2041] closing the chapter 11 cases of all the Debtors other than Case No. 16-10386 (CSS), Paragon Offshore plc.

RLF1 18746195V.1

underwater that it would take, literally, a billion dollars or significantly more, maybe a billion three, a billion four, to put equity in the money." *Id.* at 68:6-10.  On March 28, 2017, the Court entered an order denying the request for appointment of an equity committee for the reasons set forth on the record at the March 27, 2017 hearing [Docket No. 1297].

**B.     The Unofficial Equity Committee's Exclusivity Objection**

8.     On April 17, 2017, the Unofficial Equity Committee objected to the Debtors' request for a further extension of the exclusive periods pursuant to section 1121(d) of the Bankruptcy Code [Docket No. 1358] (the "**Exclusivity Objection**") arguing, among other things, that the Shareholders should be entitled to a distribution based on the value of the Propsector entities. *Id.* at 7.  On April 24, 2017, the Debtors replied to the Exclusivity Objection [Docket No. 1409].  Following the filing of the Debtors' reply, the Unofficial Equity Committee withdrew the Exclusivity Objection.

**C.     The Court's Denial of the Unofficial Equity Committee's Objection to Plan Confirmation**

9.     On May 31, 2017, the Unofficial Equity Committee objected to confirmation of the Plan [Docket No. 1562] (the "**Confirmation Objection**").  The Unofficial Equity Committee asserted, among other things, that the Debtors' valuation analysis was flawed and, under a proper valuation, the shareholders were entitled to a recovery under the Plan.  *Id.* at 49.

10.     At the June 7, 2017 hearing on confirmation of the Plan[5] (the "**Confirmation Hearing**"), after considering arguments by Mr. Hammersley on behalf of the Unofficial Equity Committee, the Debtors, and other parties in interest, the Court overruled the Unofficial Equity Committee's objection with respect to equity's treatment under the Plan and

---

[5] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

again found that "[w]ith regard to the equity committee objections on valuation, again, the evidence here overwhelmingly supports the debtors' valuation…. And the evidence overwhelming indicates there's at least $1.3 to $1.5 billion of shortfall before you get to a place where there would be any return to equity" and therefore "equity is not entitled to any recovery." June 7, 2017 Hr'g Tr. at 149:1-21. Accordingly, the Court entered its *Findings of Fact, Conclusions of Law and Order Confirming the Fifth Joint Chapter 11 Plan of Paragon Offshore plc and its Affiliated Debtors* [Docket No. 1614] (the "**Confirmation Order**") confirming the Plan.

### D.    This Court and the District Court's Denials of the Appellants' Motion for Stay of the Confirmation Order

11.    On June 22, 2017, Mr. Hammersley and another equity holder of Paragon Parent (the "**Appellants**") appealed the Court's confirmation of the Plan and entry of the Confirmation Order [Docket No. 1683] (the "**Appeal**").[6]

12.    On June 27, 2017, the Appellants moved for stay pending appeal in the Bankruptcy Court [Docket No. 1712] (the "**Motion for Stay Pending Appeal**").

13.    On July 5, 2017, the Court held a hearing to consider the Motion for Stay Pending Appeal and, once again, the Court found that the record supported the Debtors' valuation that equity was valueless and not entitled to a distribution under the Plan. *See* July 5, 2017 Hr'g Tr. at 28:21-29:1 ("I don't think the movants can avoid the record, the record that was established at confirmation, the record that overwhelmingly supports the debtors' case, and was, in all -- for all intents and purposes, unrefuted."). Accordingly, the Court denied the Motion for Stay Pending Appeal [Docket No. 1736].

---

[6] *See* Case No. 17-802-GMS (D. Del. 2017).

5

14.     Following the Court's denial of the Motion for Stay Pending Appeal, the Appellants filed a motion for stay pending appeal in the United States District Court for the District of Delaware (the "**District Court**") [D. Del. Docket No. 6].  On July 7, 2017, the District Court denied the request for stay pending appeal finding that the "Appellants have not met their burden of making a 'strong showing' that they are likely to succeed on the merits." *See* Order [D. Del. Docket No. 9].

15.     Following the District Court's order, the Appellants elected not to pursue the Appeal and, on July 18, 2017, the Appellants and Paragon Parent entered into the *Stipulation to Dismiss Appeal* [D. Del. Docket No. 10].

