# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PARAGON OFFSHORE PLC (IN ADMINISTRATION),[1] | : | Case No. 16-10386 (CSS) |
| | : | Re: D.I. 2227 |
| Debtor. | : | **Hearing Date:** |
| | : | **Obj. Deadline:** |

## MOTION OF THE UNITED STATES TRUSTEE TO COMPEL FILING OF POST-CONFIRMATION QUARTERLY REPORTS AND PAYMENT OF STATUTORY FEES PURSUANT TO 28 U.S.C. § 1930(a)(6)

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), through his undersigned counsel, files this motion to compel the filing of post-confirmation quarterly reports and the payment of statutory fees pursuant to 28 U.S.C. § 1930(a)(6) (the "Motion"), and in support thereof respectfully states as follows:

### I. PRELIMINARY STATEMENT

1. Recently, the litigation trust established under the Debtor's confirmed chapter 11 plan settled claims against the Debtor's former parent company for $90,375,000 cash. The litigation trust received the settlement proceeds in March and intends to distribute them to creditors imminently—but without paying fees under 28 U.S.C. § 1930(a)(6). Distributions of the settlement proceeds are disbursements that trigger liability under 28 U.S.C.

---

[1] In May 2017, Paragon Offshore plc commenced administration proceedings in the United Kingdom to, among other things, issue new equity interests in Paragon Offshore Limited and to liquidate and dissolve 15 of Paragon Offshore plc's debtor subsidiaries. *See* D.I. 1507 and D.I. 1614 Exh. A § 5.13. On January 10, 2018, the Bankruptcy Court entered an order closing all of the Paragon Debtors' (as defined *infra*) cases except for the lead case, Paragon Offshore plc, Case No. 16-10386 (CSS). *See* D.I. 2041.

§ 1930(a)(6). The Court should compel the Debtor and the litigation trust, as applicable, to reserve in full and pay in full, when due, all quarterly fee obligations that accrue in each quarter settlement proceeds are distributed. The Court should also compel the Debtor to come current on its obligation to file post-confirmation quarterly reports and pay quarterly fees for those quarters. Time is of the essence because the litigation trust will automatically terminate upon making this final distribution, and the U.S. Trustee is concerned the litigation trust will make excessive distributions to creditors if fees under 28 U.S.C. § 1930(a)(6) are not reserved and paid as they come due, and post-confirmation quarterly reports are not brought current.

## II. JURISDICTION

2. Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this Motion.

3. Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems Inc. (In re Columbia Gas Systems Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on this Motion.

## III. BACKGROUND

5. On February 14, 2016, Paragon Offshore plc and 25 affiliates (the "Paragon Debtors") filed chapter 11 petitions in this Court. On the petition date, Paragon Offshore plc ("Paragon") was the ultimate parent company of the other Paragon Debtors. *See* D.I. 2 ¶ 10.

6. On June 7, 2017, the Court confirmed the Fifth Joint Chapter 11 Plan of Paragon Offshore plc and Its Affiliated Debtors (the "Plan"). *See* D.I. 1614. Generally, the Plan provides for the liquidation and dissolution of 15 of the Paragon Debtors, and the creation of a new holding company (Paragon Offshore Limited) for the remaining Paragon Debtors, which reorganized. The Plan has three classes of impaired claims. *See* Plan § 3.3. Under the Plan, Class 3 (Secured Lender Claims) and Class 4 (Senior Notes Claims) received a combination of cash, equity interests in Paragon Offshore Limited, and interests in a litigation trust. *See* Plan §§ 4.3, 4.4 & 5.7.

7. Article 5.7 of the Plan provides for the creation of the Paragon litigation trust and transfers to it claims the Paragon Debtors had against their former parent, Noble Corporation plc ("Noble"), arising out of Noble's 2014 spin-off of Paragon. In particular, the Plan provides:

> The Litigation Trust . . . shall be authorized to exercise and perform all rights and powers held by the Estates with respect to the Noble Claims, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee, representative appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, or any similar official who has been appointed to take control of, supervise, manage or liquidate the Estates, to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Noble Claims.

*Id.* § 5.7(e).

8. The confirmation order finds that "All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan." D.I. 1614 ¶ K. The confirmation order also provides: "The Plan and each of its provisions shall be, and hereby are, **CONFIRMED** under section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement are authorized and approved. The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Order." *See id.* ¶ 2. The plan supplement includes the litigation trust agreement. *See* D.I. 1593 Exh. E-1.

