## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| PARAGON OFFSHORE PLC, et al., | Case No. 16-10386 (CSS) |
| Debtors. | **Ref. Docket No. 2231** |
| PARAGON LITIGATION TRUST, | |
| Plaintiff, | |
| v. | |
| NOBLE CORPORATION PLC, NOBLE CORPORATION HOLDINGS LTD, NOBLE CORPORATION, NOBLE HOLDING INTERNATIONAL (LUXEMBOURG) S.à.r.l., NOBLE HOLDING INTERNATIONAL (LUXEMBOURG NHIL) S.à.r.l., NOBLE FDR HOLDINGS LIMITED, NOBLE HOLDING INTERNATIONAL LIMITED, NOBLE HOLDING (U.S.) LLC, NOBLE INTERNATIONAL FINANCE COMPANY, MICHAEL A. CAWLEY, JULIE H. EDWARDS, GORDON T. HALL, JON A. MARSHALL, JAMES A. MACLENNAN, MARY P. RICCIARDELLO, JULIE J. ROBERTSON, AND DAVID W. WILLIAMS, | Adv. Proc. No. 17-51882 (CSS) |
| Defendants. | |

## PARAGON LITIGATION TRUST'S RESPONSE TO U.S. TRUSTEE'S MOTION TO COMPEL FILING OF POST-CONFIRMATION QUARTERLY REPORTS AND PAYMENT OF STATUTORY FEES PURSUANT TO 28 U.S.C. § 1930(A)(6)

Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Filed: May 27, 2021

David J. Zott, P.C. (admitted *pro hac vice*)
Jeffrey J. Zeiger, P.C. (admitted *pro hac vice*)
William E. Arnault (admitted *pro hac vice*)
Anne I. Salomon (admitted *pro hac vice*)
Jason A. Feld (admitted *pro hac vice*)
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

## TABLE OF CONTENTS

**Page**

**STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING** ............. 1

**SUMMARY OF ARGUMENT** ........................................................................................... 1

**STATEMENT OF FACTS** ................................................................................................ 3

**ARGUMENT** ..................................................................................................................... 5

I.     **BECAUSE THE TRUST IS NOT THE DEBTORS, THE
       REORGANIZED DEBTORS, OR THEIR AGENT, NO
       STATUTORY FEES ARE OWED UNDER SECTION 1930.** ......................... 5

II.    **EVEN IF SECTION 1930 APPLIES, THE REORGANIZED
       DEBTORS—NOT THE TRUST—ARE SOLELY RESPONSIBLE
       FOR ANY PAYMENT.** .................................................................................. 10

**CONCLUSION** ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A.H. Robins Co.*,
219 B.R. 145 (Bankr. E.D. Va. 1998)...........................................................................7

*Cash Cow Servs. of Fla. v. U.S. Tr. (In re Cash Cow Servs. of Fla. LLC)*,
296 F.3d 1261 (11th Cir. 2002) ...................................................................................8

*In re Central Copters, Inc.*,
226 B.R. 447 (Bankr. D. Mont. 1998) ..........................................................................8

*In re Charter Behav. Health Sys., LLC*,
292 B.R. 36 (Bankr. D. Del. 2003) ...............................................................................6

*In re Corp. Bus. Prods., Inc.*,
209 B.R. 951 (Bankr. C.D. Cal. 1997)..........................................................................7

*Cranberry Growers Coop. v. Layng*,
930 F.3d 844 (7th Cir. 2019) ........................................................................................8

*In re Exide Techs.*,
611 B.R. 21 (Bankr. D. Del. 2020) ....................................................................8, 9, 11

*Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.)*,
402 F.3d 416 (3d Cir. 2005)..............................................................................2, 6, 7, 8

*In re Hale*,
436 B.R. 125 (Bankr. E.D. Cal. 2010)....................................................................6, 10

*Hobbs v. Buffets, LLC (In re Buffets, LLC)*,
979 F.3d 366 (5th Cir. 2020) .................................................................................2, 6

*In re Huff*,
270 B.R. 649 (Bankr. W.D. Va. 2001) ..........................................................................8

*In re Maruko, Inc.*,
219 B.R. 567 (S.D. Cal. 1998)......................................................................................7

*In re Meyer*,
187 B.R. 650 (Bankr. W.D. Mo. 1995)...............................................................6, 8, 14

*In re N. Hess' Sons, Inc.*,
218 B.R. 354 (Bankr. D. Md. 1998) ..............................................................................7

*In re Pars Leasing, Inc.*,
   217 B.R. 218 (Bankr. W.D. Tex. 1997) ..................................................................8, 14

*In re Quality Truck & Diesel Injection Serv., Inc.*,
   251 B.R. 682 (S.D.W. Va. 2000) ...................................................................................7

*Robiner v. Danny's Mkts., Inc. (In re Danny's Mkts., Inc.)*,
   266 F.3d 523 (6th Cir. 2001) ....................................................................................6, 7

*In re Sedro-Woolley Lumber Co.*,
   209 B.R. 987 (Bankr. W.D. Wash. 1997) ....................................................................7

