

**CHRISTOPHER S. SONTCHI**
**CHIEF JUDGE**

**824 N. MARKET STREET**
**WILMINGTON, DELAWARE**
**(302) 252-2888**

June 28, 2021

<u>**VIA CM/ECF**</u>
Andrew R. Vara
United States Trustee, Regions 3 & 9
Benjamin A Hackman
Trial Attorney
United States Department of Justice
Office of the United States Trustee
844 King Street, Suite 2207
Wilmington, DE 19801

Laura Davis Jones
Timothy P. Cairns
Pachulski, Stang, Ziehl
& Jones, LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19801

David J. Zott
Jeffrey J. Zeiger
William E. Arnault
Anne I. Salomon
Jason A. Feld
Kirkland & Ellis LLP
300 N. LaSalle Street
Chicago, IL 60654

Mark D. Collins
Amanda R. Steele
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Alfredo R. Perez
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153

     RE:    *Paragon Offshore, PLC*, Case No.: 16-10386 (CSS)

Dear Counsel:

     For decades, the Office of the United States Trustee (the "OUST") has held a critical role as the watchdog over the integrity of the administration of the United States bankruptcy system

- a role it has filled admirably. During that time, the OUST collected modest fees to support its operations. In recent years, Congress has raised those fees dramatically, increasing the administrative burden on debtors, and reducing creditor recoveries. Unfortunately, the OUST has been compelled to act as a tax collector, focused on increasing the coffers of the U.S. Treasury, perhaps, at times, in derogation of its original mission. In this case, it has led the OUST to seek to impose a $250,000 tax on the creditors for the second time on payment of their claims (and perhaps the third time). The OUST has already collected its fee. It is not entitled to a second bite at the apple. The motion to compel payment of further fees to the OUST will be denied.

### 1. Statement of Facts

The facts before me are simple. On February 14, 2016, Paragon Offshore plc ("Paragon") and 25 affiliated debtors (collectively, the "Debtors") filed petitions for chapter 11.[1]

On June 7, 2017, I confirmed the Debtors' Fifth Joint Chapter 11 Plan (the "Plan").[2] The Plan established the Paragon Litigation Trust (the "Trust") to pursue claims against Noble Corporation plc ("Noble") and others. Specifically, "the Debtors and the Estates" transferred "to the Litigation Trust the Noble Claims, with good, clean title to such property, free and clear of all liens, charges, Claims, encumbrances and interests."[3] The Trust was established to pursue these claims "for the benefit of holders of the Litigation Trust Interests."[4] After the transfer, "the Debtors, the Estates, and the Paragon Entities" agreed that they "will have no further interest in or with respect to the Trust Assets or the Litigation Trust."[5] On July 18, 2017, the Plan became effective (the "Effective Date").[6] The Litigation Trust Agreement, which sets forth the Trust's "rights," "powers," "limitations," and "obligations," became effective the same day.[7]

The Confirmation Order and Plan address the subject of fees required by 28 U.S.C. § 1930. Paragraph 35 of the Confirmation Order states:

> <u>Payment of Statutory Fees</u>. All fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid on the Effective Date, or as soon as practicable thereafter, by the Debtors or Reorganized Debtors. Quarterly fees owed to the U.S. Trustee shall be paid when due in accordance with applicable

---

[1] D.I. 1.

[2] D.I. 1614.

[3] D.I. 1614, Ex. A § 5.7(b); accord D.I. 1593, Ex. E-1 § 2.4.

[4] D.I. 1614, Ex. A § 5.7(b); accord D.I. 1593, Ex. E-1 §§ 2.1, 2.4.

[5] D.I. 1593, Ex. E-1 § 2.4.

[6] D.I. 1792.