**E.     The Court's Approval of the Plan Modifications**

16.     On July 11, 2017, the Debtors filed the *Debtors' Motion for Order (I) Authorizing Modification of the Debtors' Fifth Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Pursuant to Section 1127(b) of the Bankruptcy Code and (II) Determining that Further Disclosure and Resolicitation of Votes Are Not Required Pursuant to Section 1127(c) of the Bankruptcy Code* [Docket No. 1760] (the "**Plan Modification Motion**"). On the same day, the Debtors filed the *Debtors' Motion for Entry of an Order Shortening Notice and Objection Periods Regarding Debtors' Motion for Order (I) Authorizing Modification of the Debtors' Fifth Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Pursuant to Section 1127(b) of the Bankruptcy Code and (II) Determining that Further Disclosure and Resolicitation of Votes are not Required Pursuant to Section 1127(c) of the Bankruptcy Code and Scheduling a Hearing Thereon* [Docket No. 1761] (the "**Motion to Shorten Notice and Objection Periods**").  The Court granted the Debtors' Motion to Shorten Notice and Objection

RLF1 18746195V.1

Periods [Docket No. 1762] (the "**Order Shortening Notice and Objection Periods**") and set the objection deadline and hearing on the Plan Modification Motion for July 17, 2017.

17.     The Plan Modification Motion and the Motion to Shorten Notice and Objection Periods were served on counsel of record to Mr. Hammersley, Katten Muchin Rosenman LLP and Cozen O'Connor,[7] on July 11, 2017 via electronic mail and overnight mail [Docket No. 1773].   In addition, the Order Shortening Notice and Objection Periods and the Notice of Hearing with Respect to the Debtors' Plan Modification Motion [Docket No. 1763] were served on counsel to Mr. Hammersley on July 12, 2017 via electronic mail and overnight mail [Docket No. 1784].

18.     The Plan Modification Motion sought approval of modifications to the Plan (the "**Plan Modifications**"), including Paragon Parent's entry into that certain Management Agreement between Paragon Parent, New Paragon and the Joint Administrators (the "**Management Agreement"**).

19.     Specifically, pursuant to the Management Agreement, Paragon Parent agreed to, among other things, (i) transfer its shares in Prospector Parent and thus the Prospector Entities to New Paragon upon the satisfaction of the relevant conditions set forth in the Management Agreement, and (ii) for such time as Prospector Parent is a subsidiary of Paragon Parent, pay to New Paragon an amount equal to all amounts received by Paragon Parent in respect of the shares in Prospector Parent and exercise its rights as holder of the shares of Prospector Parent as directed by New Paragon, in each case to the extent permitted by the pledge of the Prospector Parent shares.

---

[7] On June 21, 2017, counsel for Mr. Hammersley filed a Notice of Appearance and Request for Service of Papers [Docket No. 1677].

20.     On July 17, 2017, the Court held a hearing to consider the Plan Modification Motion.  None of the shareholders of Paragon Parent, including Mr. Hammersley, filed an objection or appeared at the hearing.  The Court approved the Plan Modification Motion and found that the Plan Modifications were "an important, but not adverse change in any way for the creditors. So although it's material because it's important, it's not material in the context of the law because it's not a material adverse change to the treatment of creditors."  July 17, 2017 Hr'g Tr. at 6:23-7:2.  The Court entered an order approving the Plan Modifications on the same day [Docket No. 1775] (the "**Plan Modification Order**").

21.     On July 18, 2017, the Plan went effective [Docket No. 1792] and Paragon Parent entered into the Management Agreement.

### Relevant Background of the Prospector Cases

22.     On July 20, 2017 (the "**Petition Date**"), Prospector Offshore Drilling S.à r.l. ("**Prospector Parent**"), and its debtor affiliates, Prospector Rig 1 Contracting Company S.à r.l., Prospector Rig 5 Contracting Company S.à r.l. and Paragon Parent (the "**Prospector Debtors**") each commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court (the "**Prospector Cases**").[8]

### A.     The U.S. Trustee's Denial of Mr. Hammersley's Request to Appoint an Official Equity Committee

23.     On August 4, 2017, Mr. Hammersley requested the U.S. Trustee appoint an official equity committee in the Prospector Cases.  On August 11, 2017, the Prospector Debtors submitted a letter in opposition to the Hammersley Request Letter.  The Prospector Debtors argued, among other things, that because the Plan and Confirmation Order were final as