9. The confirmation order also provides:

> Payment of Statutory Fees. All fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid on the Effective Date, or as soon as practicable thereafter, by the Debtors or Reorganized Debtors. Quarterly fees owed to the U.S. Trustee shall be paid when due in accordance with applicable law and the Debtors and Reorganized Debtors shall continue to file reports to show the calculation of such fees for the Debtors' Estates until the Chapter 11 Cases are closed under section 350 of the Bankruptcy Code. Each and every one of the Debtors shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case is closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

D.I. 1614 ¶ 35. The Plan has the same provision. *See id.* Exh. A § 12.5.

10. On July 11, 2017, the Paragon Debtors moved to modify the Plan's definition of "Corporate Restructuring" to allow Paragon to transfer its stock in the Prospector subsidiaries to Paragon Offshore Limited after the effective date. *See* D.I. 1760. On July 17, 2017, the Court approved the Plan modification. *See* D.I. 1775.

11. On July 18, 2017, the Plan became effective. *See* D.I. 1792.

12. On July 20, 2017, Paragon and three of its subsidiaries (the "Prospector Debtors"), filed chapter 11 petitions in this Court. Lead Case No. 17-11572 (CSS). Paragon was the ultimate parent company of the other Prospector Debtors. *See* 17-11572 (CSS) D.I. 9 Exh. A. On March 27, 2018, the Court entered an order dismissing the Prospector Debtors' cases. *See* 17-11572 (CSS) D.I. 406.

13. On December 15, 2017, the Paragon litigation trust filed an adversary proceeding against Noble and other defendants in this Court. Adv. No. 17-51882 (CSS). Generally, the complaint alleged that Noble's spin-off of Paragon in 2014 was a fraudulent transfer. The complaint asserts eight counts. Count I asserts claims under 11 U.S.C. §§ 548(a)(1)(A) and 550(a); Count II asserts claims under 11 U.S.C. §§ 544(b)(1) and 550(a); Count III asserts claims under 11 U.S.C. § 548(a)(1)(B) and 550(a); Count IV asserts claims under 11 U.S.C. §§ 544(b)(1) and 550(a); and Count V asserts claims under 11 U.S.C. §§ 105(a), 544(b), 548(a)(1)(B), and 550(a). *See* Adv. No. 17-51882 (CSS) D.I. 1.

14. On March 19, 2019, the Court entered an order finding that Counts I-V of the complaint "are statutorily core claims which may be finally adjudicated by this Court." Adv. D.I. 172 ¶ 2. The Court's accompanying opinion is reported at *Paragon Litigation Trust v. Noble Corp. PLC (In re Paragon Offshore PLC)*, 598 B.R. 761 (Bankr. D. Del. 2019). The Noble defendants sought leave to appeal, which the District Court denied. *See* Case No. 1:19-mc-78 (LPS) (D. Del.) D.I. 4.

15. On July 31, 2020, Noble filed a chapter 11 petition in the United States Bankruptcy Court for the Southern District of Texas. Case No. 20-33826 (DRJ).

16. On November 20, 2020, the Texas Bankruptcy Court confirmed Noble's chapter 11 plan. *See* Case No. 20-33826 (DRJ) D.I. 723. On February 5, 2021, Noble's plan became effective. *See* Case No. 20-33826 (DRJ) D.I. 891.

17. On February 4, 2021, the Paragon litigation trust filed a motion in this Court to settle the claims against the Noble defendants. *See* Case No. 16-10386 (CSS) D.I. 2223. Generally, the Paragon litigation trust agreed to settle the claims against Noble in exchange for $90,375,000 cash. The U.S. Trustee provided informal comments to counsel about the form of settlement order. The form of settlement order was revised to provide that nothing in the order would release any claims the U.S. Trustee has for quarterly fees under 28 U.S.C. § 1930(a)(6). *See* D.I. 2226. On February 24, 2021, this Court approved the settlement. *See* D.I. 2227.

18. The U.S. Trustee has informally corresponded with counsel for Paragon and the Paragon litigation trust. Upon information and belief, the Paragon litigation trust received the Noble settlement proceeds in March 2021. The Paragon litigation trust takes the position that distributing the settlement proceeds to its beneficiaries is not a disbursement under 28 U.S.C. § 1930(a)(6). Upon information and belief, the Paragon litigation trust intends to distribute the Noble settlement proceeds to its beneficiaries later this week. Under the litigation trust agreement, the Paragon litigation trust must make a final distribution to its beneficiaries upon settling the Noble claims, and the Paragon litigation trust will automatically terminate on the date of final distribution. *See* D.I. 1593 Exh E-1 §§ 2.7 & 6.7.