*St. Angelo v. Victoria Farms, Inc.*,
   38 F.3d 1525 (9th Cir. 1994) .......................................................................................8

*U.S. Tr. v. Boulders on the River, Inc. (In re Boulders on the River, Inc.)*,
   218 B.R. 528 (D. Or. 1997) .........................................................................................7

*U.S. Tr. v. Columbia Gas Sys., Inc. (See In re Columbia Gas Sys. Inc.)*,
   33 F.3d 294 (3d Cir. 1994)................................................................................. *passim*

*U.S. Tr. v. Gryphon at Stone Mansion, Inc.*,
   166 F.3d 552 (3d Cir. 1999).........................................................................................7

*U.S. Tr. v. Hays Builders, Inc. (In re Hays Builders, Inc.)*,
   144 B.R. 778 (W.D. Tenn. 1992) .................................................................................8

*U.S. Tr. v. Kroy (Eur.) Ltd. (In re Kroy (Eur.) Ltd.)*,
   244 B.R. 816 (D. Ariz. 2000).......................................................................................7

*U.S. Tr. v. Price Waterhouse*,
   19 F.3d 138 (3d Cir. 1994)...........................................................................................8

*Walton v. Jamko, Inc. (In re Jamko, Inc.)*,
   240 F.3d 1312 (11th Cir. 2001) ...................................................................................7

*Walton v. Post-Confirmation Comm. of Unsecured Creditors of GC
   Companies, Inc. (In re GC Companies, Inc.)*,
   298 B.R. 226 (D. Del. 2003).........................................................................................7

## Statutes

28 U.S.C. § 1930........................................................................................... *passim*

## Other Authorities

H.R. Rep. 104-196, 104th Cong., 1st Sess. (1995)..........................................11

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

1.      On February 14, 2016, Paragon Offshore plc ("Paragon") and related entities (the "Debtors") filed for chapter 11 bankruptcy protection in this Court.  (D.I. 1.)  On December 15, 2017, the Paragon Litigation Trust (the "Trust") began this adversary proceeding.  (Adv. D.I. 2.)  On February 24, 2021, this Court approved the settlement among the Trust, the Noble Defendants, and the D&O Defendants.  (Adv. D.I. 389.)  On May 12, 2021, the United States Trustee filed the instant motion to compel the Debtors and the Trust to pay quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) in connection with this settlement.  (D.I. 2231.)  The Trust now responds to the United States Trustee's motion.

## SUMMARY OF ARGUMENT

2.      In July 2017, the Trust was created to pursue litigation claims against Noble and others related to Noble's failed spin-off of Paragon in 2014.  After years of hard fought litigation, months of mediation, and Noble's chapter 11 filing last year, the Trust negotiated a global settlement of these claims.  The Court approved this settlement in February 2021, and the Trust stands ready to send the proceeds to the Litigation Trust Beneficiaries—some of whom have been waiting for a recovery for nearly seven years.

3.      The United States Trustee contends it is entitled to a $250,000 fee as a result of this settlement, arguing that payments by the Trust to its beneficiaries are a "disbursement" requiring "mandatory" statutory fees pursuant to 28 U.S.C. § 1930.  Such a payment would be the United States Trustee's third bite at this apple, having already received quarterly fee payments first when the Debtors transferred their interests in these claims to the Trust in 2017 as part of the consideration they distributed to their creditors, and then again when Noble paid its portion of the settlement proceeds to the Trust last

quarter in connection with Noble's chapter 11 cases.  The United States Trustee is not entitled to another $250,000 for multiple, independent reasons.

4.      First, the Trust's payment of the settlement proceeds does not trigger fees under section 1930.   Only "payments by or on behalf of the debtor" constitute "disbursements" that entitle the United States Trustee to statutory fees.  *Hobbs v. Buffets, LLC (In re Buffets, LLC)*, 979 F.3d 366, 373-74 (5th Cir. 2020); *accord Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.)*, 402 F.3d 416, 422 (3d Cir. 2005).  As the Plan and Litigation Trust Agreement make explicit, these proceeds are being paid by the Trust "for the benefit of holders of the Litigation Trust Interests."  They are not payments by or on behalf of the Debtors.  Neither the Debtors nor Reorganized Debtors have any interest in this settlement or outstanding liability to the Trust's beneficiaries, having "unconditionally and irrevocably" transferred "all of their respective rights, title and interests" in these assets in exchange for releases on the Effective Date.

5.      Second, even assuming the Trust's settlement distribution triggers the payment of quarterly fees, the statute, the Plan, and the Confirmation Order all demonstrate that the United States Trustee has no recourse against the Trust.  Section 1930(a) imposes fees on the "parties commencing a case under title 11."  The Plan and Confirmation Order likewise unambiguously provide that "[a]ll fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid … **by the Debtors or Reorganized Debtors**."  The United States Trustee never explains how its request can be squared with this plain language or cites a single case imposing fees against a litigation trust before.  The United States Trustee's motion should be denied.

2

## STATEMENT OF FACTS

6.     On August 1, 2014, Noble completed the spin-off of its wholly-owned subsidiary, Paragon.  On February 14, 2016—roughly 18 months later—Paragon and 25 affiliated debtors filed petitions for chapter 11.  (D.I. 1.)