[7] D.I. 1593, Ex. E-1.

law and the Debtors and Reorganized Debtors shall continue to file reports to show the calculation of such fees for the Debtors' Estates until the Chapter 11 Cases are closed under section 350 of the Bankruptcy Code. Each and every one of the Debtors shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case is closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.[8]

For the quarter between July 1, 2017, and September 30, 2017, the time in which the Noble Claims were transferred to the Litigation Trust, Paragon's distributions exceeded $623 million.[9] In that quarter, Paragon paid to the United States Trustee the maximum fee payable at that time.

On December 15, 2017, the Trust filed its first complaint against several Noble entities and certain directors of Noble and Paragon.[10] On July 31, 2020—less than six weeks before trial—the Noble Defendants and certain related companies filed chapter 11 petitions in the United States Bankruptcy Court for the Southern District of Texas.[11] Leading up to the filing and throughout the duration of Noble's chapter 11 case, the parties engaged in active negotiations, aided by former Bankruptcy Judge Kevin Gross as mediator. Ultimately, the Trust settled its claims for $90,375,000.

On February 4, 2021, the Trust filed a motion seeking the Court's approval of the settlement.[12] As the Trust explained in its motion:

> Pursuant to Section 6.10 of the Litigation Trust Agreement, "[t]he Litigation Trust Management shall be authorized to settle any of the Noble Claims upon approval by a majority of the members of the Litigation Trust Committee without approval of the Bankruptcy Court." The Litigation Trust Committee unanimously approved the settlement on October 8[, 2020]. Section 7.7 of the Litigation Trust Agreement also provides that "[t]he Litigation Trust Management shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust Assets and the Noble Claims required to be administered by the Litigation Trust" and protects the Trust from liability for any decisions made with Court approval. Accordingly, the Trust is filing this motion to ensure that all beneficiaries have notice and an

---

[8] D.I. 1614 ¶ 35; *id*. at Ex. A § 12.5.

[9] D.I. 1980.

[10] Adv. D.I. 1.

[11] D.I. 1, *In re Noble Corporation plc,* No. 20-33836 (Bankr. S.D. Tex. July 31, 2020).

[12] Adv. D.I. 389.

> opportunity to be heard and the Court has an opportunity to review
> the settlement.[13]

On February 24, 2021, I approved the settlement.[14] On March 19, 2021, the Trust received all the payments required under the settlement agreement from the defendants, including $7.7 million from Noble.[15] On April 29, 2021, Noble filed a Chapter 11 Post-Confirmation Report for the Quarter Ending March 31, 2021 in the Bankruptcy Court for the Southern District of Texas, indicating that it had paid the United States Trustee $250,000 for disbursements, with said disbursements including the settlement amount paid to the Liquidation Trust — the maximum allowed under 28 U.S.C. § 1930.[16]

On May 12, 2021, the OUST filed its Motion of the United States Trustee to Compel Filing of Post-Confirmation Quarterly Reports and Payment of Statutory Fees Pursuant to 28 U.S.C. § 1930(a)(6) (the "Motion"), seeking to "compel Paragon and the Paragon litigation trust, as applicable, to pay all Quarterly Fees in full when due" in connection with this settlement.[17]

## 2. The Payments to the Trust Beneficiaries Do Not Constitute "Disbursements" Under 28 U.S.C. 1930(a)(6)

Section 1930(a)(6) requires the payment of quarterly fees to the United States Trustee on "disbursements."[18] "Several circuits define 'disbursements' as 'all payments by or on behalf of the debtor."[19] The word "disbursements" is "commonly understood in this context to apply to payments made with the funds generated from the liquidation of the debtor's assets."[20]

Although courts have taken different approaches to interpreting section 1930(a)(6), "the common thread that appears to bind many of those decisions together is the fact that the debtor had some interest in, or control over, the money disbursed."[21] In *Meyer*, for example, a husband

---

[13] Adv. D.I. 389 ¶ 21.

[14] Adv. D.I. 392.

[15] Adv. D.I. 395.

[16] D.I. 1097, *In re Noble Corporation plc*, No. 20-33836 (Bankr. S.D. Tex. Apr. 29, 2021); 28 U.S.C. § 1930(a)(6)(B)(ii)(II).