---

[8] *See In re Prospector Offshore Drilling S.à r.l., et al.*, Case No. 17-11572 (CSS) (Bankr. D. Del).  The docket of the Prospector Cases shall be referred to herein as [Prospector Docket No. __].

to all equity holders of Paragon Parent, Mr. Hammersley is unable to demonstrate the most important factor warranting formation of an equity committee—a substantial likelihood that equity will receive a meaningful distribution.  On August 18, 2017, the U.S. Trustee denied Mr. Hammersley's request to form an official equity committee.

**B.     The Unofficial Equity Committee's Objection to the Prospector Debtors' Cash Management Motion**

24.     In addition to the request to appoint an equity committee, on August 16, 2017, the Unofficial Equity Committee filed a limited objection to the Prospector Debtors' request for final authority to continue use of their cash management system [Prospector Docket No. 58] (the "**Cash Management Objection**").  The Prospector Debtors replied to the Cash Management Objection arguing that the objection was nothing more than a collateral attack on the Plan and Confirmation Order [Prospector Docket No. 73].  On August 22, 2017, the Unofficial Equity Committee withdrew the Cash Management Objection [Prospector Docket No. 78].

**C.     The Court's Denial of Mr. Hammersley's Request to Appoint an Official Equity Committee in the Prospector Cases**

25.     On October 17, 2017, Mr. Hammersley filed the *Motion of Michael R. Hammersley for the Appointment of an Official Equity Committee* [Prospector Docket No. 157] (the "**Equity Committee Motion**"), to which the Prospector Debtors filed an objection on November 22, 2017 [Prospector Docket No. 231].  On November 27, 2017, Mr. Hammersley filed a reply to the Prospector Debtors' Objection, again arguing, among other things, that the Shareholders are entitled to a meaningful distribution from Paragon Parent, given that the Shareholders acquired an equity interest in the Prospector entities via their purchase of shares in Paragon Parent [Prospector Docket No. 234 at 4-5].  Following a hearing held on November 30, 2017, the Court denied the Equity Committee Motion [Prospector Docket No. 242], based on

9

among other things, a finding of collateral estoppel.  Prospector Cases November 30, 2017 Hr'g

Tr. at [22-23:25-2].  At the hearing (the "**Equity Committee Hearing**"), the Court made several

findings, such as:

- "there is nothing that has fundamentally changed as a result of the post-confirmation adjustment in the previous case, and this case as well, that changes the fundamental precept behind the Court's refusal to appoint an equity committee in the prior case, as well as its confirmation of that plan, which is that equity of PLC is fundamentally out of the money to the tune of over a billion dollars . . . that determination included a valuation of the Prospector entities." *Id.* at 23:2-8.

- "The Court has already heard, in connection with the previous case, arguments with regard to this very issue of valuation, in connection with deciding a motion to appoint equity committee in the previous case, as well as confirming that plan and there is nothing that has changed as a result of the circumstances." *Id.* at 24:2-7.

- With respect to Mr. Hammersley's argument that the Shareholders have an equity interest in the Prospector Entities, the Court held that "the argument really comes down to a misunderstanding of the law and that is that the equity holders of PLC somehow own equity of the Prospector [entities].  It's just incorrect as a matter of corporate law." *Id.* at 24:13-18.

26.    At the conclusion of the Equity Committee Hearing, the Court indicated

that the issues raised by Mr. Hammersley have already been decided and noted that there is a risk

that if Mr. Hammersley takes further action, it may result in the Court awarding sanctions:

> I'm not going to caution Mr. Hammersley, but these issues have been decided and you certainly are free to take further action, but taking action that's going to cause the debtors to incur costs, there is a risk that they'll seek sanctions and if they seek those sanctions, there's a risk I'll award them. So, act at your own behest, and that's pretty much where we come out.

*Id.* at 25:7-13.