19. The U.S. Trustee does not know if Paragon has enough funds on hand to pay all quarterly fees due, which under the statute will likely be $250,000 in Q2 2021. Paragon has not filed a post-confirmation quarterly report since Q4 2019. *See* D.I. 2213. Paragon's

failure to file post-confirmation quarterly reports prevents transparency and potentially risks distribution of funds without first ensuring the payment of fees owed under 28 U.S.C. § 1930(a)(6) and any interest thereon pursuant to 31 U.S.C. § 3717 (together, "Quarterly Fees"). The U.S. Trustee reserves all rights regarding Quarterly Fees for each quarter since Q4 2019.

### IV. LAW AND ANALYSIS

20. Paragon is not complying with the confirmation order. Specifically, Paragon is delinquent in filing post-confirmation quarterly reports. Further, upon information and belief, the Paragon litigation trust does not intend to pay or reserve quarterly fees from the Noble settlement proceeds when they are distributed to creditors. Distribution of the Noble settlement proceeds is a disbursement in this case. Therefore, Quarterly Fees are owed on them. The Court should compel Paragon and the Paragon litigation trust, as applicable, to pay all Quarterly Fees in full when due.

21. To fund the U.S. Trustee Program, Congress created in the Treasury of the United States a special fund ("Fund") into which is deposited a percentage of every fee collected pursuant to 28 U.S.C. § 1930 in cases filed under Chapter 7, 11, 12, and 13. *See* 28 U.S.C. § 589a. Congress intended the Program to be funded by users of the bankruptcy system rather than by the taxpayers. *See* H.R. REP. NO. 99-764 at 25 (1986), reprinted in 1986 U.S.C.C.A.N. 5227, 5238; *United States Trustee v. Gryphon at the Stone Mansion, Inc.,* 166 F.3d 552, 554 (3d Cir. 1999) ("Historically, § 1930(a)(6) set forth a scheme to impose the costs of the United States Trustee Program on its users."); *In re Exide Technologies*, 611 B.R. 21, 30 (Bankr. D. Del. 2020) ("Congress originally adopted the fee schedule in section 1930(a)(6) to ensure that the UST Program was self-funded 'by the users of the bankruptcy system – at no

cost to the taxpayer.'")(citing H.R. Rep. No. 764, 99th Cong. 2d Sess. 26 (1986)). A major component of the Fund is the Quarterly Fee imposed on every chapter 11 case pursuant to Section 1930(a)(6).

22. The purpose of 28 U.S.C. § 1930(a)(6) and amendments thereto is to ensure that there is sufficient money in the Fund to fund the United States Trustee Program's operations. *See*, *e.g.*, *In re Exide*, 611 B.R. at 30 ("Congress stated . . . it would 'monitor the self-funding mechanism as it operates' to ensure that the fees collected were sufficient to cover the costs" of the United States Trustee Program)(citing H.R. Rep. No. 764, 99th Cong. 2d Sess. 26 (1986)); *In re Quality Truck & Diesel Injection Serv., Inc.,* 251 B.R. 682, 688 (S.D. W. Va. 2000) ("In enacting [§ 1930(a)(6)], Congress struck what it considered to be a proper balance so as to provide necessary funds for the operations of the United States Trustee Program."); *In re Maruko, Inc.*, 219 B.R. 567, 572 (S.D. Cal. 1998) ("[T]he history of § 1930(a)(6) indicates that it was intended to help the U.S. Trustee fund its own operations through the use of quarterly fees. When Congress amended this section, it intended to expand the revenue gaining capability of the U.S. Trustee.").

23. Before settling on Quarterly Fees based on disbursements to recoup the cost of the U.S. Trustee Program, Congress "considered many different possible mechanisms . . . including fees based on a debtor's assets, fees based on a debtor's liabilities, and a flat fee for all debtors." H.R. Rep. No. 99-764, at 26, reprinted in 1986 U.S.C.C.A.N. 5227, 5237-38. Congress decided to charge graduated Quarterly Fees based on the size of a chapter 11 case's disbursements because it determined that "[s]maller chapter 11 debtors should pay smaller additional fees than larger debtors; [and] the funding mechanism [in section 1930(a)(6)] ensures that this will be the case." *Id.*

24. 28 U.S.C. § 1930(a)(6) provides in relevant part that "a quarterly fee shall be paid to the United States trustee . . . in each case under chapter 11 . . . for each quarter (including any fraction thereof) until the case is converted or dismissed . . . ." 28 U.S.C. § 1930(a)(6). Courts have held that closure by final decree of a debtor's cases also ceases that debtor's obligation to pay Quarterly Fees. *See*, *e.g.*, *Gryphon*, 166 F.3d at 554.