7.     On June 7, 2017, the Court confirmed Paragon's Fifth Joint Chapter 11 Plan (the "Plan").  (D.I. 1614.)  The Plan established the Trust to pursue claims against Noble and others arising from the spin-off.  Specifically, "the Debtors and the Estates" transferred "to the Litigation Trust the Noble Claims, with good, clean title to such property, free and clear of all liens, charges, Claims, encumbrances and interests."  (D.I. 1614, Ex. A § 5.7(b); *accord* D.I. 1593, Ex. E-1 § 2.4.)  The Trust was established to pursue these claims "for the benefit of holders of the Litigation Trust Interests."  (D.I. 1614, Ex. A § 5.7(b); *accord* D.I. 1593, Ex. E-1 §§ 2.1, 2.4.)  After the transfer, "the Debtors, the Estates, and the Paragon Entities" agreed that they "will have no further interest in or with respect to the Trust Assets or the Litigation Trust."  (D.I. 1593, Ex. E-1 § 2.4.)

8.     On July 18, 2017, the Plan became effective (the "Effective Date").  (D.I. 1792.)  The Litigation Trust Agreement, which sets forth the Trust's "rights," "powers," "limitations," and "obligations," became effective the same day.  (D.I. 1593, Ex. E-1.)

9.     The Confirmation Order and Plan also address the subject of fees required by 28 U.S.C. § 1930.  Paragraph 35 of the Confirmation Order states:

> Payment of Statutory Fees.  All fees payable under section 1930 of chapter 123 of title 28 of the United States Code ***shall be paid*** on the Effective Date, or as soon as practicable thereafter, ***by the Debtors or Reorganized Debtors***. Quarterly fees owed to the U.S. Trustee shall be paid when due in accordance with applicable law and ***the Debtors and Reorganized Debtors shall continue to file reports*** to show the calculation of such fees for the Debtors' Estates until the Chapter 11 Cases are closed under section 350 of the Bankruptcy Code.  ***Each and every one of the Debtors shall remain obligated to pay quarterly fees*** to the U.S. Trustee until the earliest of that

3

> *particular Debtor's case* is closed, dismissed, or converted to a case under
> Chapter 7 of the Bankruptcy Code.

(D.I. 1614 ¶ 35 (emphasis added); *id.* at Ex. A § 12.5.)  Paragon's distributions for the

quarter between July 1, 2017 and September 30, 2017 exceeded $623 million.  (D.I. 1980.)

In that quarter, Paragon paid the maximum fee at that time to the United States Trustee.

10.    On December 15, 2017, the Trust filed its first complaint against several

Noble entities and certain directors of Noble and Paragon.  (Adv. D.I. 1.)  On July 31,

2020—less than six weeks before trial—the Noble Defendants and certain related

companies filed chapter 11 petitions in the United States Bankruptcy Court for the Southern

District of Texas.  (D.I. 1, *In re Noble Corporation plc,* No. 20-33836 (Bankr. S.D. Tex.

July 31, 2020).)  Leading up to the filing and throughout the duration of Noble's chapter

11 case, the parties engaged in active negotiations, aided by former Bankruptcy Judge

Kevin Gross as mediator.  Ultimately (thanks in large part to Judge Gross), the Trust settled

its claims for $90,375,000.

11.    On February 4, 2021, the Trust filed a motion seeking this Court's approval

of the settlement.  (Adv. D.I. 389.)  As the Trust explained in its motion,

> Pursuant to Section 6.10 of the Litigation Trust Agreement, "[t]he Litigation
> Trust Management shall be authorized to settle any of the Noble Claims
> upon approval by a majority of the members of the Litigation Trust
> Committee without approval of the Bankruptcy Court."  The Litigation
> Trust Committee unanimously approved the settlement on October 8[,
> 2020].  Section 7.7 of the Litigation Trust Agreement also provides that
> "[t]he Litigation Trust Management shall have the right at any time to seek
> instructions from the Bankruptcy Court concerning the administration or
> disposition of the Trust Assets and the Noble Claims required to be
> administered by the Litigation Trust" and protects the Trust from liability
> for any decisions made with Court approval.  Accordingly, the Trust is filing
> this motion to ensure that all beneficiaries have notice and an opportunity
> to be heard and the Court has an opportunity to review the settlement.

(Adv. D.I. 389 ¶ 21.)

12.    On February 24, 2021, this Court approved the settlement.  (Adv. D.I. 392.)
On March 19, 2021, the Trust received all of the payments required under the settlement
agreement from the defendants, including $7.7 million from Noble.  (Adv. D.I. 395.)  On
April 29, 2021, Noble filed a Chapter 11 Post-Confirmation Report for the Quarter Ending
March 31, 2021, indicating that it had paid the United States Trustee $250,000 for
disbursements that quarter—the maximum allowed under 28 U.S.C. § 1930.  (D.I. 1097,
*In re Noble Corporation plc,* No. 20-33836 (Bankr. S.D. Tex. Apr. 29, 2021); 28 U.S.C.
§ 1930(a)(6)(B)(ii)(II).)