[17] D.I. 2231 ¶ 20.

[18] 28 U.S.C. § 1930(a)(6).

[19] *In re Buffets, LLC*, 979 F.3d at 373-74; *accord In re Genesis Health Ventures, Inc.*, 402 F.3d 416, 422 (3d Cir. 2005) ("Payments made on behalf of a debtor, whether made directly or indirectly through centralized disbursing accounts, constitute that particular debtor's disbursements for the purpose of quarterly fees calculations under § 1930(a)(6).").

[20] *Robiner v. Danny's Mkts., Inc. (In re Danny's Mkts., Inc.)*, 266 F.3d 523, 525 (6th Cir. 2001) (applying this understanding to require quarterly fees on the reorganized debtors' post-confirmation operating expenses).

[21] *In re Hale*, 436 B.R. 125, 130 (Bankr. E.D. Cal. 2010); *accord In re Charter Behav. Health Sys., LLC*, 292 B.R. 36, 45, 47 (Bankr. D. Del. 2003) ("The issue here is not who wrote the check or when the disbursement was booked but whose

(the debtor) and his estranged wife (a non-debtor) jointly owned real estate that was sold for $321,900 to satisfy their secured liens.[22] The court held that only the "$144,223.42 disbursed by the escrow agent as the proceeds in which debtor had an interest are subject to quarterly fees." Id. In other words, section 1930 quarterly fees are not, as the OUST argues, triggered by "every situation" when "any" "entity" makes "any" payment to any "third party" from "any source" "for any reason."[23] Rather, "it is the ultimate payment of the expense by any entity on behalf of a debtor that is the subject of quarterly fees."[24] That makes perfect sense of the term "disbursement" under the statute, since the logical next question for section 1930 payments is which "particular debtor" must pay the quarterly fee for that disbursement.[25]

Applying the common understanding that only "payments by or on behalf of the debtor" trigger quarterly fees, the Motion fails. By distributing the "corpus of the Litigation Trust Pro Rata to the beneficiaries of the Litigation Trust," the Trust is not paying expenses on behalf of any Debtors.[26] Rather, all "disbursements" related to any of the Debtors' obligations to the Trust beneficiaries and the claims against Noble occurred at the Effective Date in 2017. As the Plan states:

> On the Effective Date, the Debtors and the Estates shall preserve and transfer to the Litigation Trust the Noble Claims, with good, clean title to such property, free and clear of all liens, charges, Claims, encumbrances and interests, to be pursued, pursuant to the Litigation Trust Agreement, by the Litigation Trust Management for the benefit of holders of the Litigation Trust Interests.[27]

This transfer to the Trust was "in consideration for the benefit of the releases of the Allowed Revolver Claims, Allowed Term Loan Claims, and Allowed Senior Notes Claims pursuant to the Plan."[28] Indeed, the parties were required to "treat the transfer" of "the Trust Assets attributable to such Litigation Trust Beneficiaries as a transfer of such assets directly to such Litigation Trust Beneficiaries followed by a contribution of the Trust Assets to the

---

disbursement was made," noting that "the majority have ruled that 'disbursements' include all payments made by or for a debtor, regardless of the source of payment").

[22] *In re Meyer*, 187 B.R. 650, 653 (Bankr. W.D. Mo. 1995).

[23] *Cf.* D.I. 2231 ¶¶ 27-38.

[24] *Walton v. Post-Confirmation Comm. of Unsecured Creditors of GC Companies, Inc. (In re GC Companies, Inc.)*, 298 B.R. 226, 230 (D. Del. 2003).

[25] *In re Genesis Health Ventures, Inc.*, 402 F.3d at 422.

[26] D.I. 1614, Ex. A § 5.7(d).

[27] *Id.* at Ex. A § 5.7(b).

[28] D.I. 1593, Ex. E-1 § 2.4.