## The Court's Denial of Mr. Hammersley's Motion to Revoke

27.    More than four months after the Plan Modification Order was entered in

this case, on December 4, 2017, Mr. Hammersley filed the *Motion of Michael R. Hammersley to*

*Revoke the Order (I) Authorizing Modification of the Debtors' Fifth Joint Plan of*

*Reorganization Under Chapter 11 of the Bankruptcy Code Pursuant to Section 1127(b) of the*

*Bankruptcy Code and (II) Determining that Further Disclosure and Resolicitation of Votes are not Required Pursuant to Section 1127(c) of the Bankruptcy Code* [Docket No. 2000] (the "**Motion to Revoke**"), a pleading comprising forty-one (41) pages of text and seventeen (17) pages of exhibits.  On December 20, 2017, Mr. Hammersley filed the related *Supplement to the Motion of Michael R. Hammersley to Revoke the Order (I) Authorizing Modification of the Debtors' Fifth Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Pursuant to Section 1127 (b) of the Bankruptcy Code and (II) Determining that Further Disclosure and Solicitation of Votes are Not Required Pursuant to Section 1127(c) of the Bankruptcy Code* [Docket No. 2021] (the "**Supplement**"), a pleading comprising nineteen (19) pages of text and eight hundred forty-eight (848) pages of exhibits.

28.    On January 3, 2018, the Debtors filed the *Debtors' Objection to Motion of Michael R. Hammersley to Revoke the Modification Order* [Docket No. 2032], to which Mr. Hammersley filed the *Reply of Michael R. Hammersley to the Debtors' Objection to the Motion of Michael R. Hammersley to Revoke the Modification Order* [Docket No. 2039] (the "**Reply**"), a pleading comprising thirty-five (35) pages of text and one hundred seven (107) pages of exhibits.

29.    The Court denied Mr. Hammersley's Motion to Revoke at the January 10, 2018 hearing and subsequently issued its *Order on Motion of Michael R. Hammersley to Revoke the Order (I) Authorizing Modification of the Debtors' Fifth Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Pursuant to Section 1127(b) of the Bankruptcy Code and (II) Determining That Further Disclosure and Resolicitation of Votes Are Not Required Pursuant to Section 1127(c) of the Bankruptcy Code* [Docket No. 2047].  At the hearing, the Court noted that it had previously cautioned Mr. Hammersley that continuing to assert the same arguments over

11

and over again "might lead to consequences" and that, shortly thereafter, Mr. Hammersley filed

the Motion to Revoke, which was, for the most part, "repetitive."

### Argument

30.     Rule 9011 of the Federal Rules of Bankruptcy Procedure, the equivalent of

Rule 11 of the Federal Rules of Civil Procedure,[9] provides that an attorney or unrepresented

party filing a petition, pleading, written motion, or other paper certifies that "to the best of the

person's knowledge, information, and belief, formed after an inquiry reasonable under the

circumstances,

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief."

Fed. R. Bankr. P. 9011(b).

31.     Rule 11 requires reasonableness, which has been defined as "an objective

knowledge or belief at the time of the filing of a challenged paper that the claim was well-

grounded in law and fact." *Wolfington v. Reconstructive Orthopaedic Assocs. II, P.C.*, No. CV

16-4935, 2017 WL 4349242, at *5 (E.D. Pa. Sept. 29, 2017) (quoting *Ford Motor Co. v. Summit

Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991)). "The imposition of Rule 11 sanctions . . .

requires only a showing of objectively unreasonable conduct." *Id*. (quoting *Fellheimer, Eichen &

---

[9] Bankruptcy Rule 9011 tracks Federal Rule 11 and case law interpreting Federal Rule 11 is applicable to Bankruptcy Rule 9011.  *See Landon v. Hunt*, 977 F.2d 829, 833 n.3 (3d Cir. 1992).

*Braverman, P.C. v. Charter Tech., Inc.*, 57 F.3d 1215, 1225 (3d Cir. 1995).  Rule 9011 applies to *pro se* litigants and subjects them to the same standards as those applied to an attorney.  *In re Schaefer*, 154 B.R. 227, 231 (Bankr. S.D. Tex. 1993).

> 32.    In determining reasonableness, courts examine factors, including:
>
> i.    the plausibility of the legal position advocated;
>
> ii.    the amount of time available to the signer for conducting the factual and legal investigation; and
>
> iii.    the complexity of the legal and factual issues implicated.