25. Payment of Quarterly Fees is mandatory in every case from the quarter in which the petition is filed until the quarter in which the case is closed pursuant to a final decree. *See Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.)*, 402 F.3d 416, 418 (3d Cir. 2005); *Gryphon*, 166 F.3d at 554. As the fee is determined solely by operation of statute, it is not subject to the agreement of the parties, nor subject to adjustment by the courts. *See, e.g.*, *Walton v. Jamko, Inc. (In re Jamko, Inc.)*, 240 F.3d 1312, 1314 (11th Cir. 2001) (noting that calculation of fee is mandated by statute); *Office of the U.S. Trustee v. Hays Builders, Inc. (In re Hays Builders, Inc.)*, 144 B.R. 778, 779-80 (W.D. Tenn. 1992) (stating that Quarterly Fees are "not subject to the court's discretion in determining what is 'reasonable'"); *In re Central Copters, Inc.*, 226 B.R. 447, 451 (Bankr. D. Mont. 1998) ("[T]he U.S. Trustee's fee under § 1930(a)(6) . . . is fixed and not subject to the court's discretion."); *In re Meyer*, 187 B.R. 650, 653 (Bankr. W.D. Mo. 1995) ("[T]his Court has no discretion to modify or disallow the UST's quarterly fees[.]").

26. Equitable considerations cannot be used to circumvent the clear intent of Congress as embodied in the plain language of a statute. *See U.S. Trustee v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 33 F.3d at 300; *U.S. Trustee v. Price Waterhouse*, 19 F.3d 138, 141 (3d Cir. 1994). *See also In re Kroy (Europe) Ltd.*, 244 B.R. 816, 819 (D. Ariz.

2000) ("[T]here is no language in section 1930(a)(6) indicating that Congress intended to create an 'inequitable' exception to payment of [quarterly] fees.").

27. The plain meaning of 28 U.S.C. § 1930(a)(6) must be applied in every situation, even when another interpretation might seem more equitable. *See*, *e.g.*, *Robiner v. Danny's Mkts., Inc. (In re Danny's Mkts., Inc.)*, 266 F.3d 523, 526 (6th Cir. 2001) ("Congress nevertheless could have – and . . . perhaps even should have – declined to maximize the potential revenue [§ 1930(a)(6)] might generate, but there is unfortunately no indication of any such benevolence or restraint on its part."); *Walton v. Jamko, Inc. (In re Jamko, Inc.)*, 240 F.3d at 1316 n.6 (adopting a broad interpretation of § 1930(a)(6) even though it "could jeopardize the success of the very entities that the Chapter 11 process was intended to benefit, because creditors receive less when the UST receives more," because, "[i]f change is necessary, it is a consideration for Congress, not the courts.").

28. This Court must presume that Congress took all relevant policy considerations into account when it amended 28 U.S.C. § 1930(a)(6); any changes to the statute on policy grounds must be left to Congress. *Cf. United States v. Gilman*, 347 U.S. 507, 511-13 (1954) ("The selection of [a] policy which is most advantageous to the whole involves a host of considerations that must be weighed and appraised. That function is more appropriately for those who write the laws, rather than for those who interpret them."); *In re Genesis Health Ventures, Inc.*, 402 F.3d at 422 ("While the result increases severalfold the quarterly fees the Debtors owe, any remedy is for Congress to fashion and not our Court.").

29. The amount of Quarterly Fees due in any particular quarter is based upon the amount of "disbursements" in that quarter. 28 U.S.C. § 1930(a)(6).

30. Congress expressly chose not to place any qualifications on the source of "disbursements" to be included in calculating quarterly fees. *See*, *e.g.*, *U.S. Trustee v. Boulders on the River, Inc. (In re Boulders on the River, Inc.)*, 218 B.R. 528, 539 (D. Or. 1997) ("Congress, for better or worse, did not make . . . fine distinctions about the required origin of the 'distributions' [sic] or about the entity responsible for quarterly fees at any given stage of a case."); *see also In re Corporate Bus. Prods., Inc.*, 209 B.R. 951, 955 (Bankr. C.D. Cal. 1997) (A "broader construction of 'disbursements' may be consistent with the plain meaning of the statute[] [because Section] 1930(a)(6) states fees are to be based upon disbursements 'in each case.'").