13.    On May 12, 2021, the United States Trustee moved this Court to "compel
Paragon and the Paragon litigation trust, as applicable, to pay all Quarterly Fees in full
when due" in connection with this settlement.  (D.I. 2231 ¶ 20.)  The Trust now responds.

## ARGUMENT

### I.    BECAUSE THE TRUST IS NOT THE DEBTORS, THE REORGANIZED DEBTORS, OR THEIR AGENT, NO STATUTORY FEES ARE OWED UNDER SECTION 1930.

14.    To try to bring the Trust's payment of the settlement proceeds to its
beneficiaries within the ambit of section 1930(a)(6), the United States Trustee asks this
Court to hold that there is "no limitation on the source of 'disbursements'" and "no
limitation on the kinds of payments that constitute 'disbursements'" triggering fees.  (D.I.
2231 ¶¶ 30, 32.)  The United States Trustee contends there are no constraints whatsoever:
"As Congress placed no limitations on the term 'disbursements' in section 1930(a)(6), there
are no limitations."  (*Id.* ¶ 37.)  That sweeping, limitless interpretation of section 1930(a)(6)
is not the law in the Third Circuit.

15.    Section 1930(a)(6) requires the payment of quarterly fees to the United
States Trustee on "disbursements."  28 U.S.C. § 1930(a)(6).  "Several circuits define

'disbursements' as 'all payments by or on behalf of the debtor." *In re Buffets, LLC*, 979 F.3d at 373-74; *accord In re Genesis Health Ventures, Inc.*, 402 F.3d at 422 ("Payments made on behalf of a debtor, whether made directly or indirectly through centralized disbursing accounts, constitute that particular debtor's disbursements for the purpose of quarterly fees calculations under § 1930(a)(6)."). The word "disbursements" is "commonly understood in this context to apply to payments made with the funds generated from the liquidation of the debtor's assets." *Robiner v. Danny's Mkts., Inc. (In re Danny's Mkts., Inc.)*, 266 F.3d 523, 525 (6th Cir. 2001) (applying this understanding to require quarterly fees on the reorganized debtors' post-confirmation operating expenses).

16.     Although courts have taken different approaches to interpreting section 1930(a)(6), "the common thread that appears to bind many of those decisions together is the fact that the debtor had some interest in, or control over, the money disbursed." *In re Hale*, 436 B.R. 125, 130 (Bankr. E.D. Cal. 2010); *accord In re Charter Behav. Health Sys., LLC*, 292 B.R. 36, 45, 47 (Bankr. D. Del. 2003) ("The issue here is not who wrote the check or when the disbursement was booked but whose disbursement was made," noting that "the majority have ruled that 'disbursements' include *all* payments made by or for a debtor, regardless of the source of payment"). In *Meyer*, for example, a husband (the debtor) and his estranged wife (a non-debtor) jointly owned real estate that was sold for $321,900 to satisfy their secured liens. *In re Meyer*, 187 B.R. 650, 653 (Bankr. W.D. Mo. 1995). The court held that only the "$144,223.42 disbursed by the escrow agent as the proceeds in which debtor had an interest are subject to quarterly fees." *Id.* In other words, section 1930 fees are not, as the United States Trustee argues, triggered by "every situation" when "any" "entity" makes "any" payment to any "third party" from "any

6

source" "for any reason." (*Cf.* D.I. 2231 ¶¶ 27-38.) Rather, "it is the ultimate payment of

the expense by any entity on behalf of a debtor that is the subject of quarterly fees." *Walton*

*v. Post-Confirmation Comm. of Unsecured Creditors of GC Companies, Inc. (In re GC*

*Companies, Inc.)*, 298 B.R. 226, 230 (D. Del. 2003). That makes perfect sense of the term

"disbursement" under the statute, since the logical next question for section 1930 payments

is which "particular debtor" must pay the quarterly fee for that disbursement. *In re Genesis*

*Health Ventures, Inc.*, 402 F.3d at 422.

17.    Much of the United States Trustee's argument depends on broad, out-of-

context dicta from readily distinguishable cases. Most of the cases involved the decades-

old "controversy" created by the 1996 amendments to section 1930(a)(6) about which

"post-confirmation" payments by reorganized or liquidating debtors trigger fees.[1] *U.S. Tr.*

*v. Gryphon at Stone Mansion, Inc.*, 166 F.3d 552, 554 (3d Cir. 1999) (considering this issue

for a liquidating debtor that "sold all of its assets as part of the plan and is distributing