Litigation Trust."[29]  Accordingly, this 2017 transfer pursuant to the Plan was the "ultimate payment" made by or on behalf of the Debtors.[30]  *And consistent with section 1930(a), the United States Trustee received its quarterly fee in connection with disbursements then.*[31]

The Trust's payments to Litigation Trust Beneficiaries now—four years later—are by the Trust "for the benefit of holders of the Litigation Trust Interests," not by or on behalf of the Debtors.[32]  That is because "[f]rom and after the Effective Date, any Cash, proceeds, or other property received by the Litigation Trust … shall constitute Trust Assets for purposes of distributions under this Agreement."[33]  The "Trust Assets" are "Cash, proceeds, or other property received by the Litigation Trust from third parties arising from or related to the prosecution, settlement, or compromise of the Noble Claims."[34]  The Trust only "received the Noble settlement proceeds in March 2021,"[35] long after "the Debtors, the Estates, and the Paragon Entities" agreed they "will have no further interest in or with respect to the Trust Assets or the Litigation Trust."[36]  This is not a case where the debtors "had some interest in, or control over, the money disbursed."[37]  The Trust Assets vested in the Trust "free and clear" years ago.[38]

In sum, the notion that the Trust's "final distribution to Litigation Trust Beneficiaries on account of their Litigation Trust Interests" is, in fact, a "disbursement" on behalf of the Debtors

---

[29] *Id.* at Ex. E-1 § 5.1.

[30] The absurdity of the OUST's position is easily observed by extending its argument to its logical conclusion.  What if, under a plan of reorganization, creditors received out of the money warrants?  If the reorganized debtor thrived and those warrants were to come into the money, according to the OUST's position, every time a creditor were to exercise its warrant it would constitute a disbursement by the debtor triggering a fee.  This cannot be the law.  It would be difficult for the reorganized debtor, whose case may have closed, to monitor these transactions.  Moreover, collection of the fee from the creditors (in effect, the Trust in this case) would be impossible.  The OUST's position that it does not care who pays the fee, as long as it gets paid, is a sadly cynical position from an entity charged with preserving the integrity of the bankruptcy system.  It would be even more absurd if the creditors received stock under the plan.  Would every sale of stock by a creditor or its purchaser constitute a disbursement?  Under the OUST's argument the answer is yes.

[31] I cannot stress enough how offensive I find the OUST's attempt to double, or triple collect its "tax."  It would be hypocritical for a person's whose livelihood depends on the taxation of his fellow citizens to suggest that taxation is, in and of itself, reprehensible.  It is, of course, necessary.  What is reprehensible is attempting to take money out of the pockets of creditors, which are already receiving a small recovery on their claims, multiple times for the same distribution.

[32] D.I. 1614, Ex. A § 5.7(b).

[33] D.I. 1593, Ex. E-1 § 2.4.

[34] *Id.*

[35] D.I. 2231 ¶ 18.

[36] D.I. 1593, Ex. E-1 § 2.4.

[37] *In re Hale*, 436 B.R. at 130.

[38] D.I. 1593, Ex. E-1 at 4, § 2.4.

cannot be squared with the law, the Plan, nor the Litigation Trust Agreement.[39] The OUST's Motion will be denied.

Sincerely,

Christopher S. Sontchi
Chief United States Bankruptcy Judge

CSS/cas

---

[39] At the hearing on the OUST's Motion, I requested supplemental briefing addressing whether, under *Butner v. United States*, 440 U.S. 48 (1979) and its progeny, assuming, *arguendo*, that the UST quarterly fees are due, the Trust cannot be liable for them as a matter of nonbankruptcy state trust law because the grantor's liability cannot be collected against the trust res once it has been transferred to the trust for the benefit of the beneficiaries. I appreciate the parties' thoughtful submissions on the issue, but, as I have found that the payments to the Trust beneficiaries are not disbursements, I need not address the issue of state trust law.