*In re Taylor*, 655 F.3d 274, 282 (3d Cir. 2011); *Wolfington*, 2017 WL 4349242, at *17; *see also* Fed. R. Civ. P. 11 Advisory Committee Note (noting that what constitutes a "reasonable inquiry" courts may depend on certain factors).  However, the court need not work mechanically through these factors when it considers whether to impose sanctions.  Rather, it should consider the reasonableness of the inquiry under all the material circumstances.  *In re Taylor*, 655 F.3d at 282 (citing *Bus. Guides, Inc. v. Chromatic Commc'ns Ents., Inc.*, 498 U.S. 533, 551, 111 S. Ct. 922, 112 L. Ed. 2d 1140 (1991)).

**I.    Mr. Hammersley's Filing of the Motion to Revoke is Objectively Unreasonable**

33.    As discussed further below, given all that has come before, it was objectively unreasonable to file the Motion to Revoke because, *inter alia*, Mr. Hammersley (i) fails to advance any plausible legal arguments, (ii) fails to assert *any* facts to support of a showing of actual fraud (as required to obtain relief under section 1144 of the Bankruptcy Code), and (iii) demonstrates a disregard for his duty to investigate the factual and legal allegations contained in the motion.

### A.    The Motion to Revoke Propounds Arguments this Court has Already Rejected and Fails to Raise any New Arguments

34.    Mr. Hammersley fails to advance any plausible arguments or facts in support of the Motion to Revoke and instead recycles the same arguments that this Court has considered and rejected time and time again, some of which were addressed by the Court as recently as November 30, 2017.  Specifically, Mr. Hammersley continues to assert that (i) the Court's finding that the absolute priority rule precludes the shareholders from receiving a distribution under the Plan is erroneous (*see* Motion to Revoke at 11), (ii) shareholder consent was necessary to transfer the Prospector entities to New Paragon (*see id.* at 26), (iii) the assets and equity of Prospector Offshore were not included in valuing the Paragon estates (*see id.* at 31-33); and (iv) the shareholders of Paragon Parent own equity in the Prospector entities (*see id.* at 5).  Attached hereto as **Exhibit B** is a list of pleadings filed by Mr. Hammersley (in his individual capacity or as a member of the Unofficial Equity Committee), in many of which he asserts the same or similar points in the context of objecting to the Debtors' motion to extend exclusivity, objecting to confirmation of the Plan, seeking a stay of the Confirmation Order pending Appeal, and motions seeking the appointment of an official equity committee in this case and the Prospector Cases.  Each has been denied, overruled, or withdrawn.

35.    In at least five other pleadings filed in either the Prospector Cases or this case, Mr. Hammersly and/or the shareholders have argued that they are entitled to a meaningful distribution from Paragon Parent.  The Court has continuously rejected this argument.[10]

---

[10] Specifically, the Court made the following findings either on the record or through approval of the Plan that equity was not entitled to a recovery:

- "[E]quity was never in the money in this case."  Paragon Cases March 27, 2017 Hr'g Tr. at 66:1.

- "The problem is twofold; one, equity is so under the money -- out of the money, excuse me, or underwater that it would take, literally, a billion dollars or significantly more, maybe a billion three, a billion four, to put equity in the money."  *Id.* at 68:6-10.

Likewise, as the Court pointed out at the Equity Hearing Committee, the Court has considered Mr. Hammersley's valuation arguments, including the Prospector entities. *See* Prospector Cases November 30, 2017 Hr'g Tr. at [23:7-13].  The shareholder consent argument was raised at both the Equity Committee Hearing and at the Confirmation Hearing, where the Court held: "I believe the appropriate consents of the board, when necessary; the U.K. Administrator, where necessary; and not necessary the shareholders, as argued by the unofficial equity committee, I think all of the appropriate consents have been in place."  June 9, 2017 Hr'g Tr. at 150:9-13.  Finally, Mr. Hammersley continues to erroneously claim that the shareholders of Paragon Parent are also shareholders of Prospector Parent.  *See* Motion to Revoke at 5 ("In Prospector's case, its only creditor was SinoEnergy Capital Management, Ltd.("**SinoEnergy**") while its only shareholder was Paragon Parent, which meant that, corollary, Paragon Parent's Shareholders").   This assertion is incorrect, just as the Court found at the Equity Committee Hearing held days before the Motion to Revoke was filed: "the argument really comes down to a misunderstanding of the law and that is that the equity holders of PLC somehow own equity of the Prospector equities. It's just incorrect as a matter of corporate law."  Prospector Cases November 30, 2017 Hr'g Tr.at 24:13-18.