31. Congress chose to impose a fee on the "case." The disbursements used to calculate Quarterly Fees are those made in a particular case, not those made by the debtor, by the estate, or by any other specific entity. "Congress contemplated that disbursements will encompass all payments to third parties directly attributable to the existence of the bankruptcy proceeding . . . . In other words, the technical source of the payments . . . is apparently inconsequential." *In re Danny's Mkts.*, 266 F.3d at 526. *See also In re Jamko,* 240 F.3d at 1313 (all payments are included, "from whatever source"); *In re Hays Builders,* 144 B.R. at 780 (Section 1930(a)(6) includes "all disbursements, whether direct or through a third party"); *In re Pars Leasing, Inc.*, 217 B.R. 218, 220 (Bankr. W.D. Tex. 1997) (disbursements not limited to those made directly by debtor).

32. Just as Congress placed no limitation on the source of the "disbursements" made in a case, it also placed no limitation on the kinds of payments that constitute "disbursements." *See*, *e.g.*, *In re Danny's Mkts.*, 266 F.3d at 526 ("disbursements . . . encompass all payments to third parties directly attributable to the existence of the bankruptcy

proceeding"); *Jamko*, 240 F.3d at 1316 (quarterly fees "apply to all disbursements made during the entire process"); *Hays Builders*, 144 B.R. at 779 ("the statutory language does not set forth any limitation to 'disbursements'"); *In re Huff*, 270 B.R. 649, 651 (Bankr. W.D. Va. 2001) ("[T]he term 'disbursements' applies as defined, without qualifications and conditions.").

33. As recognized by the Court of Appeals for the Third Circuit in *Genesis*, "disbursement" is not defined in the statute. *Genesis*, 402 F.3d at 421. The Court therefore determined to "interpret the word in accordance with its 'ordinary, contemporary, common meaning.'" *Id.* (*citing Perrin v. United States*, 444 U.S. 37, 42, 62 L. Ed. 2d 199, 100 S. Ct. 311 (1979)). The Third Circuit looked to the definition of "disburse" from the Websters' Third New International Dictionary, which was "to expend" or "to pay out." *Id.* (*citing* Websters' Third New International Dictionary 644 (1976)).

34. The broadest possible interpretation of "disbursements" is consistent with Congress' intent in enacting section 1930(a)(6) to ensure that the costs of the United States Trustee Program will be borne by users of the bankruptcy system rather than taxpayers. *Cf. In re Quality Truck, Inc.*, 251 B.R. at 688 (adopting a broad interpretation of "disbursements" because "[t]he purpose of the quarterly fees statute was to help the [United States] Trustee fund its own operations"); *In re A.H. Robins Co., Inc.*, 219 B.R. 145, 151-52 (Bankr. E.D. Va. 1998) (holding that a broad interpretation of "disbursements" for purposes of section 1930(a)(6) "is most consonant with" Congress' intent to fund the United States Trustee Program).

35. As a revenue statute, 28 U.S.C. § 1930(a)(6) must be interpreted so as to maximize the amount collected. *See*, *e.g.*, *In re N. Hess' Sons, Inc.*, 218 B.R. 354, 360 (Bankr. D. Md. 1998) (holding that, as a revenue-generating mechanism, § 1930(a)(6) should be construed so as to maximize revenues).

36. The case law addressing the definition of "disbursements" under 28 U.S.C. § 1930(a)(6) goes back more than two decades. During that period, Congress has amended section 1930(a)(6) several times, but there has been no amendment that limits "disbursements" in any way. It is therefore fair to conclude that Congress must be in agreement with the judicial interpretation as to the scope of "disbursements" as used in section 1930(a)(6). *See Lorrilard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change[.]")

37. As Congress placed no limitations on the term "disbursements" in section 1930(a)(6), there are no limitations. *See*, *e.g.*, *In re Hays Builders,* 144 B.R. at 779 ("[T]he statutory language of § 1930 does not set forth any limitation to 'disbursements[.]'"); *In re Sgaverdea*, 377 B.R. 308, 313 (Bankr. D.N.M. 2007) ("It is Congress who must qualify the term disbursements, not this Court."); *In re Sedro-Woolley Lumber Co., Inc.*, 209 B.R. 987, 989 (Bankr. W.D. Wash. 1997) ("[T]he 'plain language' of the statute does not limit the source of disbursements to property of the estate, nor does it limit payments to those made under the plan.").