---

[1]    *Accord Walton v. Jamko, Inc. (In re Jamko, Inc.)*, 240 F.3d 1312, 1313 (11th Cir. 2001) (holding that section 1930 covers "all post-confirmation disbursements made by a reorganized debtor, from whatever source, including ordinary operating expenses"); *In re Danny's Mkts., Inc.*, 266 F.3d at 526 (holding that "the debtor's day-to-day, post-confirmation operating expenses, must be accounted for in the calculation of the trustee's quarterly fee"); *In re Quality Truck & Diesel Injection Serv., Inc.*, 251 B.R. 682, 686 (S.D. W. Va. 2000) (holding that section 1930 applies to "all disbursements made by the debtor, even those made in its ordinary course of business with no relation to the original plan of reorganization"); *U.S. Tr. v. Kroy (Eur.) Ltd. (In re Kroy (Eur.) Ltd.)*, 244 B.R. 816, 818 (D. Ariz. 2000) (holding that the debtor needed to pay post-confirmation fees even though the debtor "did not 'use' the bankruptcy system subsequent to the amendment of section 1930(a)(6) other than simply keeping the action open"); *In re Maruko, Inc.*, 219 B.R. 567, 573 (S.D. Cal. 1998) ("quarterly fees should be applied to all of Maruko's post-confirmation payments"); *In re A.H. Robins Co.*, 219 B.R. 145, 150-51 (Bankr. E.D. Va. 1998) (interpreting the "term 'disbursements' as it is used in the Amendment" to encompass all post-confirmation payments made by reorganized debtors); *In re Corp. Bus. Prods., Inc.*, 209 B.R. 951, 952 (Bankr. C.D. Cal. 1997) (agreeing with the U.S. Trustee that "all postconfirmation payments made by Reorganized Debtors constitute 'disbursements'"); *In re Sedro-Woolley Lumber Co.*, 209 B.R. 987, 989 (Bankr. W.D. Wash. 1997) ("the postconfirmation fees due the United States Trustee should be calculated on the basis of all disbursements made by the reorganized debtors"); *In re N. Hess' Sons, Inc.*, 218 B.R. 354, 361 (Bankr. D. Md. 1998) ("the term disbursements in 11 U.S.C. § 1930(a)(6) (1996) includes all postconfirmation expenditures by debtor"); *U.S. Tr. v. Boulders on the River, Inc. (In re Boulders on the River, Inc.)*, 218 B.R. 528, 531 (D. Or. 1997) (analyzing "whether the term disbursements in section 1930(a)(6) includes distributions made by a reorganized debtor").

proceeds to creditors"). Several others examined whether fees are due when a third party (often, the debtor's agent) makes payments on the debtor's behalf.[2] A few speak to standing or procedural questions.[3] One addresses a debtor's refinancing,[4] and another addresses a debtor who makes consumer loans.[5] None involved a litigation trust recovering and then paying proceeds to former creditors after the debtor "unconditionally and irrevocably" relinquished any interest in those proceeds. (D.I. 1593, Ex. E-1 § 2.4.)

18.    Applying the common understanding that only "payments by or on behalf of the debtor" trigger fees, the United States Trustee's motion fails. By distributing the "corpus of the Litigation Trust Pro Rata to the beneficiaries of the Litigation Trust," the

---

[2]    *See In re Genesis Health Ventures, Inc.*, 402 F.3d at 418 (analyzing "whether payments made by certain debtors on behalf of other debtors" through a common cash management system "constitute disbursements of the paying debtors only or whether those payments must be attributed to the debtors on whose behalf the payments were made"); *Cranberry Growers Coop. v. Layng*, 930 F.3d 844, 853 (7th Cir. 2019) (holding that "payments by [debtors'] customers to [a creditor] were payments made on behalf of [debtors] and resulted in the reduction of [debtors'] prepetition debt" and thus were disbursements); *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1533–34 (9th Cir. 1994) (holding that a debtor who sold its farm indirectly through an escrow agent and lawyer for purposes of paying a secured creditor with the sale proceeds constituted disbursements); *In re Central Copters, Inc.*, 226 B.R. 447, 449-50 (Bankr. D. Mont. 1998) (holding that sale proceeds of the debtors' secured property paid by the purchaser to a secured creditor "to offset those parties' claims against the DIP" constituted a disbursement); *In re Pars Leasing, Inc.*, 217 B.R. 218, 219 (Bankr. W.D. Tex. 1997) (holding that, where the debtor had vehicle leases with "motor freight common carriers" and those "carriers [would] generally deduct certain expenses of operation pursuant to the terms of the leases from the payments it makes to the debtor," those "disbursements made by the carriers pursuant to lease agreements with the debtor" trigger fees); *In re Meyer*, 187 B.R. 650, 653 (Bankr. W.D. Mo. 1995) (holding that debtor's sale of real estate by an escrow agent to pay secured creditors constitutes a disbursement); *U.S. Tr. v. Hays Builders, Inc. (In re Hays Builders, Inc.)*, 144 B.R. 778 (W.D. Tenn. 1992) (holding that cash payments to debtor's subcontractors and suppliers by debtor's construction lender were disbursements).

[3]    *U.S. Tr. v. Columbia Gas Sys., Inc. (See In re Columbia Gas Sys. Inc.)*, 33 F.3d 294, 296 (3d Cir. 1994) (U.S. Trustee standing); *U.S. Tr. v. Price Waterhouse*, 19 F.3d 138, 140 (3d Cir. 1994) (same); *In re Exide Techs.*, 611 B.R. 21, 26 (Bankr. D. Del. 2020) (retroactivity of the 2017 statutory fee amendment).