---

- "So there is no substantial likelihood of a material recovery to equity." *Id.* at 69:7-8.

- "And since they're not getting everything they're entitled to, *equity is not entitled to any recovery.*" Paragon Cases June 7, 2017 Hr'g Tr. at 149:19-21 (emphasis added).

- "All Parent Interests shall be deemed *valueless and shall not receive any distribution under the Plan*. Parent Interests shall be treated in accordance with the U.K. Administration."  Plan § 4.8 (emphasis added).

- "[T]here is nothing that has fundamentally changed as a result of the post-confirmation adjustment in the previous case, and this case as well, that changes the fundamental precept behind the Court's refusal to appoint an equity committee in the prior case, as well as its confirmation of that plan, which is that *equity of PLC is fundamentally out of the money to the tune of over a billion dollars.*"  Prospector Cases November 30, 2017 Hr'g Tr. at [23:2-8].

RLF1 18746195V.1

36.     Because the Motion to Revoke fails to advance any novel legal arguments or factual allegations and is merely another attempt to make the same arguments that this Court has repeatedly considered and rejected, the "plausibility of the legal position advocated" factor clearly supports a finding that Mr. Hammersley has acted unreasonably.  *See Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*, 855 F.2d 1080, 1091 (3d Cir. 1988) (affirming district court's order awarding Rule 11 sanctions against plaintiff's counsel, finding that a "claim clearly precluded by the statute of limitations and identical to at least one, and possibly two, other claims already adjudicated on [client's] behalf was legally frivolous"). Moreover, given that the parties have briefed and litigated the issues raised in the Motion to Revoke on several occasions dating back to as early as March, the "complexity of the issues" factor also supports the imposition of Rule 11 sanctions.

## B.     The Motion to Revoke Fails to Allege any Facts to Support Fraud

37.     Mr. Hammersley relies on § 1144 of the Bankruptcy Code to revoke the Plan Modification Order.  Irrespective of whether § 1144 is the appropriate avenue for relief, it is important to note that § 1144 provides that order may be revoked "if and only if such order was procured by fraud." 11 U.S.C. § 1144.   Indeed, a party seeking to revoke an order of confirmation bears the burden of proof and must establish by a preponderance of the evidence that the order of confirmation was procured by *actual fraud* and was perpetrated *on the court*, and not on a creditor.  *In re Level Propane Gases, Inc.*, 438 B.R. 354 (B.A.P. 6th Cir. 2010). Therefore, in order to prevail on his motion, Mr. Hammersley must point to specific acts of fraud that the Debtors perpetrated against the Court in obtaining the Confirmation Order.  *See In re Motors Liquidation Co.*, 462 B.R. 494, 505 (Bankr. S.D.N.Y. 2012) ("To secure relief under section 1144 of the Code, a movant must point to specific acts of the debtor evidencing actual fraudulent intent.").

38.    Here, the motion is completely devoid of factual allegations to support a showing of fraud.  In fact, Mr. Hammersley fails to even make the conclusory allegation that the Debtors or any other party committed fraud against the Court, much less point to specific acts evidencing actual fraudulent intent.

### C.    The Timing and Context of the Filing Demonstrate Mr. Hammersley's Refusal to Accept the Court's Rulings and Failure to Fulfill his Duty to Investigate

39.    The context and timing of filing of the motion demonstrates Mr. Hammersley's disregard for his duty to investigate the factual and legal allegations asserted in the motion.  Importantly, both Paragon Parent and the Court have warned Mr. Hammersley of the potential ramifications for filing an additional pleading asserting the same arguments that have been rejected by the Court.

40.    In the recently filed objection to Mr. Hammersley's Motion to Appoint an Official Equity Committee, Mr. Hammersley was notified that:

> The Debtors and the Prospector Debtors have expended significant resources responding to these arguments.  Understanding that Mr. Hammersley is a *pro se* litigant, the Debtors have provided Mr. Hammersley significant latitude. Nevertheless, if Mr. Hammersley or the Shareholders continue to file meritless pleadings that reargue issues previously addressed by this Court, the Debtors will have no choice but to seek monetary sanctions against Mr. Hammersley or the Shareholders.