38. As a result, every payment made by or on behalf of a debtor, for any reason, constitutes a "disbursement" in that debtor's chapter 11 case for purposes of calculating the quarterly fee. *See*, *e.g.*, *In re Cranberry Growers Coop.*, 930 F.3d 844, 853 (7th Cir. 2019) (holding that payments from customers directly to lender were disbursements for purposes of section 1930(a)(6)); *Cash Cow Servs. of Fla. LLC v. U.S. Trustee (In re Cash Cow Servs. of Fla. LLC)*, 296 F.3d 1261, 1263 (11th Cir. 2002) (holding that consumer loans made by debtor to customers in the ordinary course of business, "as well as [its] other disbursements,

13

payments, or capital which flowed from the bankruptcy estate," were disbursements for purposes of section 1930(a)(6)); *In re Danny's Mkts.*, 266 F.3d at 526 (holding that "Congress contemplated that disbursements will encompass all payments to third parties directly attributable to the existence of the bankruptcy proceeding").

39. Here, distributions of the $90,375,000 in Noble settlement proceeds to beneficiaries of the Paragon litigation trust are disbursements in this case. First, distributions of the Noble settlement proceeds are Plan distributions to creditors. Under article 5.7(e) of the Plan, the Paragon litigation trust is deemed to be acting in the capacity of a bankruptcy trustee. The Paragon litigation trust prosecuted and settled the Noble claims on behalf of Paragon's bankruptcy estate:

> The Litigation Trust . . . shall be authorized to exercise and perform all rights and powers held by the Estates with respect to the Noble Claims, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee, representative appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, or any similar official who has been appointed to take control of, supervise, manage or liquidate the Estates, to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Noble Claims.

D.I. 1614 Exh. A § 5.7(e). The litigation trust agreement provides that its principal purpose "is to aid in the implementation of the Plan" and that the Noble claims are "to be administered for the benefit of holders of Allowed Revolver Claims, Allowed Term Loan Claims, and Allowed Senior Notes Claims." D.I. 1593 Exh. E-1 §§ 10.14 & 2.4. Five of the eight counts in the Paragon litigation trust's complaint against Noble were statutorily core claims. *See* Adv. No. 17-51882 (CSS) D.I. 172 ¶ 2. In addition, finding K of the confirmation order incorporates the

14

litigation trust agreement (as part of the plan supplement) into the Plan. *See* D.I. 1614 ¶ K. Therefore, any distribution under the litigation trust agreement is a distribution under the Plan.

40. Second, the Paragon litigation trust affirmatively chose to avail itself of this Court's jurisdiction to approve the Noble settlement. The parties bargained to require the litigation trustee to seek this Court's approval of the settlement. *See* D.I. 2223 Exh. B § 2.1. The litigation trust sought approval of the settlement pursuant to Fed. R. Bankr. P. 9019. *See* D.I. 2223 ¶¶ 6 & 22-30. The Court determined it has jurisdiction over the settlement pursuant to 28 U.S.C. §§ 157 and 1334 and approved the settlement. Further, the Court retained exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of its order approving the settlement. *See* Case No. 16-10386 (CSS) D.I. 2227.

41. When the Plan was confirmed, claims against Noble were unliquidated. No adversary proceeding was pending, and Noble reserved its rights and defenses. *See* Plan § 5.7(e) ("For the avoidance of doubt, the Noble Entities shall retain any and all rights and defenses against the Litigation Trust with respect to the Noble Claims . . . ."). Now that the claims against Noble have been monetized and their cash proceeds will be distributed pursuant to the Plan and litigation trust agreement (which is incorporated into the Plan), the distributions are disbursements in this case and trigger Quarterly Fee liability under 28 U.S.C. § 1930(a)(6). The Court should require the Debtor and the Paragon litigation trust, as applicable, to reserve and pay all Quarterly Fees in full in cash when due.

## V. CONCLUSION

42. The U.S. Trustee reserves any and all rights, remedies and obligations to, *inter alia*, supplement and/or amend this Motion, and conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

**WHEREFORE,** the U.S. Trustee respectfully requests that this Court issue an order requiring the Debtor and the Paragon litigation trust, as applicable, to reserve and pay all Quarterly Fees in full in cash when due, requiring the Debtor to file all required post-confirmation quarterly reports, and/or granting such other relief as this Court deems appropriate, fair, and just.

Dated: May 12, 2021
       Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 & 9**

By: */s/ Benjamin Hackman*
Benjamin A. Hackman
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (Fax)
benjamin.a.hackman@usdoj.gov