[4]    *In re Huff*, 270 B.R. 649, 650, 653 (Bankr. W.D. Va. 2001) ("the issue here is whether a transaction to refinance an existing debt, which is retired with proceeds from the new loan, is a disbursement" and concluding it was because "the prior loan was retired by a payment made by the Debtor or on behalf of the debtor and it was made to a creditor").

[5]    *Cash Cow Servs. of Fla. v. U.S. Tr. (In re Cash Cow Servs. of Fla. LLC)*, 296 F.3d 1261, 1262–63 (11th Cir. 2002) ("This is a preconfirmation case … The question is whether the consumer loans made by [the debtor] to its customers were 'disbursements'").

8

Trust is not paying expenses on behalf of any Debtors.  (D.I. 1614, Ex. A § 5.7(d).)  Rather,

all "disbursements" related to any of the Debtors' obligations to the Trust beneficiaries and

the claims against Noble occurred at the Effective Date in 2017.  As the Plan states:

> On the Effective Date, the Debtors and the Estates shall preserve and transfer to the Litigation Trust the Noble Claims, with good, clean title to such property, free and clear of all liens, charges, Claims, encumbrances and interests, to be pursued, pursuant to the Litigation Trust Agreement, by the Litigation Trust Management for the benefit of holders of the Litigation Trust Interests.

(D.I. 1614, Ex. A § 5.7(b).)  This transfer to the Trust was "in consideration for the benefit

of the releases of the Allowed Revolver Claims, Allowed Term Loan Claims, and Allowed

Senior Notes Claims pursuant to the Plan."  (D.I. 1593, Ex. E-1 § 2.4.)  Indeed, the parties

were required to "treat the transfer" of "the Trust Assets attributable to such Litigation

Trust Beneficiaries as a transfer of such assets directly to such Litigation Trust

Beneficiaries followed by a contribution of the Trust Assets to the Litigation Trust."  (D.I.

1593, Ex. E-1 § 5.1.)  Accordingly, this 2017 transfer pursuant to the Plan was the "ultimate

payment" made by or on behalf of the Debtors.[6]  And consistent with section 1930(a), the

United States Trustee received its quarterly fee in connection with disbursements then.[7]

---

[6]    The United States Trustee emphasizes that the "claims against Noble were unliquidated" at confirmation. (D.I. 2231 ¶ 41.)  But that ignores that the Debtors (1) received releases related to these claims under the Plan even though those claims might never have been monetized; (2) transferred $10 million into the Trust in connection with its creation; and (3) paid the United States Trustee the maximum fee for a quarterly distribution at that time.  (*See* D.I. 1614, Ex. A § 5.7(f).)  The United States Trustee does not explain why these events would not fit its expansive "disbursement" definition.  Regardless, liquidating these claims did not deter the United States Trustee from filing this motion less than two weeks after receiving statutory fees on a portion of the same property from Noble as the debtor in its own chapter 11 cases.  (*See* D.I. 1097, *In re Noble Corporation plc,* No. 20-33836 (Bankr. S.D. Tex. Apr. 29, 2021).)

[7]    This answer is unchanged by the fact that the Plan incorporates the Litigation Trust Agreement or the Trust sought this Court's approval of the settlement (D.I. 2231 ¶¶ 39-40), since "UST quarterly fees are user fees associated with ***the debtors' use*** of the bankruptcy system."  *In re Exide Techs.*, 611 B.R. at 32 (emphasis added).  The Trust had full authority to settle these claims without the Court's approval (*see* D.I. 1593, Ex. E-1 § 6.10), and a non-debtor seeking relief from a bankrupt court does not transform that relief into a payment "by or on behalf of the debtor."

9

19.     The Trust's payments to Litigation Trust Beneficiaries now—four years later—are by the Trust "for the benefit of holders of the Litigation Trust Interests," not by or on behalf of the Debtors.  (D.I. 1614, Ex. A § 5.7(b).)  That is because "[f]rom and after the Effective Date, any Cash, proceeds, or other property received by the Litigation Trust … *shall constitute Trust Assets* for purposes of distributions under this Agreement."  (D.I. 1593, Ex. E-1 § 2.4 (emphasis added).)  The "Trust Assets" are "Cash, proceeds, or other property received by the Litigation Trust from third parties arising from or related to the prosecution, settlement, or compromise of the Noble Claims."  (*Id.*)  The Trust only "received the Noble settlement proceeds in March 2021" (D.I. 2231 ¶ 18), long after "the Debtors, the Estates, and the Paragon Entities" agreed they "will have no further interest in or with respect to the Trust Assets or the Litigation Trust."  (D.I. 1593, Ex. E-1 § 2.4.) This is not a case where the debtors "had some interest in, or control over, the money disbursed."  *In re Hale*, 436 B.R. at 130.  The Trust Assets vested in the Trust "free and clear" years ago.  (D.I. 1593, Ex. E-1 at 4, § 2.4.)