Prospector Docket No. 231 at 11, n.10.

41.    A few days later, at the Equity Committee Hearing, the Court noted on the record that if Mr. Hammersley took further action to litigate these issues, the Debtors may file a sanctions motion and that there's a risk the Court will award such sanctions.  Prospector Cases November 30, 2017 Hr'g Tr. at [25:7-13].

42.    Nevertheless, *two business days* after the Equity Committee Hearing, and over *four months* after the Court entered the Plan Modification Order, Mr. Hammersley hastily

filed the Motion to Revoke [Docket No. 2000], a forty-one (41) page pleading that rehashes arguments that this Court has already considered and rejected on numerous occasions.

43.    For the reasons stated herein, each of the relevant factors[11] demonstrate that Mr. Hammersley acted objectively unreasonable in filing the Motion to Revoke and thus violated Rule 9011.

## II.    Sanctions are Warranted

### A.    A Filing Injunction is Appropriate as Sanctions

44.    Mr. Hammersley's conduct in this case and the Prospector Cases continues to result in unnecessary expenditure of estate and judicial resources.  The Debtor therefore seeks entry of an order enjoining Mr. Hammersley from filing any complaint, motion, objection, pleading, or notice of appeal in the this case or the Prospector Cases without prior Court approval to ensure that Mr. Hammersley's conduct does not continue.

45.    It is well-recognized that "federal court[s] [have] . . . authority to restrict the activity of abusive litigants."  *In re Troung*, No. 09-11047, 2009 WL 2929261, at *7 (Bankr. S.D.N.Y. Sept. 3, 2009); *see also Chipps v. U.S.D.C. for the M.D. of Pa.*, 882 F.2d 72, 73 (3d Cir. 1989) (holding that "a pattern of groundless and vexatious litigation will justify an order prohibiting further filings without permission of the court").

46.    Courts, including this one, have issued orders restricting the activity of *pro se* litigants, where there actions result in a waste of estate and judicial resources.  *See Energy Future Holdings Corp., et al.*, Case No. 14-10979 (CSS) (Bankr. D. Del. Dec. 14, 2016) [Docket No. 10387] (holding that any further documents filed by *pro se* litigant will not be considered nor acted upon by the Court); *see also In re Dizinno*, 559 B.R. 400, 415 (Bankr. M.D. Pa. 2016)

---

[11] The two remaining factors not addressed herein—the necessity for reliance on a client for the underlying factual information and whether the case was referred to the signer by another member of the Bar—are inapplicable given that Mr. Hammersley is a *pro se* litigant.

(ordering that *pro se* creditor may not file any further pleadings in the bankruptcy case that attempt to assert a cause of action to except creditor's claim from discharge or to deny Debtor's discharge, without first obtaining leave of Court); *Lehman Brothers Holdings, Inc. et al.*, Case No. 13-13555 (SCC) (S.D.N.Y. 2016) (enjoining *pro se* litigant from filing any complaint, motion, objection, pleading, or notice of appeal without prior court approval); *Deep v. Danaher*, 393 B.R. 51, 54–55 (N.D.N.Y. 2008) (holding that, pursuant to a bankruptcy court's discretionary authority under section 105(a) of the Bankruptcy Code, bankruptcy courts could enjoin future filings by a party absent leave of court). In exercising this authority, "[a] history of litigation entailing 'vexation, harassment and needless expenses to [other parties]' and 'an unnecessary burden on the courts and their support personnel' is enough." *Martin-Trigona v. Lavien (In re Martin-Trigona)*, 737 F.2d 1254, 1262   (2d Cir. 1984) (quoting *Shuffman v. Hartford Textile Corp. (In re Hartford Textile Corp.)*, 681 F.2d 895, 897 (2d Cir. 1982)).

47.    Mr. Hammersley's behavior in this case and the Prospector Cases is a prototypical example of the circumstances under which the relief requested is appropriate and necessary.

### B.    Other Appropriate Relief

48.    In addition to the relief requested above, the Debtor requests that the Court grant such other and further relief that the Court deems appropriate, including any monetary damages that the Court may order after holding a hearing on this Motion.