20.     In short, the notion that the Trust's "final distribution to Litigation Trust Beneficiaries on account of their Litigation Trust Interests" is, in fact, a "disbursement" on behalf of the Debtors cannot be squared with the law, the Plan or the Litigation Trust Agreement.  (D.I. 1593, Ex. E-1 § 6.7.)  That is why the United States Trustee contends there must be "no limitations" on the payments that trigger fees.  Applying the limitations recognized by courts in this circuit, the United States Trustee's motion should be denied.

## II.    EVEN IF SECTION 1930 APPLIES, THE REORGANIZED DEBTORS— NOT THE TRUST—ARE SOLELY RESPONSIBLE FOR ANY PAYMENT.

21.     Even assuming the Trust's settlement payment could be the type of "disbursement" that implicates section 1930, the United States Trustee's motion would still

10

fail against the Trust.  That is because the statute, Plan, and Confirmation Order all confirm that the only entities responsible for statutory payments under section 1930 are the Reorganized Debtors, not the Trust.  Indeed, the United States Trustee's motion implicitly recognizes this when it requests payment from "the Debtor and the litigation trust, as applicable."  (D.I. 2231 ¶ 1; *accord id.* ¶¶ 20, 41.)

22.     "In interpreting a statute, the Court must begin its analysis with the plain meaning of the statute." *In re Exide Techs.*, 611 B.R. at 26.  Section 1930 makes plain who is responsible for statutory payments:  "[t]he ***parties commencing a case*** under title 11 shall pay … the following filing fees."  28 U.S.C. § 1930(a) (emphasis added); *see also* H.R. Rep. 104-196, 104th Cong., 1st Sess. at 47 (1995) ("Section 111 adds new language, as proposed by the Administration, to extend the quarterly fee payments ***for debtors*** under Chapter 11 of the Bankruptcy Code to include the period from when a reorganization plan is confirmed by the Bankruptcy Court until the case is converted or dismissed." (emphasis added)); *In re Exide Techs.*, 611 B.R. at 32 ("Under the 2017 Amendment, the user fees ***for debtors*** making $1 million or more in disbursements is the lesser of 1% of disbursements or $250,000." (emphasis added)).  The parties commencing these cases on February 14, 2016 were "Paragon Offshore plc and 25 affiliates."  (D.I. 2231 ¶ 5.)  The Trust, in contrast, was created when the Plan became effective on July 18, 2017.  (D.I. 1792.)  Whether the Reorganized Debtors are able to make this full $250,000 payment is irrelevant to the question of who "shall pay" these fees.  As the United States Trustee insists, "[t]he plain meaning of 28 U.S.C. § 1930(a)(6) must be applied in every situation, ***even when another interpretation might seem more equitable***."  (D.I. 2231 ¶ 27 (emphasis

DOCS_DE:234612.1 69038/001

added).)  There is no question under the plain meaning of section 1930 that only the Debtors

and Reorganized Debtors—not the Trust—can be responsible for any such payments.

23.    The Trust and the Debtors are not interchangeable.  In fact, the United States

Trustee repeatedly distinguishes between "Paragon" and the "Paragon Debtors," on the one

hand, and the "Paragon litigation trust," on the other.  (*See*, *e.g.*, D.I. 2231 ¶¶ 10, 13, 18,

20.)  That is because they are not the same.  The Trust is a distinct entity with separate

counsel "established for the sole purpose of liquidating, monetizing, and distributing the

Trust Assets" "for the benefit of Allowed Revolver Claims, Allowed Term Loan Claims,

and Allowed Senior Notes Claims."  (D.I. 1593, Ex. E-1 § 5.1; D.I. 1614, Ex. A at 8-9.)

The Trust has its own management, obligations, and tax ID number separate from the

Debtors.  (*See* D.I. 1593, Ex. E-1 §§ 2.2, 6.2.)  Unlike the Debtors, the Trust is

> authorized to exercise and perform all rights and powers held by the Estates
> with respect to the Noble Claims, including, without limitation, the
> authority under section 1123(b)(3) of the Bankruptcy Code, and shall be
> deemed to be acting in the capacity of a bankruptcy trustee, receiver,
> liquidator, conservator, rehabilitator, creditors' committee, representative
> appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, or any
> similar official who has been appointed to take control of, supervise,
> manage or liquidate the Estates, to provide for the prosecution, settlement,
> adjustment, retention, and enforcement of the Noble Claims.

(D.I. 1614, Ex. A § 5.7(e).)  Concluding that a debtor has certain obligations does not

answer whether a trust has them too.