49.    It is well recognized that a "bankruptcy court has jurisdiction under Bankruptcy Rule 9011 to assess attorney's fees as sanctions against attorneys who fail to comply with the rule." *In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000) (quoting *In re Arkansas Communities, Inc*., 827 F.2d 1219, 1222 (8th Cir. 1987)).  In addition, bankruptcy courts have the authority pursuant to section 105 of the Bankruptcy Code to sanction counsel and litigants for

acting in bad faith, vexatiously, wantonly, or for oppressive reasons. *Id.* ("Section 105 gives to bankruptcy courts the broad power to implement the provisions of the bankruptcy code and to prevent an abuse of the bankruptcy process, which includes the power to sanction counsel"); *In re Bryson*, 131 F.3d 601, 603 (7th Cir. 1997) (holding that the bankruptcy court has authority under § 105(a) to sanction an attorney for filing a frivolous motion even "if for any reason the misconduct did not fall under Rule 9011"); *see also Sassower v. Field*, 973 F.2d 75 (2d Cir. 1992) (holding that district courts have the inherent authority to sanction parties appearing before it and acting in bad faith, vexatiously, wantonly or for oppressive reasons and upholding a district court's award of monetary sanctions against *pro se* litigants).

### Notice

50.     No trustee has been appointed in this chapter 11 case.  Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017 (Attn: Sandeep Qusba, Esq., Kathrine A. McLendon, Esq., and Morris J. Massel, Esq.), counsel to JPMorgan Chase Bank, N.A. (a) as administrative agent under the Senior Secured Revolving Credit Agreement, dated as of June 17, 2014, and (b) as collateral agent under the Guaranty and Collateral Agreement, dated as of July 18, 2014; (iii) Arnold & Porter Kaye Scholer LLP, 250 West 55th Street, New York, NY 10019 (Attn: Scott D. Talmadge, Esq. and Mark F. Liscio, Esq.), counsel to Cortland Capital Market Services L.L.C. as administrative agent under the Senior Secured Term Loan Agreement, dated as of July 18, 2014; (iv) Morgan, Lewis, & Bockius LLP, 101 Park Avenue, New York, NY 10178 (Attn: James O. Moore, Esq., Glenn E. Siegel, Esq., and Joshua Dorchak, Esq.), counsel to Deutsche Bank Trust Company Americas as trustee under the Senior Notes Indenture, dated as of July 18, 2014, for the 6.75% Senior Notes due 2022 and the 7.25% Senior Notes due 2024; (v) Paul, Weiss, Rifkind, Wharton, & Garrison

LLP, 1285 Avenue of the Americas, New York, NY 10019 (Attn: Andrew N. Rosenberg, Esq. and Elizabeth R. McColm, Esq.), counsel to the Creditors' Committee; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service; (viii) the United States Attorney's Office for the District of Delaware; and (ix) all parties who filed a request for service of notices under Bankruptcy Rule 2002.

51.     On December 20, 2017, this Motion, along with a letter stating that Mr. Hammersley has twenty one (21) days to withdraw or appropriately correct the Motion to Revoke before the filing of this Motion, was served on Michael R. Hammersley in accordance with Rule 9011.

## No Prior Request

52.     No previous request for relief sought herein has been made to this Court or any other court.

WHEREFORE the Debtor respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein, and ordering such other and further relief as is just and proper.

Dated: January 11, 2018
      Wilmington, Delaware

                 */s/ Mark D. Collins*
                 RICHARDS, LAYTON & FINGER, P.A.
                 Mark D. Collins (No. 2981)
                 Paul N. Heath (No. 3704)
                 Amanda R. Steele (No. 5530)
                 Joseph C. Barsalona II (No. 6102)
                 One Rodney Square
                 920 North King Street
                 Wilmington, Delaware  19801
                 Telephone:  (302) 651-7700
                 Facsimile:   (302) 651-7701

                 -and-

                 WEIL, GOTSHAL & MANGES LLP
                 Gary T. Holtzer (admitted *pro hac vice*)
                 Stephen A. Youngman (admitted *pro hac vice*)
                 Alfredo R. Pérez (admitted *pro hac vice*)
                 767 Fifth Avenue
                 New York, New York  10153
                 Telephone:  (212) 310-8000
                 Facsimile:   (212) 310-8007

                 Attorneys for the Debtor

RLF1 18746195V.1