24.    And here, the Plan and Confirmation Order unambiguously answer who is

responsible for quarterly fees: "[a]ll fees payable under section 1930 of chapter 123 of title

28 of the United States Code shall be paid on the Effective Date, or as soon as practicable

thereafter, ***by the Debtors or Reorganized Debtors***."  (D.I. 1614, Ex. A § 12.5 (emphasis

added); *accord* D.I. 1614 ¶ 35 (same language in confirmation order).)  The Plan reiterates

that "[*e*]*ach and every one of the Debtors* shall remain obligated to pay quarterly fees to

the U.S. Trustee until the earliest of that particular Debtor's case is closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code." (*Id.* (emphasis added).) The Litigation Trust Agreement is consistent, providing that "[u]pon the settlement, conclusion of litigation, or collection of proceeds of the Noble Claims, the Litigation Trust shall make a final distribution ***to Litigation Trust Beneficiaries*** on account of their Litigation Trust Interests in accordance with the terms of the Plan and this Agreement." (D.I. 1593, Ex. E-1 § 6.7 (emphasis added); *see also* D.I. 1614, Ex. A § 5.7(d) ("Upon the settlement, conclusion of litigation and collection of all of the claims in the Litigation Trust, after the payment of all costs and expenses of collection, the ***Litigation Trust Management must distribute the corpus of the Litigation Trust Pro Rata to the beneficiaries of the Litigation Trust*** in accordance with their holdings of Litigation Trust Interests." (emphasis added).) Nothing in the Litigation Trust Agreement requires the Trust to pay any statutory fees.

25.    Tellingly, the United States Trustee does not cite a single provision from the Plan, Confirmation Order, or Litigation Trust Agreement stating that the Trust has an independent or joint and several responsibility to pay statutory fees when it distributes settlement proceeds to Trust Beneficiaries.  None exists.  Of course, the same Plan that established the Trust could have imposed these quarterly fee obligations on the Trust.  The United States Trustee also could have raised this issue when it objected at confirmation. (D.I. 1560.)  It failed to do so.  As a result, the Plan and Confirmation Order follow the statute and leave this obligation solely with "the Debtors."[8]

---

[8]    The Reorganized Debtors have filed quarterly reports through March 31, 2021.  (D.I. 2234–2238.)  The Trust lacked authority to file these reports on their behalf—an obligation the Plan and Confirmation Order place squarely on "the Debtors and Reorganized Debtors."  (D.I. 1614 ¶ 35; *id.* at Ex. A § 12.5.)  The United States Trustee does not argue otherwise.  (*See* D.I. 2231 ¶ 20 ("Specifically, ***Paragon*** is delinquent in filing post-confirmation quarterly reports." (emphasis added).)  The Trust also understands the Reorganized Debtors will pay quarterly fees for the post-2019 period prior to the hearing.

13

26.     The United States Trustee makes no effort to show that section 1930 can require payment from litigation trusts.  Not one of the cases cited by the United States Trustee imposes fees on a litigation trust.  In fact, those that involved payments from third parties reached the opposite result.  *See*, *e.g.*, *In re Pars Leasing, Inc.*, 217 B.R. at 221 (holding "that **the debtor's** quarterly fee payment pursuant to 28 U.S.C. § 1930(a)(6) should in this case be calculated upon not just the actual cash disbursements made by the debtor-in-possession, but also those cash disbursements made by the common carriers with whom the debtor had contracts and who made cash disbursements pursuant to those contracts to third parties and deducted those disbursements from the remittance to the debtor under the contracts" (emphasis added)); *In re Meyer*, 187 B.R. at 653 (*supra* ¶ 16). Rather than confront this issue, the motion skips right over it, urging the Court to "require the Debtor and the Paragon litigation trust, as applicable, to reserve and pay all Quarterly Fees in full in cash when due."  (D.I. 2231 ¶ 41.)  But there is no basis under the statute, Plan, or Confirmation Order for imposing statutory fees on the Trust.

## CONCLUSION

27.     Because the Trust's payment of settlement proceeds to its beneficiaries is not by or on behalf of the Debtors and, regardless, any statutory fees owed must be paid by the Reorganized Debtors, the Trust respectfully requests that the Court deny United States Trustee's motion.

DOCS_DE:234612.1 69038/001

Dated: May 27, 2021

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Timothy P. Cairns*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
ljones@pszjlaw.com
tcairns@pszjlaw.com

- and -

KIRKLAND & ELLIS LLP
David J. Zott, P.C. (admitted *pro hac vice*)
Jeffrey J. Zeiger, P.C. (admitted *pro hac vice*)
William E. Arnault (admitted *pro hac vice*)
Anne I. Salomon (admitted *pro hac vice*)
Jason A. Feld (admitted *pro hac vice*)
300 N. LaSalle Street
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
dzott@kirkland.com
jzeiger@kirkland.com
warnault@kirkland.com
anne.salomon@kirkland.com
jason.feld@kirkland.com

*Co-Counsel for Paragon Litigation Trust*

15

## CERTIFICATE OF SERVICE

I, Timothy P. Cairns hereby certify that on May 27, 2021, I caused the foregoing *Paragon Litigation Trust's Response to U.S. Trustee's Motion to Compel Filing of Post-Confirmation Quarterly Reports and Payment of Statutory Fees Pursuant to 28 U.S.C. § 1930(a)(6)* to be served on the following parties by electronic mail:

> Benjamin A. Hackman
> Trial Attorney
> United States Department of Justice
> Office of the United States Trustee
> J. Caleb Boggs Federal Building
> 844 King Street, Suite 2207, Lockbox 35
> Wilmington, DE 19801
> Email: benjamin.a.hackman@usdoj.gov

*/s/ Timothy P. Cairns*
Timothy P. Cairns

16